UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| Lindsey Wheeler, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| The Kroger Co., and United Food and Commercial Workers Local 1996, | ) ) ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

# COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW, Lindsey Wheeler ("Ms. Wheeler" or "Plaintiff"), and files this *Complaint for Damages and Injunctive Relief* against Defendants The Kroger Co. ("Kroger") and United Food and Commercial Workers Local 1996 ("UFCW"), for violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* In support thereof, Plaintiff offers the following:

## PARTIES

1. Plaintiff is a citizen of the United States and resident of the State of Georgia. She submits to the jurisdiction of this Court.

2. Defendant Kroger was Plaintiff's employer at all times relevant to this action, at one of Kroger's locations in Newnan, Georgia.

3. Defendant Kroger is a for-profit corporation registered to do business in Georgia with the Georgia Secretary of State and can be served by service of process upon its registered agent, CSC of Cobb County, Inc., at 192 Anderson Street SE, Suite 125, Marietta, GA 30060.

4. Defendant UFCW—specifically the Local 1996 chapter—was the union representing Plaintiff during her employment with Kroger.

5. Defendant UFCW can be served by service of process upon, among others, any of its officers, managing agents, or general agents.

## JURISDICTION AND VENUE

6. This Court has original, federal-question jurisdiction over this action, pursuant to 28 U.S.C. § 1331.

7. The acts and omissions giving rise to Plaintiff's claims, including the entirety of her employment, occurred within this district and division. This Court therefore has personal jurisdiction over Defendants, and venue is proper in this Court.

## FACTS

8. Ms. Wheeler began her employment with Kroger as a Courtesy Clerk in 2015.

9. Ms. Wheeler's union representation throughout her employment was the Local 1996 chapter of UFCW.

10. Ms. Wheeler lives with multiple disabilities, including limitations on her cognitive and intellectual functions and a hearing impairment.

11. Ms. Wheeler's disabilities substantially limit her in a variety of major life activities, including reading, speaking, hearing, thinking, writing, otherwise communicating, and problem solving.

12. Ms. Wheeler was at all relevant times, and is still, able to perform all the essential functions of a Kroger Courtesy Clerk with or without reasonable accommodations for her disabilities.

13. Kroger knew of Ms. Wheeler's disabilities and regarded her as disabled, providing her a bright yellow tag to wear on her work uniform identifying her as "Hearing Impaired."

14. No later than October 17, 2023, UFCW knew of Ms. Wheeler's disabilities upon being informed of same by Ms. Wheeler's family.

15. On or about October 7, 2023, one of Ms. Wheeler's co-workers gave her some chocolate at work.

16. Ms. Wheeler's co-worker did not tell Ms. Wheeler that the chocolate being offered contained psychoactive "magic" mushrooms.

17. Due to her cognitive impairments, Ms. Wheeler could not and did not understand that the chocolate could have psychoactive properties, or even the concept of a psychoactive drug.

18. Upon information and belief, Ms. Wheeler's co-worker decided to trick Ms. Wheeler in this way because they thought it would be funny to see how a woman with mental disabilities would react to hallucinogenic drugs.

19. Ms. Wheeler quickly became ill and frightened and sought help from her manager and family.

20. Ms. Wheeler's manager sent her home for the day and wrote her up in a "Constructive Advice Record" ("CAR"), falsely accusing her of being "aware of the drugs in the candy bar," disciplining her for "doing drugs on the clock," and suspending her employment indefinitely.

21. In truth, because of her disabilities, Ms. Wheeler still does not fully comprehend what happened or what was in the chocolate her co-worker tricked her into eating.

22. Mr. Wheeler's manager knew that she had severe cognitive impairments that would have impacted her ability to understand the significance of eating the chocolate, yet disciplined her anyway.

23. Ms. Wheeler promptly filed a grievance appealing the CAR.

24. During the appeal process, Ms. Wheeler asked to have one of her family members present with her to help her understand what was happening, as an accommodation for her disabilities.

25. Defendants did not allow Ms. Wheeler to have one of her family members present with her, despite her request, or any other accommodations for her disabilities during the grievance process.

26. Upon information and belief, Defendants denied Ms. Wheeler this accommodation because her profound disabilities prevented her from meaningfully participating in the grievance process, thereby allowing Defendants to reach their own desired outcome without any input from her.

27. After several grievance meetings, a UFCW representative, Ms. Whipple, informed Ms. Wheeler that resolution of her grievance required her to be transferred to a different Kroger store much further from her home.

28. Ms. Whipple provided Ms. Wheeler with a document to sign, purporting to resolve her grievance. In the proposed agreement, Ms. Wheeler would agree to the above-described transfer execute "a general, complete and unconditional release of the Kroger Company and the UFCW Local 1996, all subsidiaries, affiliates, their officers, directors, employees, agents, successors, or assigns" for any and all potential legal claims.

29. After discovering, with the help of her family, that UFCW had purported to accept the agreement on her behalf, Ms. Wheeler and her family informed Defendants that she did not accept the terms.

30. Ms. Wheeler additionally requested, as an accommodation for her disability, that she be allowed to remain at the Kroger store where she had been working, because it was much closer to her house and her disabilities make it impossible for her to drive.

31. Defendants denied that request and insisted on transferring Ms. Wheeler.

32. On November 10, 2023, through counsel, Ms. Wheeler sent a letter to both Defendants reiterating her requests for the above-described accommodations, reiterating her reasons for the requests, and asserting her rights to same under the ADA.

33. On or around December 12, 2023, UFCW told Ms. Wheeler her grievance had been withdrawn, that UFCW considered it resolved, and that she was to report to work at the new store on December 26, 2023.

34. On December 22, 2023, Ms. Wheeler timely filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), one each against Kroger and UFCW, alleging disability discrimination in violation of the ADA.

35. On December 26, 2023, Ms. Wheeler reported as scheduled to her first shift at the new store. She worked a full day.

36. After her shift on December 26, 2023, Ms. Whipple contacted Ms. Wheeler and told her she would not be allowed back to work unless and until she signed the

document containing the above-described "general, complete and unconditional release."

37. Ms. Wheeler's mother informed Ms. Whipple that they were not going to sign a general, complete and unconditional release of all liability and did not believe such a release was necessary.

38. On December 28, 2023, UFCW requested that Ms. Wheeler execute a document stating that she was refusing to work.

39. Ms. Wheeler was not refusing to work, did not sign any document, and confirmed her intention to report to work as scheduled on December 29, 2023.

40. UFCW again told Ms. Wheeler she was not allowed to return to work without signing the above-described "general, complete and unconditional release."

41. Kroger terminated Ms. Wheeler's employment on December 30, 2023.

42. The Department of Labor "Separation Notice" Kroger provided to Ms. Wheeler states her employment was terminated effective October 7, 2023.

43. After investigation, the EEOC issued Ms. Wheeler notices of right to sue for both of her charges. She now timely brings this Complaint.

## LEGAL CLAIMS

### Count 1 – Disability Discrimination, In Violation of Title I of the Americans with Disabilities Act ("ADA")

44. Title I of the ADA prohibits covered entities from discriminating against qualifying employees, and it specifically identifies, as one form of prohibited

discrimination, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

45. Defendant Kroger has more than fifteen employees and is therefore a "covered entity" for the purposes of Title I of the ADA. 42 U.S.C. §§ 12111(2); 12111(5).

46. Defendant UFCW is a labor organization and is therefore a "covered entity" for the purposes of Title I of the ADA. 42 U.S.C. § 12111(2).

47. Ms. Wheeler's employment history, as set forth above, demonstrates her ability to perform the essential functions of her employment position with and without reasonable accommodation, and so she is a "qualified individual" for the purposes of Title I of the ADA. 42 U.S.C. § 12111(8).

48. At all relevant times, Ms. Wheeler suffered from a "disability" within the meaning of the ADA, as defined at 42 U.S.C. § 12102, in that her intellectual and hearing impairments shoulder injury substantially impaired her in numerous major life activities, including but not limited to reading, speaking, hearing, thinking, writing, otherwise communicating, and problem solving.

49. Ms. Wheeler's request to be allowed to have a family member present during grievance negotiations between Kroger and UFCW regarding her future as an

employee was a reasonable accommodation, considering, among other things, her disability's impairment of her understanding of sophisticated legal negotiations, Defendants' poor understanding of her particular needs, and Defendants' obligations to other employees involved in the same incident as witnesses, victims, and accused.

50. Ms. Wheeler's request to be allowed to remain at the store where she had been working since 2015 was a reasonable accommodation, considering, among other things, the store's proximity to her house which made the store much more accessible to her than others in the Atlanta area because of her disabilities.

51. Defendants both failed to provide Ms. Wheeler these accommodations.

52. Granting either of Ms. Wheeler's accommodation requests would not have required either Defendant to undertake significant difficulty or expense—financially, operationally, or otherwise—and so would not have imposed an "undue hardship," as that term is defined in 42 U.S.C. § 12111(10).

53. Defendants' failure to provide Ms. Wheeler the accommodations she requested was not due in any way to any failure on her part to engage in good-faith discussions regarding her disabilities and related needs.

54. Defendants' failure to provide Ms. Wheeler the accommodations she requested was a deliberate choice, motivated by discriminatory animus and, among other things, a desire to resolve her grievance as they desired without meaningful input from Ms. Wheeler herself.

55. Defendants are therefore each liable to Ms. Wheeler for disability discrimination in violation of Title I of the ADA. Specifically, for their illegal conduct, Defendants are each liable to Ms. Wheeler for both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages, attorneys' fees, and other costs of litigation.

### Count 2 – Retaliation, In Violation of the Americans with Disabilities Act ("ADA")

56. The ADA prohibits covered entities from retaliating against individuals who have opposed any act or practice prohibited by the ADA, who have requested accommodations for a disability in good faith, or who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C. § 12203(a).

57. Ms. Wheeler engaged in protected ADA activity on several occasions, including by requesting disability accommodations, sending a letter through counsel asserting her rights to same, filing EEOC charges against both Defendants, and refusing to sign a "general, complete, and unconditional release" as part of the resolution of her disciplinary appeal as set forth above.

58. Kroger terminated Ms. Wheeler's employment after and in response to her ADA-protected activity.

59. Kroger would not have terminated Ms. Wheeler's employment but for her ADA-protected activity.

60.     UFCW's demand that Ms. Wheeler execute the above-described "general, complete and unconditional release" in order to continue working was a material change in the conditions of her employment.

61.     UFCW made this demand after and in response to Ms. Wheeler's ADA-protected activity.

62.     UFCW would not have insisted on this "general, complete and unconditional release" but for her ADA-protected activity.

63.     Defendants are therefore each liable to Ms. Wheeler for retaliation in violation of the ADA. Specifically, for their illegal conduct, Defendants are each liable to Ms. Wheeler for both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages, attorneys' fees, and other costs of litigation.

WHEREFORE, Plaintiff prays:

a.      for a trial by jury;

c.      for an order declaring Defendants to be in violation of the ADA;

d.      for an award of damages to Plaintiff, in an amount determined by the enlightened conscience of the jury;

e.      for an award of reasonable attorneys' fees and costs;

f.      for an award of prejudgment and post-judgment interest; and

f.      for any further and additional legal and equitable relief as the Court deems just and proper.

Respectfully submitted this October 10, 2024.

                                            */s/ Jake Knanishu*
                                            Jake Knanishu
Georgia Bar No. 597103
James Radford
Georgia Bar No. 108007
Radford Scott LLP
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
T: (404) 400-3600
jradford@radfordscott.com
jknanishu@radfordscott.com

*Counsel for Plaintiff*