UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| Lindsey Wheeler, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | 3:24-cv-00192-TCB-RGV |
| | ) | |
| The Kroger Co., and United Food and Commercial Workers Local 1996, | ) ) ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF**

COMES NOW, Lindsey Wheeler ("Ms. Wheeler" or "Plaintiff"), and files this *First Amended Complaint for Damages and Injunctive Relief* against Defendants The Kroger Co. ("Kroger") and United Food and Commercial Workers Local 1996 ("UFCW"), for violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* In support thereof, Plaintiff offers the following:

**PARTIES**

1. Plaintiff is a citizen of the United States and resident of the State of Georgia. She submits to the jurisdiction of this Court.

2. Defendant Kroger was Plaintiff's employer at all times relevant to this action, at one of Kroger's locations in Newnan, Georgia.

3. Defendant Kroger is a for-profit corporation registered to do business in Georgia with the Georgia Secretary of State and can be served by service of process upon its registered agent, CSC of Cobb County, Inc., at 192 Anderson Street SE, Suite 125, Marietta, GA 30060.

4. Defendant UFCW—specifically the Local 1996 chapter—was the union representing Plaintiff during her employment with Kroger.

5. Defendant UFCW can be served by service of process upon, among others, any of its officers, managing agents, or general agents.

## JURISDICTION AND VENUE

6. This Court has original, federal-question jurisdiction over this action, pursuant to 28 U.S.C. § 1331.

7. The acts and omissions giving rise to Plaintiff's claims, including the entirety of her employment, occurred within this district and division. This Court therefore has personal jurisdiction over Defendants, and venue is proper in this Court.

## FACTS

8. Ms. Wheeler began her employment with Kroger as a Courtesy Clerk in 2015.

9. Ms. Wheeler's union representation throughout her employment was the Local 1996 chapter of UFCW.

10. Ms. Wheeler lives with multiple disabilities, including limitations on her cognitive and intellectual functions and a hearing impairment.

11. Because of her hearing impairment, Ms. Wheeler primarily expresses herself through sign language.

12. Like many hearing-impaired individuals with similar mental disabilities, Ms. Wheeler is not fluent in traditional American Sign Language ("ASL") and relies heavily on what are commonly referred to as "home signs," such that only her close family members who communicate with her regularly can understand her sign language.

13. As a Courtesy Clerk, Ms. Wheeler's primary job responsibilities were limited to manual labor—such as stocking shelves, cleaning bathrooms, and bagging groceries—with only very basic communication with coworkers and customers.

14. Ms. Wheeler was at all relevant times, and still is, able to perform all the essential functions of her position, with reasonable accommodations.

15. Because of her mental disabilities, Ms. Wheeler required substantial assistance to understand and assert her rights as a worker and union member, particularly as it relates to legal principles and administrative procedures.

16. Ms. Wheeler's disabilities substantially limit her in a variety of major life activities, including reading, speaking, hearing, thinking, writing, otherwise communicating, and problem solving.

17.     Ms. Wheeler's managers at Kroger generally knew that, if Ms. Wheeler was having any kind of issues at work, they needed to call Ms. Wheeler's mother instead of trying to communicate with Ms. Wheeler herself, because of her disabilities.

18.     Kroger knew of Ms. Wheeler's disabilities and regarded her as disabled, providing her a bright yellow tag to wear on her work uniform identifying her as "Hearing Impaired."

19.     On or about October 7, 2023, one of Ms. Wheeler's co-workers gave her some chocolate at work.

20.     Ms. Wheeler's co-worker did not tell Ms. Wheeler that the chocolate contained psychoactive "magic" mushrooms.

21.     Due to her cognitive impairments, Ms. Wheeler did not understand that the chocolate could have psychoactive properties, or even the concept of a psychoactive drug.

22.     Upon information and belief, Ms. Wheeler's co-worker decided to trick Ms. Wheeler in this way because she thought it would be funny to see how a woman with mental disabilities would react to hallucinogenic drugs.

23.     Ms. Wheeler became ill and frightened and sought help from her manager and family.

24.     Ms. Wheeler's manager sent her home for the day and wrote her up in a "Constructive Advice Record" ("CAR"), falsely accusing her of being "aware of the

drugs in the candy bar," disciplining her for "doing drugs on the clock," and suspending her employment indefinitely.

25. In truth, because of her disabilities, Ms. Wheeler still does not fully comprehend what happened or what was in the chocolate her co-worker tricked her into eating.

26. Ms. Wheeler was the victim of a cruel prank played upon her by a fellow Kroger employee because she is severely disabled.

27. Ms. Wheeler's manager knew that she had severe impairments that would have affected her ability to understand the significance of eating the chocolate, yet disciplined her anyway.

28. Upon information and belief, Mr. Wheeler's manager had not, and would not, discipline a non-disabled employee who was given a psychoactive drug without his or her knowledge.

29. Ms. Wheeler promptly filed a grievance appealing the CAR, with the assistance of her family.

30. During the appeal process, Ms. Wheeler asked to have one of her family members present with her to help her understand what was happening, as an accommodation for her disabilities.

31. Both Defendants could have allowed Ms. Wheeler this accommodation.

32. Allowing Ms. Wheeler this accommodation would not have imposed any hardship on either Defendant's business operations.

33. Defendants did not allow Ms. Wheeler to have one of her family members present with her, despite her requests, or any other accommodations for her disabilities during the grievance process.

34. Without a family member present, nobody at any hearing, conference, or other meeting regarding Ms. Wheeler's grievance was able to communicate with her effectively.

35. Because of Defendants' refusal to allow Ms. Wheeler accommodations for her disabilities, she was all but completely excluded from Defendants' negotiations of a resolution of her grievance.

36. Upon information and belief, Defendants denied Ms. Wheeler this accommodation because her disabilities prevented her from otherwise meaningfully participating in the grievance process, thereby allowing Defendants to reach their own desired outcome without any input from her.

37. After several grievance meetings, a UFCW representative, Ms. Whipple, informed Ms. Wheeler that resolution of her grievance required her to be transferred to a different Kroger store further from her home.

38. Ms. Whipple provided Ms. Wheeler with a document to sign, purporting to resolve her grievance. In the proposed agreement, Ms. Wheeler was to agree to the

above-described transfer and execute "a general, complete and unconditional release of the Kroger Company and the UFCW Local 1996, all subsidiaries, affiliates, their officers, directors, employees, agents, successors, or assigns" for any and all potential legal claims.

39. Because Defendants denied Ms. Wheeler the accommodations she requested, Defendants negotiated these terms, attempting to release themselves of all liability, without any input from Ms. Wheeler.

40. After discovering, with the help of her family, that UFCW had purported to accept this agreement on her behalf, Ms. Wheeler and her family informed Defendants that she did not accept the terms.

41. Specifically, Ms. Wheeler did not agree with the condition that she execute "a general, complete and unconditional release of the Kroger Company and the UFCW Local 1996, all subsidiaries, affiliates, their officers, directors, employees, agents, successors, or assigns" for any and all potential legal claims.

42. Ms. Wheeler also did not agree with Defendants' decision to transfer her to another location.

43. One reason Ms. Wheeler did not agree with these conditions is that she had done nothing wrong. To the contrary, she was the victim of someone giving her an adulterated substance.

44. Ms. Wheeler additionally requested, as an accommodation for her disability, that she be allowed to remain at the Kroger store where she had been working, because it was much closer to her house and her disabilities make it impossible for her to drive.

45. Defendants denied that request and insisted on transferring Ms. Wheeler.

46. Defendants have not provided Ms. Wheeler with any legitimate business reasons for their insistence on this unnecessary transfer they negotiated without her.

47. On November 10, 2023, through counsel, Ms. Wheeler sent a letter to both Defendants asserting her rights under the ADA, reiterating her need for accommodations, reiterating her reasons for her requests, requesting among other things that she be allowed to have a family member in attendance at a meeting the following Tuesday, and requesting that she be allowed to continue working in the environment with which she had become familiar and comfortable over the previous eight years of her employment.

48. On or around December 12, 2023, UFCW told Ms. Wheeler her grievance had been withdrawn, that UFCW considered it resolved, and that she was to report to work at the new store on December 26, 2023.

49. On December 22, 2023, Ms. Wheeler timely filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"),

one each against Kroger and UFCW, alleging disability discrimination in violation of the ADA.

50. On December 26, 2023, Ms. Wheeler reported as scheduled to her first shift at the new Kroger store. She worked a full day.

51. While working at the new Kroger store on December 26, 2023, nobody on behalf of either Defendant told her that she was not allowed to be there or that she was no longer employed.

52. After her shift on December 26, 2023, Ms. Whipple contacted Ms. Wheeler and told her she would not be allowed back to work again unless and until she signed the document containing the above-described "general, complete and unconditional release."

53. Ms. Wheeler's mother informed Ms. Whipple that they were not going to sign a general, complete, and unconditional release of all liability and did not believe such a release was necessary.

54. On December 28, 2023, UFCW requested that Ms. Wheeler execute a document stating that she was refusing to work.

55. Ms. Wheeler was not refusing to work, did not sign any document, and confirmed her intention to report to work as scheduled on December 29, 2023.

56. UFCW again told Ms. Wheeler she was not allowed to return to work without signing the above-described "general, complete and unconditional release."

57. Kroger terminated Ms. Wheeler's employment on December 30, 2023.

58. The official Department of Labor "Separation Notice" Kroger provided to Ms. Wheeler thereafter states that Kroger considers her termination "effective" October 7, 2023. It further states, incorrectly, that it was "completed and released to" Ms. Wheeler on February 20, 2023.

59. After investigation, the EEOC issued Ms. Wheeler notices of right to sue for both of her charges. She now timely brings this Complaint.

### Legal Claims

### Count 1 – Disability Discrimination, In Violation of Title I of the Americans with Disabilities Act ("ADA")

60. Title I of the ADA prohibits covered entities from discriminating against qualifying employees with respect to any "term, condition, or privilege of employment." 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4(a)(ix).

61. One form of prohibited discrimination under the ADA is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

62. Defendant Kroger has more than fifteen employees and is therefore a "covered entity" for the purposes of Title I of the ADA. 42 U.S.C. §§ 12111(2); 12111(5).

63. Defendant UFCW is a labor organization and is therefore a "covered entity" for the purposes of Title I of the ADA. 42 U.S.C. § 12111(2).

64. Ms. Wheeler's employment history, as set forth above, demonstrates her ability to perform the essential functions of her employment position with reasonable accommodation, and so she is a "qualified individual" for the purposes of Title I of the ADA. 42 U.S.C. § 12111(8).

65. At all relevant times, Ms. Wheeler suffered from a "disability" within the meaning of the ADA, as defined at 42 U.S.C. § 12102, in that her mental and hearing impairments substantially impair her in numerous major life activities, including but not limited to reading, speaking, hearing, thinking, writing, otherwise communicating, and problem solving as set forth in part above.

66. As a member of a union, working in a unionized workplace, one of the essential functions of Ms. Wheeler's job was participation in the collectively-bargained grievance process.

67. One of the essential functions of Ms. Wheeler's job was attendance.

68. Ms. Wheeler's request to be allowed to have a family member present during grievance negotiations between Kroger and UFCW regarding her future as an employee was a reasonable accommodation, considering, among other things, her disability's impairment of her understanding of sophisticated legal negotiations, Defendants' poor understanding of her particular needs, Defendants' limited ability

to communicate with Ms. Wheeler because of her disability, and Defendants' obligations to other employees involved in the same incident as witnesses, victims, and accused.

69. Ms. Wheeler's request to be allowed to remain at the store where she had been working since 2015 was a reasonable accommodation, considering, among other things, the store's proximity to her house, which made the store much more accessible to her than others in the Atlanta area because of her disabilities.

70. Defendants both failed to provide Ms. Wheeler these accommodations.

71. Granting either of Ms. Wheeler's accommodation requests would not have required either Defendant to undertake significant difficulty or expense—financially, operationally, or otherwise—and so would not have imposed an "undue hardship," as that term is defined in 42 U.S.C. § 12111(10).

72. Defendants' failure to provide Ms. Wheeler the accommodations she requested was not due to any failure on her part to engage in good-faith discussions regarding her disabilities and related needs.

73. Defendants discriminated against Ms. Wheeler with respect to the terms, conditions, and privileges of her employment, in violation of the ADA, by excluding her from their negotiations in resolving her grievance, among other things.

74. Separately, Defendants discriminated against Ms. Wheeler, in violation of the ADA, by failing to provide her the reasonable the accommodations she requested.

75. Defendants' conduct as set forth herein was deliberate and done with at least reckless disregard to Ms. Wheeler's rights, motivated by discriminatory animus and, among other things, a desire to resolve Ms. Wheeler's grievance as they desired, releasing themselves of all liability to her, without limitation as to time or subject matter and without meaningful input from Ms. Wheeler herself.

76. Defendants are therefore each liable to Ms. Wheeler for disability discrimination in violation of Title I of the ADA. Specifically, for their illegal conduct, Defendants are each liable to Ms. Wheeler for both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages, attorneys' fees, and other costs of litigation.

### Count 2 – Retaliation, In Violation of the Americans with Disabilities Act ("ADA")

77. The ADA prohibits covered entities from retaliating against individuals who have opposed any act or practice prohibited by the ADA, who have requested accommodations for a disability in good faith, or who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C. § 12203(a).

78. Ms. Wheeler engaged in protected ADA activity on several occasions, including by requesting disability accommodations, sending a letter through counsel asserting her rights to same, filing EEOC charges against both Defendants, and

refusing to release Defendants of all liability of any kind as part of the resolution of her disciplinary appeal as set forth above.

79. Kroger terminated Ms. Wheeler's employment after and in response to her ADA-protected activity.

80. Kroger would not have terminated Ms. Wheeler's employment but for her ADA-protected activity.

81. UFCW's demand that Ms. Wheeler execute the above-described "general, complete and unconditional release" in order to continue working was a material change in the conditions of her employment.

82. UFCW made this demand after and in response to Ms. Wheeler's ADA-protected activity.

83. UFCW would not have insisted on this "general, complete and unconditional release" but for her ADA-protected activity.

84. Defendants' conduct as set forth herein was deliberate and done with at least reckless disregard to Ms. Wheeler's rights, motivated by discriminatory animus and, among other things, a desire to resolve Ms. Wheeler's grievance as they desired, releasing themselves of all liability to her, without limitation as to time or subject matter and without meaningful input from Ms. Wheeler herself.

85. Defendants are therefore each liable to Ms. Wheeler for retaliation in violation of the ADA. Specifically, for their illegal conduct, Defendants are each liable to Ms.

Wheeler for both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages, attorneys' fees, and other costs of litigation.

WHEREFORE, Plaintiff prays:

a. for a trial by jury;

c. for an order declaring Defendants to be in violation of the ADA;

d. for an award of damages to Plaintiff, in an amount determined by the enlightened conscience of the jury;

e. for an award of punitive damages to Plaintiff, in an amount determined by the enlightened conscience of the jury;

f. for an award of reasonable attorneys' fees and costs;

g. for an award of prejudgment and post-judgment interest; and

h. for any further and additional legal and equitable relief as the Court deems just and proper.

Respectfully submitted this December 19, 2024.

*/s/ Jake Knanishu*
Jake Knanishu
Georgia Bar No. 597103
James Radford
Georgia Bar No. 108007
Radford Scott LLP
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
T: (404) 400-3600
jradford@radfordscott.com
jknanishu@radfordscott.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on December 19, 2024, I filed the foregoing document through the Court's CM/ECF system, which will send email notification of such filing to all attorneys of record in this matter.

                                        */s/ Jake Knanishu*
                                        Jake Knanishu
                                        Georgia Bar No. 597103