**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| Lindsey Wheeler, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | 3:24-cv-00192-TCB-RGV |
| | ) | |
| The Kroger Co., and United Food | ) | |
| and Commercial Workers Local | ) | |
| 1996, | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE IN OPPOSITION TO DEFENDANT UNITED FOOD
AND COMMERCIAL WORKERS LOCAL 1996'S MOTION TO DISMISS**

COMES NOW Lindsey Wheeler ("Ms. Wheeler"), Plaintiff in the above-styled action, and files this *Response in Opposition to Defendant United Food and Commercial Workers Local 1996's Motion to Dismiss*.

**I.    Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Lamentably, "*Twombly* and *Iqbal* have wrought . . . a compulsion to file a motion to dismiss in every case." *Meyer v. Snyders Lance, Inc.*, 2012 WL 6913724, at *1 (M.D. Ga. Dec. 12, 2012). However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Plaintiffs' burden at this stage is light because "[t]he issue is not whether [they] will ultimately prevail but whether [they are] entitled to offer evidence to support [their] claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## II.    Relevant Facts

### Ms. Wheeler's disability

Ms. Wheeler was born with severe intellectual and developmental disabilities and a hearing impairment. Doc. 20 ("First Amended Complaint" or "FAC") at ¶ 10. This combination of disabilities limits her in a wide range of major life activities, including her ability to communicate using American Sign Language. *Id.* at ¶¶ 12, 16. Like many in her situation, she instead uses "home signs" that only close family members who communicate with her regularly can understand. *Id.* at ¶ 12.

### Ms. Wheeler's employment history

Ms. Wheeler began working for Defendant The Kroger Co. ("Kroger") as a Courtesy Clerk in 2015. *Id.* at ¶ 8. Defendant United Food and Commercial Workers Local 1996 ("UFCW") represented her throughout her employment. *Id.* at ¶ 9. As a

Courtesy Clerk, Ms. Wheeler's primary job responsibilities were limited to manual labor—such as stocking shelves, cleaning bathrooms, and bagging groceries—with only very basic communication with coworkers and customers. *Id.* at ¶ 13. With reasonable accommodations, she was and still is able to perform all the essential functions of her position. *Id.* at ¶ 14.

At work, Ms. Wheeler wore a bright yellow tag on her uniform identifying her as "Hearing Impaired." *Id.* at ¶ 18. Because of her disabilities, her managers knew, if Ms. Wheeler had any issues at work outside her normal job duties, to call her mother for assistance. *Id.* at ¶ 17.

*The poisoning incident*

On or about October 7, 2023, one of Ms. Wheeler's co-workers dosed her with hallucinogenic mushrooms hidden in a piece of chocolate.[1] *Id.* at ¶¶ 19-22. Because of her disabilities, Ms. Wheeler did not—and still does not—understand what hallucinogenic mushrooms are. *Id.* at ¶¶ 21, 25. Her manager knew this about Ms. Wheeler. *Id.* at ¶ 27. When the effects of the drug took hold, Ms. Wheeler became ill and frightened and sought help from her manager. *Id.* at ¶ 23. Her manager issued

---

[1] Under Georgia law, this is a crime—namely, a battery by poisoning. *See, e.g.*, *Harris v. State*, 106 Ga. App. 172, 180 (1962) ("Administering poison or any other harmful drug or substance to a person, with intent to inflict injury, amounts to assault and battery." (quoting 6 C.J.S. Assault and Battery § 70, p. 924)). *See also, e.g.*, *United States v. Castleman*, 572 U.S. 157, 170 (2014) ("[A] battery may be committed by administering a poison . . . ." (string cite omitted)).

her a formal disciplinary notice (the "Constructive Advice Record" or "CAR"), suspending her employment indefinitely. *Id.* at ¶ 24. In the CAR, Ms. Wheeler's manager falsely accused her of being "aware of the drugs in the candy bar" and "doing drugs on the clock." *Id.* Ms. Wheeler's manager has never disciplined a non-disabled employee for being the victim of a crime. *Id.* at ¶ 28.

*The grievance process*

Ms. Wheeler promptly filed a grievance appealing the CAR, with help from her family. *Id.* at ¶ 29. During the appeal process, as an accommodation for her disabilities, Ms. Wheeler's family asked for one of them to be present to interpret for her. *Id.* at ¶ 30. UFCW could have allowed this accommodation. *Id.* at ¶ 31. Allowing Ms. Wheeler this accommodation would not have imposed any hardship on UFCW's operations. *Id.* at ¶ 32. UFCW did not allow Ms. Wheeler this or any other disability accommodation during the grievance process. *Id.* at ¶ 33. As such, nobody at any hearing or meeting about her grievance could communicate with her, thereby denying her any meaningful participation in same. *Id.* at ¶¶ 34, 35.

Defendants negotiated a resolution of her grievance between themselves. *Id.* at ¶ 39. Eventually, a UFCW representative informed Ms. Wheeler that Defendants had agreed with each other to transfer her to a store farther away from her home. *Id.* at ¶ 37. The representative told Ms. Wheeler to sign a document agreeing to both the transfer and "a general, complete and unconditional release" of Kroger, UFCW, and

all their employees (among others) for any potential legal claims. *Id.* at ¶ 38. Ms. Wheeler shared the document with her family, and they informed Defendants that Ms. Wheeler did not, under these circumstances, agree to the transfer or release. *Id.* at ¶¶ 40, 41, 42.

Separately, she requested, as an accommodation for her disability, to remain at the Kroger store where she had been working, in part because it was much closer to her house and her disabilities make it impossible for her to drive, rather than being forcibly transferred to an unfamiliar environment. *Id.* at ¶¶ 44, 47. UFCW denied this request as well. *Id.* at ¶ 45. UFCW has never articulated a legitimate reason for transferring her, the victim in this incident. *Id.* at ¶ 46.

*Ms. Wheeler's termination*

On November 10, 2023, Ms. Wheeler's legal counsel sent UFCW a letter reasserting her rights under the ADA, her need for accommodations, her accommodations requests, and her reasons therefor, among other things. *Id.* at ¶ 47. Thereafter, UFCW informed Ms. Wheeler her grievance had been withdrawn and she was to report to work at the new store on December 26, 2023. *Id.* at ¶ 48.

On December 22, 2023, Ms. Wheeler filed charges of discrimination with the EEOC against both Kroger and UFCW. *Id.* at ¶ 49. On December 26, 2023, Ms. Wheeler reported as ordered to her first shift at the new Kroger store. She worked a full day during which nobody told her that she was unwelcome, unexpected, or no

longer employed. *Id.* at ¶¶ 50, 51. After her shift, Ms. Wheeler was informed she was not allowed back again unless and until she signed the "general, complete and unconditional release." *Id.* at ¶ 52. Ms. Wheeler again refused, and her mother explained that they did not believe such a release was necessary. *Id.* at ¶ 53.

On December 28, 2023, UFCW asked Ms. Wheeler to execute a document stating that she was refusing to work. *Id.* at ¶ 54. Ms. Wheeler was not refusing to work, so she did not sign the document and confirmed her intention to report to work as scheduled on December 29, 2023. *Id.* at ¶ 55. UFCW told her not to. *Id.* at ¶ 56. Kroger terminated her employment on December 30, 2023. *Id.* at ¶ 57.

## III.    Argument and Citation to Authority

### A. The Motion must be denied as premature.

As a threshold issue, UFCW's motion to dismiss, Doc. 25 (the "Motion"), is a premature motion for summary judgment and must be denied. "Ordinarily, the district court must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint and its attachments." *Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020) (per curiam) (citations omitted). Such materials can be considered only when they are "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Id.* (citations omitted). In this context, "central" means "a necessary or essential part of [the plaintiff's] effort to show that she was injured . . . ." *Id.* Further, "incomplete

accounts of the incident," even written accounts, are not permitted because they lack undisputed authenticity. *Rahmaan v. McQuilkin*, 2021 WL 86842, at *3 (N.D. Ga. Jan. 11, 2021) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

The FAC identifies Ms. Wheeler's five central claims against UFCW with particularity. She alleges: (A) UFCW is an entity covered by Title I of the ADA, FAC at ¶ 63; (B) she is a qualified individual with a disability, *id.* at ¶¶ 64, 65; (C) UFCW intentionally excluded her from its grievance negotiations with Kroger because of her disability, *id.* at ¶¶ 73, 75; (D) she requested two reasonable accommodations which UFCW deliberately failed to provide, *id.* at ¶¶ 68-72, 74, 75; and (E) UFCW changed the terms and conditions of her employment because of her ADA-protected activity, requiring her to sign a "general, complete and unconditional release" as a term of her continued employment. *Id.* at ¶¶ 81-84.

Only one document is even arguably "necessary and essential" to <u>any</u> of these five central claims, and that is the release. Ms. Wheeler's claims do not depend, for example, on medical paperwork, written denials of her accommodation requests, or discriminatory statements contained in emails or text messages.

Conspicuously, the release is not one of the five exhibits UFCW attached to its Motion. Indeed, UFCW's Exhibit 4—a letter dated December 12, 2023, purporting to send Ms. Wheeler "a copy of the settlement agreement" Defendants negotiated—patently <u>omits</u> this release. Doc. 25-5. This extrinsic evidence thus not

only lacks centrality to Ms. Wheeler's claims but is also an "incomplete account[]" of the communication in question. *Rahmaan*, *supra*. The same is true, for example, of UFCW's Exhibit 3. *Compare* Doc. 25-4 (a letter purporting to terminate Ms. Wheeler's employment on October 19, 2023) *with* FAC at ¶¶ 51, 58 (Kroger permitted Ms. Wheeler to work as late as December 26, dated her official Department of Labor Separation Notice February 20, and identified the "effective" date of her termination as October 7).

UFCW offers no argument that any of its exhibits is <u>central</u> to Ms. Wheeler's claims, a complete account of anything, <u>or</u> undisputedly authentic, all of which are necessary for the *Roberts* exception to apply. In relevant part, UFCW says only, "the Court may consider some matters outside the Amended Complaint," Doc. 25-1 ("Br.") at n.2, admits that the point of this evidence is to dispute some of the allegations of the FAC,[2] Br. at 19-20, and then predicates its Motion on a very particular interpretation of the contents of its incomplete evidence. UFCW's Motion is a premature motion for summary judgment and therefore must be denied.

**B. UFCW discriminated against Ms. Wheeler in violation of the ADA.**

"To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that [s]he (1) is disabled, (2) is a 'qualified individual,' and (3) was

---

[2] Importantly, in several ways, these exhibits corroborate the FAC. For example, UFCW's Exhibit 4 demonstrates deliberate indifference to her ADA rights, in that it is devoid of any reference to her disabilities or accommodation requests.

discriminated against because of [her] disability." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (citations omitted). A "qualified individual" is someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Discrimination under the ADA "includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability' unless doing so 'would impose an undue hardship' on the employer." *Beasley*, 69 F.4th at 754 (quoting 42 U.S.C. § 12112(b)(5)(A)). The ADA also prohibits intentional discrimination like Title VII and similar laws. *Akridge v. Alfa Ins. Companies*, 93 F.4th 1181 (11th Cir. 2024).

### 1. Ms. Wheeler's *prima facie* case

The FAC plausibly alleges all three *prima facie* elements of a claim for disability discrimination. She is severely intellectually disabled and has a hearing impairment, limiting her in a variety of major life activities. FAC at ¶¶ 10, 16. She also could, and still can, perform all the essential functions of a Kroger Courtesy Clerk, including attendance and manual labor such as stocking shelves and cleaning bathrooms, with reasonable accommodations. *Id.* at ¶¶ 13, 14, 66, 67. UFCW does not dispute that she was at all relevant times a qualified individual with a disability. UFCW also discriminated against Ms. Wheeler in violation of Title I of the ADA in at least two ways, one of which UFCW does not dispute.

*First*, as set forth in the FAC, UFCW denied Ms. Wheeler's accommodation requests deliberately and with discriminatory animus, taking advantage of her disabilities to reach UFCW's own preferred resolution of her grievance. *Id.* at ¶¶ 36, 73, 74, 75. UFCW does not dispute that its actions toward Ms. Wheeler were deliberate, motivated by discriminatory animus, or done for this purpose.

*Second*, UFCW violated the ADA simply by failing to provide Ms. Wheeler the accommodations she requested. A covered entity's "failure to reasonably accommodate a disabled individual <u>itself</u> constitutes discrimination under the ADA, so long as that individual is otherwise qualified, and unless the employer can show undue hardship." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (emphasis in original). In the ADA context, "[t]he term reasonable accommodation means," among other things, "[m]odifications or adjustments . . . that enable an individual with a disability who is qualified to perform the essential functions of that position[,] or [m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1).

Among other things, attendance was an essential function of Ms. Wheeler's job, as was meaningful participation in disciplinary meetings. FAC at ¶¶ 66, 67. Furthermore, as a matter of law, attendance is generally an essential function of

every job. *See, e.g.*, *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 325 (5th Cir. 2021) ("[T]here is a general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs." (citations omitted)). And Eleventh Circuit precedent establishes that meaningful participation in disciplinary meetings is <u>not</u> a marginal job function as a matter of law. *Beasley*, 69 F. 4th at 761 ("Beasley's ability to participate meaningfully in the disciplinary meetings about his attendance was also essential."). Ms. Wheeler's collectively-bargained protections were also, by definition, a "benefit[] and privilege[]" of her employment enjoyed by "similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii).

Ms. Wheeler requested two different accommodations for her disability, specifically for the sake of enabling her to perform these essential functions and to enjoy equal benefit of her CBA rights. She asked to have a member of her immediate family present at her grievance meetings so that she could participate meaningfully. FAC at ¶¶ 30, 34, 35, 47, 68. And she asked to be allowed to remain at the store where she had been working for eight years until Kroger and UFCW negotiated a transfer of her employment between themselves. *Id.* at ¶¶ 44, 47, 69.

The first of these requests is one of the statutory exemplars of a "reasonable accommodation" under the ADA. 42 U.S.C. § 12111(9)(B). *See also, Beasley*, 69 F. 4th at 754 ("Reasonable accommodations may include, among other things . . . , 'the

provision of qualified readers or <u>interpreters</u> . . . for individuals with disabilities.'" (quoting *id.*)).

The second request is reasonable under the circumstances of this case. As a developmentally disabled person, Ms. Wheeler takes an unusual amount of time to become familiar and comfortable in a new work environment, and her disabilities make it impossible for her to drive. FAC at ¶¶ 44, 47. As such, allowing her to remain at the store she had become familiar with over the previous eight years would not only have helped her with attendance but also <u>all</u> the essential functions of her job.

UFCW failed to provide Ms. Wheeler either of these accommodations. *Id.* at ¶ 74. It did so even though neither would have been an undue burden (another point UFCW's Motion does not dispute). *Id.* at ¶ 71. UFCW therefore discriminated against Ms. Wheeler in violation of the ADA in at least two ways, which UFCW mostly does not dispute.

### 2. UFCW's three asserted defenses

#### a. Ms. Wheeler's FAC is not a "shotgun" pleading.

"In general, a shotgun pleading fails to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) (citation omitted). For example, in *Embree*, the only legal authority UFCW invokes, the Eleventh Circuit Court of Appeals affirmed dismissal of a complaint alleging

twenty-one (21) different causes of action against ten (10) defendants because it was "completely unclear which of the factual allegations set forth in the forty-page complaint pertain to which of Plaintiff's claims or to which Defendant." *Id.* at 664.[3]

The FAC in this case asserts two (2) causes of action and, under each, expressly asserts claims against the two (2) named defendants. FAC at ¶ 76 ("Defendants are therefore each liable to Ms. Wheeler for disability discrimination . . . ."); *id.* at ¶ 85 ("Defendants are therefore each liable to Ms. Wheeler for retaliation . . . ."). The FAC also describes, in both the FACTS and LEGAL CLAIMS sections, UFCW's specific violations of the ADA. Among other things, Ms. Wheeler alleges both Defendants could have provided the accommodations she requested (*id.* at ¶¶ 31, 32, 71), and both refused to do so (*id.* at ¶¶ 45, 70, 74). As motive, she alleges they marginalized her to resolve her grievance in a way that better suited their own interests. *Id.* at ¶ 36; *see also id.* at ¶ 68 (summarizing, *inter alia*, Defendants' interests in protecting employees besides Ms. Wheeler); *id.* at ¶ 75 ("Defendants' conduct . . . was deliberate and . . . motivated by . . . a desire to resolve Ms. Wheeler's grievance as they desired, releasing themselves of all liability . . . .").

UFCW calls the FAC a "shotgun" anyway because, in UFCW's opinion, it "fails" to separate out the allegations against the specific defendants. Br. at 11. But,

---

[3] UFCW's brief, on page 10, also attributes a quote to *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015), but the quote is from *Embree*, not *Weiland*.

as the FAC explains multiple times, the claims are largely based on Defendants' <u>mutual</u> efforts. FAC at ¶¶ 36, 38, 39, 75. Many of the operative allegations cannot be "separated out" because they describe actions Defendants undertook together. Moreover, where the Defendants are liable for separate acts, the FAC <u>does</u> separate them accordingly. *Compare, e.g.*, *id.* at ¶ 79 (Kroger liable for terminating Ms. Wheeler's employment, among other things) *with id.* at ¶ 83 (UFCW liable for demanding execution of the general release, among other things).

The touchstone of a "shotgun" defense is that the complaint fails to provide the defendant "adequate notice of the claims against them and the grounds upon which each claim rests." *Embree*, 779 at 662. Here, UFCW has more than adequate notice of the claims against it—indeed enough to submit multiple exhibits trying to rebut the claims on the merits. The FAC is not a "shotgun" pleading.

> ### b. Ms. Wheeler does not assert a claim for breach of the duty of fair representation.

UFCW, citing a decision which predates the ADA by a decade, argues that unions have an unfettered right to discriminate against union members with disabilities during the grievance process, as long as they do not breach their "duty of fair representation" ("DFR"). Br. at 17-19. UFCW does not say so explicitly, but all the relevant caselaw UFCW cites are DFR decisions. *Id.*

UFCW offers no authority suggesting that DFR is relevant, much less necessary, in a case about disability discrimination. The Eleventh Circuit Court of

Appeals has not addressed this question directly, but Circuit Courts of Appeal have consistently declined to impose such a requirement. *See, e.g.*, *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 864 (9th Cir. 2016) ("[A]nti-discrimination statutes like the ADA cannot be read to parrot a cause of action that already exists under federal labor laws. Title VII and the ADA were enacted decades after those union-boosting laws and imposed additional affirmative responsibilities on unions."); *Green v. Am. Fed'n of Tchrs./Illinois Fed'n of Tchrs. Loc. 604*, 740 F.3d 1104, 1106 (7th Cir. 2014) (reversing district court decision which "conflate[d] Title VII with the elements of a hybrid breach-of-contract/duty-of-fair-representation claim"); *Peeples v. City of Detroit*, 891 F.3d 622, 638 (6th Cir. 2018) ("We are persuaded by the reasoning of the Seventh and Ninth Circuits and adopt it here."); *Peden v. Dist. Council 33 Loc. 696*, 662 F. App'x 183, 186 n.2 (3d Cir. 2016) (expressing skepticism that a DFR claim is necessary in a discrimination case).

Despite its broad discretion in enforcing collectively-bargained contractual rights, UFCW cannot throw federal antidiscrimination law to the wind in doing so.

### c. Ms. Wheeler's requested accommodations were not unreasonable as a matter of law.

On the facts of the FAC, UFCW contends that an accommodation is reasonable "<u>only</u> if it enables the employee to perform the essential functions of her job." Br. at 12 (emphasis in original) (quoting *Beasley*, no page reference). But *Beasley* actually calls into the question the "rule" about "only" essential functions:

> [O]ur broad statements about an essential function requirement are in tension with the text of the statute and the EEOC regulations that implement it. The statute plainly prohibits 'discriminat[ion] against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment.' The terms, conditions, and privileges of employment are more than just the essential functions of a job . . . . We've repeatedly <u>said</u> that reasonable accommodations relate 'only' to essential functions, even if we haven't reached any holdings that precedentially establish that rule.

*Beasley*, 69 F.4th at 757 (emphasis in original) (distinguishing numerous decisions using the "only" terminology) (citing 29 C.F.R. § 1630.2(o)(1)). As *Beasley* explains, and as set forth above, reasonable accommodations are available in a broad range of circumstances, including both "essential functions" beyond an employee's day-to-day job duties and all other "terms conditions, and privileges of employment." *Supra* Section III.B.1.

UFCW goes on to argue that a denial of meaningful participation in a months-long disciplinary appeal, a forced transfer to a more distant worksite, and refusals of reasonable accommodations regarding same are, as a matter of law, not cognizable harms under the ADA.[4] Br. at 12-17. In support, UFCW cites only a Title VII case, *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 359 (2024) (discrimination under Title VII does not require a "significant employment disadvantage," but rather only "some injury respecting her employment terms or conditions"), and a handful

---

[4] Notably, UFCW does not discuss, in this section of its brief, the "general, complete and unconditional release" UFCW demanded Ms. Wheeler sign as a condition of her continued employment.

of unreported decisions applying *Muldrow*. UFCW is incorrect. The text of the ADA, its interpretive rules, and relevant caselaw all provide that denial of Ms. Wheeler's accommodations is exactly what the ADA prohibits—especially but not exclusively because the denials were deliberate and motivated by discriminatory animus. *Supra*, Section III.B.1.

. According to UFCW, the FAC "fails to allege that [Ms. Wheeler] suffered a negative impact to any term or condition of her employment," Br. at 12, because it "does not allege how or why the grievance would have been resolved more favorably if a family member was present." *Id.* at 14. That is, UFCW seems to think, to state a claim for discrimination, an employee must plead that the accommodation she requested would have been outcome-determinative. UFCW, however, offers no support for this proposition, and that is not how the ADA works. For example, a blind law student does not need to prove that she can pass the bar exam to state a claim for assistive technology during the test. *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011). As set forth above, the denial of equal access to the grievance process is itself the injury giving rise to liability under the ADA. *Beasley*, *supra*.

The same is true of Ms. Wheeler's request not to be transferred. UFCW says "no harm no foul" because "she obviously had a reliable method of transportation to get to work." Br. at 16. But an employee's ability to work without accommodations

is not dispositive in the least of a claim for disability discrimination. Imagine a wheelchair user who is denied a ramp yet manages to drag herself up the stairs into work anyway. The relevant questions are only whether the accommodation was "reasonable" as defined in the ADA and whether providing it would have caused an undue hardship. *Holly*, *supra*.

UFCW's application of *Muldrow* also depends on an implausible interpretation of the facts of the FAC. The facts here very much describe "a negative impact" to multiple terms and conditions of Ms. Wheeler's employment. For people like Ms. Wheeler, a transfer to a strange new work environment is unusually difficult, for much the same reason that bullies do things like dose them with hallucinogenic substances for kicks. FAC at ¶¶ 26, 27, 47. As such, the transfer Defendants negotiated here, interrupting an eight-year routine for no legitimate reason, was "negative" for Ms. Wheeler even if it did not <u>also</u> burden both her ability to get to work and for her mother to come interpret for her when needed as she had done the past eight years. *Id.* at ¶¶ 17, 44, 47, 69. The same is clearly true of Defendants' deliberate exclusion of Ms. Wheeler from these "settlement negotiations," denying her equal opportunity to participate because of her disability. *Id.* at ¶¶ 30, 68. As set forth above, these deprivations are very much within the scope of conduct the ADA prohibits, and as UFCW's own authority says repeatedly, a

discrimination plaintiff "need not show that the injury satisfies a significance test." *Muldrow*, 601 U.S. at 350.

UFCW contends in the alternative that it satisfied all its obligations to Ms. Wheeler under the ADA. Br. at 19-21. In so arguing, UFCW relies not just on its extrinsic evidence but on blatant mischaracterizations thereof. For example, UFCW says it "requested that Plaintiff be returned to the same store from which she was fired," *id.* at 21, relying on evidence which plainly says only that UFCW sought "reinstate[ment]." *Id.* at 20 (quoting Doc. 25-5). Similarly, UFCW says it granted Ms. Wheeler's accommodation request by telling her some information about the meetings occurring in her absence. *Id.* In reality, the accommodation request was to be allowed to participate in these meetings, like everyone else, with the assistance of an interpreter. FAC at ¶¶ 30, 68. UFCW's exhibit confirms these meetings occurred but specifically does <u>not</u> suggest Ms. Wheeler attended or that UFCW even seriously considered her requests to have someone with her to interpret for her. Mischaracterizations of evidence like this are improper even at summary judgment, and certainly at the initial-pleadings stage. *Roberts*, *supra*.

In sum, the FAC states a claim for discrimination in violation of the ADA, and UFCW's Motion should be denied. UFCW does not dispute that Ms. Wheeler is a qualified individual with a disability, does not contend that granting her accommodation requests would have imposed an undue hardship, and does not

dispute that it deliberately discriminated against her. Ms. Wheeler's accommodation requests were also reasonable, and UFCW did not provide them, as UFCW's own evidence clearly indicates.

### C. UFCW retaliated against Ms. Wheeler in violation of the ADA.

The ADA prohibits "discriminat[ion] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a) ("Retaliation"). A *prima facie* case of retaliation under the ADA requires an employee to "demonstrate (1) that she engaged in statutorily protected conduct, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between the two." *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018).

In the employment context, one kind of retaliatory act, among many, is requiring an employee to waive her right to relief available under federal law as a term of continued employment. *See, e.g.*, *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (affirming judgment in favor of employee "terminated immediately after and because he refused to sign an agreement that would have applied to his pending charge"). This is true even where such a waiver is a standard part of a union grievance process. Indeed, <u>because</u> it is standard, such a requirement

denies equal benefit of the grievance process to employees with claims under federal law. *See, e.g.*, *E.E.O.C. v. Bd. of Governors of State Colleges & Universities*, 957 F.2d 424, 430 (7th Cir. 1992) (reversing judgment in favor of employer where standard grievance process required employee to choose between "pursu[ing] his grievance with the Board" and "his right to bring his federal age discrimination claim"). As the Supreme Court explained more than fifty years ago:

> [T]he federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment can best be accommodated by permitting an employee to pursue fully both [her] remedy under the grievance-arbitration clause of a collective-bargaining agreement and [her] cause of action under [federal law].

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60 (1974).

UFCW demanded such a waiver in this case, the "general, complete and unconditional release" waiving all claims against UFCW, Kroger, and all its employees (among others) regarding not just the subject of her grievance—which concerned only her contractual rights as a union member[5]—but also under the ADA and all other state and federal causes of action of any kind. FAC at ¶¶ 38, 81-83. As *Bagby Elevator* and the other authority above clearly explain, this demand itself is retaliatory as a matter of law. It requires no "factual enhancement," as UFCW suggests. Br. at 24 (quoting *Iqbal*).

---

[5] *See, e.g.*, *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 76 (1998) ("[A] grievance is designed to vindicate a 'contractual right' under a CBA . . . ." (quoting *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49-50 (1974))).

UFCW asserts an "administrative exhaustion" defense because Ms. Wheeler did not check the "retaliation" box in her charge of discrimination or amend or supplement her charge after her termination. *Id.* at 21-22 (citing Doc. 25-6). However, when retaliation grows out of the facts alleged in an EEOC charge of discrimination, and occurs subsequent to the charge's filing, administrative exhaustion does not require the plaintiff to amend or supplement her open charge. *See, e.g.*, *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) ("[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." (quoting *Gupta v. E. Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981))); *Fox v. Epay Sys., Inc.*, 2024 WL 901657, at *3 (N.D. Ga. Jan. 16, 2024) (quoting same) (collecting cases); *Basel v. Sec'y of Def.*, 507 F. App'x 873, 876 (11th Cir. 2013) ("[G]iven that we are reluctant to allow procedural technicalities to bar Title VII claims, the scope of the administrative charges should not be strictly construed. In this same vein, it is unnecessary for a plaintiff to exhaust administrative remedies prior to raising a judicial claim of retaliation that grows out of an earlier charge." (citations omitted)).

"The scope" of a discrimination complaint is limited not by which boxes are checked on the form but rather "only by the scope of the EEOC investigation that

could reasonably be expected to grow out of the initial charges of discrimination." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (quotation omitted)); *see also McWhorter v. Nucor Steel Birmingham Inc.*, 304 F. Supp. 3d 1185, 1191 (N.D. Ala. 2018) ("Of course, the mere failure to check a box is not dispositive here."). *Cf.* 42 U.S.C. § 12203(a) (defining "retaliation" as just one kind of discrimination). "As long as allegations in the judicial complaint and proof are 'reasonably related' to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (quoting *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir.1980)).

The two cases UFCW cites do not disagree. In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court said nothing about post-filing retaliation and held only that the plaintiff in that case could not sue over "acts that occurred 300 days before February 27, 1995, the day that Morgan filed his charge." *Id.* at 114. The same is true of *Terhune v. Potter*, in which a plaintiff with multiple open EEOC charges, including one filed in January 2008 alleging a retaliatory transfer, failed to file a separate charge for wholly unrelated retaliation six months later regarding a performance warning and denial of a request for more pay. 2009 WL 2382281 (M.D. Fla. July 31, 2009).

Here, unlike in *Morgan*, Ms. Wheeler's retaliation claims were not yet ripe when she filed her EEOC charge, on December 22, because at that time she had been invited back to work and was planning to report as ordered. FAC at ¶¶ 48-50. Her execution of the release did not become a mandatory condition of her employment until after she worked her shift on December 26. *Id.* at ¶¶ 52, 54-56. Moreover, unlike in *Terhune*, UFCW's retaliation here was an escalation of the same discriminatory disciplinary process described in the charge—not separate and distinct therefrom—and as Kroger's "position statement" in response to her charge shows, the matter of Ms. Wheeler's post-charge termination was in fact put before the EEOC. *See* Exhibit A at 3-4.[6] Therefore, "the scope of the EEOC investigation," *Chanda*, *supra*, not only could have but <u>did</u> include Ms. Wheeler's termination for refusing to sign the release, further alleviating UFCW's professed concerns about administrative exhaustion.

## IV.    Conclusion

The allegations of the FAC permit "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra*. UFCW's few

---

[6] If the Court is inclined to consider UFCW's extrinsic evidence, then the undersigned respectfully request that the Court also consider Exhibit A hereto, so as not to rule on an "incomplete account[]" of what the EEOC's investigation actually entailed. *Rahmaan*, 2021 WL 86842, at *3. If the Court is not inclined to review extrinsic evidence, then the Motion must be denied on this point, because the question as to what EEOC was reasonably on notice to investigate must be resolved through factual discovery.

arguments for dismissal are contrary to law and fact in numerous ways. UFCW's

Motion should therefore be denied.

Respectfully submitted this February 20, 2025.

*/s/ Jake Knanishu*
Jake Knanishu
Georgia Bar No. 597103
James Radford
Georgia Bar No. 108007
Radford Scott LLP
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
T: (404) 400-3600
jradford@radfordscott.com
jknanishu@radfordscott.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 20, 2025, I filed the foregoing document through the Court's CM/ECF system, which will send email notification of such filing to all attorneys of record in this matter.

*/s/ Jake Knanishu*
Jake Knanishu
Georgia Bar No. 597103