IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| LYNN NORTH ) | |
| *as next friend of Lindsey Wheeler* ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO: |
| ) | 3:24-cv-00192-TCB-RGV |
| THE KROGER CO., AND UNITED ) | |
| FOOD AND COMMERCIAL WORKERS ) | |
| LOCAL 1996 ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT UNITED FOOD AND COMMERCIAL WORKERS
LOCAL 1996's REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW, Defendant United Food and Commercial Workers, Local 1996 (the "Union" or "Local 1996"), and submits this Reply in support of its Motion to Dismiss Plaintiff's Amended Complaint.

**I.   Exhibits 1-5 to Local 1996's Motion to Dismiss can be considered by the Court.**

Plaintiff argues in her Response Brief that Local 1996's Motion to Dismiss is "a premature motion for summary judgment" because one or more of the five exhibits attached to the Union's Motion to Dismiss are not central to Plaintiff's claims. Pl's Response at 6-8, ECF No. 30. However, each exhibit attached to the Union's Motion to Dismiss can be considered by the Court because they are

referred to in the Amended Complaint, central to Plaintiff's claims, and undisputed[1].

Exhibit 1 is a letter dated November 10, 2023, from Plaintiff's counsel. Plaintiff explicitly refers to the November 10 letter in the Amended Complaint, *see* Am. Compl. ¶ 47, and it is central to Plaintiff's claim that Local 1996 allegedly violated the ADA by not allowing her mother to attend a grievance meeting. Indeed, it is the primary basis for the allegation that Plaintiff requested to have a family member present at a grievance meeting.[2] *Id*. Plaintiff drafted the Amended Complaint, and if Plaintiff did not want the November 10 letter presented to the Court at this stage, she had the option to not incorporate it by reference in her pleading.

Exhibit 2 is the Constructive Advice Record ("CAR") issued to Plaintiff on or around October 7, 2023. Plaintiff explicitly references the CAR in the Amended Complaint and quotes from it. Am. Compl. ¶ 24. The CAR is central to Plaintiff's discrimination and retaliation claims because Plaintiff's termination from Kroger –

---

[1] In her Response, Plaintiff does not dispute the authenticity of any exhibit. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("'[U]ndisputed'" means that the authenticity of the document is not challenged.")

[2] As explained in its Brief in support of its Motion to Dismiss Plaintiff's Amended Complaint, the November 10 letter contradicts Plaintiff's claim that she requested to have one of her family members present with her during the grievance process, because in the letter, Plaintiff's counsel merely asks to have a family member "review and explain to her any documents that Kroger or UFCW Local 1996 presents related to this matter." Union's Brief at 19-20.

2

and the reason(s) provided by Kroger for the same – are "at the very heart" of Plaintiff's discrimination and retaliation claims against Local 1996. *Day*, 400 F.3d at 1276.[3]

Exhibit 4 is a letter dated December 12, 2023, from the Union to Plaintiff. This letter is explicitly referenced in the Amended Complaint, *see* Am. Compl. ¶ 48, and is central to Plaintiff's claim that Local 1996 allegedly violated the ADA by not "allowing" her to remain at the store where she ingested illegal drugs. *Id.* ¶¶ 69-70.

Exhibit 5 is Plaintiff's EEOC charge filed against Local 1996. Plaintiff references the charge in the Amended Complaint, *see* Am. Compl. ¶ 49, but even if she had not, it can be considered by the Court because an "EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading." *Chesnut v. Ethan Allen Retail, Inc.*, 971 F.Supp.2d 1223, 1228 (N.D.Ga. 2013) (citations omitted).

Finally, if the Court determines that one or more of the exhibits attached to Local 1996's Motion to Dismiss are not central to Plaintiff's claims, the proper remedy is to not consider the exhibit(s), not deny the Motion as premature. *See Talton v. American Family Insurance Company*, 1:19-CV-2571-MHC, 2020 WL

---

[3] Exhibit 3, the termination notice sent to Plaintiff on or around October 19, 2023, is central to Plaintiff's claims for the same reasons as Exhibit 2.

13573497, *6 (Jan. 27, 2020) (declining to consider documents attached to defendant's motion to dismiss that were deemed not central to plaintiff's claims).

## II.     Plaintiff's Amended Complaint is a shotgun pleading.

Plaintiff argues that the allegations in the Amended Complaint that accuse "Defendants" of unlawful conduct without specifying the alleged conduct that is attributable to each defendant[4] "cannot be 'separated out' because they describe actions [both] Defendants undertook together." Pl's Response at 14. However, Plaintiff's Amended Complaint contains no factual matter whatsoever to support an alleged conspiracy between Kroger and Local 1996 to deny Plaintiff accommodations in order "to resolve Ms. Wheeler's grievance as they desired[.]" Am. Compl. ¶ 75. Instead, the allegation of a conspiracy is nothing more than a legal conclusion masquerading as facts. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Without *some* factual foundation to support the allegation that Kroger and Local 1996 conspired to reach a resolution to the detriment of Plaintiff, or *some* factual matter showing that Kroger and Local 1996 knowingly and purposely acted in concert to deprive Plaintiff of her rights, Plaintiff cannot lump Kroger and the Union together but instead must identify the specific allegation(s) that apply to each party so that each party can respond to the same.

---

[4] *See* Am. Compl. ¶¶ 70-76.

### III. Plaintiff fails to plead facts that show she sustained an adverse employment action as required to state a failure to reasonably accommodate claim.

As argued in Local 1996's Brief, the Eleventh Circuit has made clear that a failure to reasonably accommodate is actionable *only* "if that failure negatively impacts the employee's hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of his employment." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023). In her Response Brief, Plaintiff fails to demonstrate that she alleged any facts in the Amended Complaint that show she was harmed by the Union's alleged failures to accommodate. Instead, Plaintiff argues that Local 1996 needlessly cited duty of fair representation ("DFR") cases which she argues are not relevant to her ADA claims. Pl's Response at 14-15. However, the DFR cases are cited by Local 1996 to show that employees do not have a legal right to participate in the grievance process and therefore Plaintiff cannot show as a matter of law that she was harmed by the alleged exclusion of her mother from that process. Union's Brief at 17-19. Plaintiff also cites no case that holds that if a worker has a disability, they have a right to be involved in the grievance process or to have a family member involved. The Union had a right to process and settle the grievance challenging Plaintiff's termination from Kroger without any input from Plaintiff or her mother, and as a result, Plaintiff cannot

show – and does not even allege – that she was harmed because of the alleged exclusion of her mother from the process.

*Beasley* makes clear that in an ADA failure to reasonably accommodate case, a Plaintiff must show that the failure "negatively impacts the employee's hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of his employment." 69 F.4th at 754. In *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024), the U.S. Supreme Court - in a Title VII case - held that an adverse employment action does not require a showing of "significant harm" but instead "some harm." Taken together, these cases require a plaintiff bringing an ADA failure to accommodate claim to show that they suffered *some* harm due to the alleged failure to accommodate. In other words, a plaintiff "must show that [they] suffered an adverse employment action as a result of [the defendant's] failure to accommodate." *EEOC v. Army Sustainment, LLC*, No. 1:20-CV-234-RAH-CWB, 2023 WL 6276341, *13 (M.D. Ala. Sept. 26, 2023). *See also EEOC v. Total System Services, LLC*, 1:23-cv-01311-WMR, 2024 WL 4471319, *9 (N.D.Ga. Sep. 24, 2024) ("[A]n adverse employment action [is] an essential element of a failure to accommodate claim.")

As the Eleventh Circuit explained in *Murray v. Learjet, Inc.*, No. 24-11189, 2024 WL 4707968 (11th Cir. Nov. 7, 2024) - a case that was decided less than five months ago - an employment action is not adverse unless there is "some change in

an identifiable employment term or condition that left [the plaintiff] worse off." *Id.* at *2. As argued in Local 1996's Brief, Plaintiff fails to allege facts showing that she was left "worse off" by her mother not participating in a grievance meeting or from her reinstatement to a different store. Union Brief at 14-17.

In her Response, Plaintiff argues that the facts pled in the Amended Complaint "very much describe a 'negative impact' to multiple terms and conditions" of Plaintiff's employment. Pl's Response at 18. To support her claim of a purported "negative impact", Plaintiff cites a "strange new work environment", the interruption of "an eight-year routine for no legitimate reason", and "Defendants' deliberate exclusion of [Plaintiff] from … 'settlement negotiations'". *Id.* For one, the Amended Complaint does not contain any allegation that Plaintiff was harmed due to a "strange new work environment" or the interruption of "an eight-year routine" and it is well-established that a plaintiff cannot amend a pleading through a response brief. *See Huls v. Llabona,* 437 F. App'x 830, 831 n.5 (11th Cir. 2011). Therefore, these purported "harms" offered by Plaintiff in her Response should be disregarded by the Court.

However, even if Plaintiff had alleged facts in the Amended Complaint related to the three "harms" listed above, none of them rise to the level of an actionable adverse employment action required to sustain an ADA failure to reasonably accommodate claim.

7

In the Amended Complaint, Plaintiff does not allege any facts showing that any of her terms or conditions of employment changed upon her reinstatement to a different store. Instead, the closest Plaintiff comes to alleging a change to an employment term is the allegation that the location of her preferred store "made the store much more accessible to her than others in the Atlanta area because of her disabilities." Am. Compl. ¶ 69. However, as argued in Local 1996's Brief, driving distance alone does not rise to the level of a disadvantageous change in terms or conditions of employment that is required to sustain an ADA failure to accommodate claim. Union Brief at 15-17. *See also Burnette v. Northside Hosp.,* 342 F.Supp.2d 1128, 1136 (N.D.Ga. 2004) ("[A] lateral reassignment which results in an increased commute for the employee does not constitute an adverse employment action."); *Varnedoe v. Brennan,* No. CV418-067, 2021 WL 1115300, *4 (S.D. Ga. Mar. 2, 2021) ("The fact that the transferee position is inconvenient, for example because it requires a longer commute, is insufficient to make it adverse for Title VII purposes."), *report and recommendation adopted*, No. CV418-067, 2021 WL 1112700 (S.D. Ga. Mar. 23, 2021), *aff'd sub nom. Varnedoe v. Postmaster Gen.*, No. 21-11186, 2022 WL 35614 (11th Cir. Jan. 4, 2022).

### IV. **Local 1996 did not mischaracterize evidence.**

In her Response, Plaintiff accuses Local 1996 of making "blatant mischaracterizations" of the exhibits attached to its Brief. Pl's Response at 19. In

lobbing this accusation, Plaintiff completely ignores the fact that the November 10 letter to Local 1996 (Exhibit 1) asks that Local 1996 allow a family member to "review and explain to her any documents" presented during the grievance process and does not ask to have Plaintiff's mother attend a grievance meeting as the Amended Complaint alleges. Am. Compl. ¶ 33. As argued in Local 1996's Brief, the November 10 letter contradicts the allegations in the Amended Complaint and thus should be controlling. Union Brief at 20, citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

> **V.    Plaintiff does not allege a plausible retaliation claim against Local 1996 because she fails to allege that the Union was responsible for any adverse employment action she allegedly suffered.**

In her Response, Plaintiff argues that Local 1996 retaliated against her by "requiring [her] to waive her right to relief available under federal law as a term of continued employment." Pl's Response at 20-21. However, as argued in Plaintiff's Brief, Plaintiff does not allege that Local 1996 is responsible for any alleged adverse employment action she allegedly faced - such as her termination from Kroger - and thus she fails to state a claim against Local 1996 for retaliation. Union Brief at 23-25.

Plaintiff also argues in her Response that "requiring an employee to waive her right to relief available under federal law as term of continued employment" is "one kind of retaliatory act[.]" Pl's Response at 20. However, the case that Plaintiff

9

cites does not support Plaintiff's argument that asking and/or demanding that an employee sign a release is an adverse employment action or otherwise constitutes an actionable retaliatory act.

In *Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d 1261 (11th Cir. 2008), the issue before the court was whether an employee's "refusal to sign an [arbitration] agreement that applied to a pending charge of discrimination" was "protected activity that could support a claim of retaliation". *Id*. at 1268. In *Goldsmith*, the plaintiff was subjected to repeated acts of intentional racial discrimination, harassment, and retaliation. While still employed by the defendant, the plaintiff filed an EEOC charge alleging discrimination based on a hostile work environment and failure to promote. *Id*. at 1271. After his charge was filed, the plaintiff was asked to sign an arbitration agreement that required arbitration of all past, present, and future claims against his employer. *Id*. Goldsmith refused to sign the arbitration agreement because it would have required arbitration of his pending discrimination claim. *Id*. at 1271-72. He was fired for refusing to sign the arbitration agreement, and he filed an additional EEOC charge following his termination alleging, *inter alia*, retaliatory termination. *Id*. at 1272.

The case was tried before a jury which ruled that the plaintiff suffered unlawful retaliation and awarded him damages. *Id*. at 1275. The defendant appealed the trial court's denial of defendant's motion for judgment as a matter of

law, and Goldsmith argued to the Eleventh Circuit that "his immediate termination for his refusal to sign the [arbitration] agreement established a causal relation between his protected activity—the filing of his charge of discrimination—and his termination." *Id*. at 1278. The Eleventh Circuit agreed that there was sufficient evidence for the jury to conclude that the plaintiff was fired for refusing to sign an arbitration agreement that would have covered his pending EEOC charge. *Id*.

Plaintiff alleges that a Local 1996 representative asked her to sign a release on December 28, 2023. Am. Compl. ¶ 54. Although Plaintiff filed her EEOC charges against Local 1996 on December 22, 2023, *see* Exhibit 5 to Local 1996's Motion to Dismiss (ECF No. 25-6); Am. Compl. ¶ 49, Plaintiff does not allege in the Amended Complaint, or argue in her Response Brief, that Local 1996 was aware that the charge had been filed when it allegedly asked and/or demanded that she execute a release. But even assuming, *arguendo*, that Local 1996 was aware of the charge, Plaintiff fails to allege that Local 1996 took any adverse employment action against her.

Plaintiff alleges that Kroger terminated her employment "after and in response to her ADA-protected activity" including "refusing to release Defendants of all liability of any kind as part of the resolution of her disciplinary appeal". Am. Compl. ¶¶ 78-80. Plaintiff does not, however, allege that Local 1996 was involved in, caused, and/or contributed to her alleged termination from Kroger. Instead,

11

Plaintiff separately alleges that the demand to "execute the above-described 'general, complete and unconditional release' in order to continue working was a material change in the conditions of her employment." *Id*. ¶ 81. Thus, Plaintiff alleges that Local 1996's alleged demand that Plaintiff execute a release constituted an adverse employment action independent from her termination by Kroger. *Id.* ¶¶ 81-83.

*Goldsmith* does not support Plaintiff's position that Local 1996's alleged "demand itself is retaliatory as a matter of law." Pl's Response at 21. For one, *Goldsmith's* holding applies specifically to arbitration agreements, not releases. *Goldsmith* specifically holds that refusing to sign an arbitration agreement that applies to a pending charge of discrimination can constitute "protected activity that could support a claim of retaliation". 513 F.3d. at 1268. Nevertheless, relying on *Goldsmith*, Plaintiff appears to argue that the demand to execute a release, and her refusal to do so, satisfies both the 1) engaged in statutorily protected conduct and 2) suffered an adverse employment action prongs of an ADA retaliation prima facie case. Plaintiff is incorrect, because even assuming, *arguendo*, that Local 1996 demanded that Plaintiff sign a release, and that Plaintiff engaged in ADA protected conduct by refusing to sign the release, Plaintiff still fails to allege that Local 1996 was involved in, caused, and/or contributed to any adverse employment action that she allegedly suffered. Because Plaintiff does not allege that she sustained an

12

adverse employment action at the hands of Local 1996, the Amended Complaint fails to state a plausible retaliation claim against Local 1996. *See Witt v. Franklin Cty. Bd. of Educ.,* No. 3.14 CV 01395-AKK, 2014 WL 7330862, *4 (N.D. Ala. Dec. 19, 2014) (holding that "because [the plaintiff's][ allegations do not support the theory that [defendant] took adverse employment actions […] [plaintiff] cannot state a prima facie claim under Title VII and, therefore, her case is due to be dismissed for failure to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    Plaintiff also fails to state a plausible retaliation claim against Local 1996 because the Amended Complaint, as pleaded, does not allege a causal connection between her refusal to sign a release and *any* action taken by Local 1996. As cited above, Plaintiff alleges that Kroger terminated Plaintiff after and in response to her ADA-protected activity, including "refusing to release Defendants of all liability of any kind as part of the resolution of her disciplinary appeal". Am. Compl. ¶¶ 78-79. But Plaintiff does not allege that her refusal to release Local 1996 from liability caused[5] *any* action taken by the Union. *See* Am. Compl. ¶¶ 78-83. For example, Plaintiff does not allege that Local 1996 asked Kroger to terminate her to response

---

[5] The Eleventh Circuit "requires a showing of but-for causation." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2006).

to her refusal to sign a release, or that the Union had any role whatsoever in her alleged termination. For these reasons, Plaintiff fails to state a plausible retaliation claim against Local 1996.

### VI. Plaintiff failed to exhaust administrative remedies on her retaliation claim against Local 1996.

Although Plaintiff attached a copy of Kroger's EEOC position statement to her Response Brief, she conspicuously omitted the position statement filed by Local 1996. Pl's Response at 24. Needless to say, Kroger's EEOC position statement is not relevant in determining the scope of the EEOC's investigation against Local 1996.

Furthermore, as explained above, Plaintiff's retaliation claim against Local 1996 is predicated on the allegation that the Union demanded that Plaintiff execute a release, and that the demand itself constituted an adverse employment action. Am. Compl. ¶¶ 81-83; Pl's Response at 20-21. The allegation that the "demand itself is retaliatory as a matter of law" does not grow out of[6] the ADA discrimination allegations set forth in Plaintiff's EEOC charge against the Union, *see* Exhibit 5 to Union's Motion to Dismiss, and therefore Plaintiff failed to exhaust administrative remedies with respect to her retaliation claim against Local 1996.

---

[6] *See Gregory v. Georgia Department of Human Services*, 355 F.3d 1277, 1280 (11th Cir. 2004).

In the Amended Complaint, Plaintiff alleges that Local 1996 representative Debbie Whipple contacted Plaintiff "and told [Plaintiff] she would not be allowed back to work again unless and until she signed the document containing the above-described 'general, complete and unconditional release.'" Am. Compl. ¶ 52. Then, an unidentified representative of Local 1996 allegedly told Plaintiff that "she was not allowed to return to work without signing the above-described 'general, complete and unconditional release.'" *Id*. ¶¶ 54-56. These allegations form the basis of Plaintiff retaliation claim against Local 1996, *see* Am. Compl. ¶¶ 81-83, but are not set forth in her EEOC charge against Local 1996. As a result, the EEOC could not have investigated these allegations and therefore Plaintiff failed to exhaust administrative remedies with respect to her retaliation claim against the Union. *See Hillemann v. Univ. of Central Fl.,* 167 Fed.Appx. 747, 749-50 (11th Cir. Jan. 18, 2006) (finding that plaintiff failed to exhaust on retaliation claim where EEOC charge was silent about retaliation, and stated only that the adverse action allegedly suffered was based on age.); *Maxwell v. Inner Harbour, Ltd.,* No. 1:08-cv-2925-RWS, 2009 WL 1045478, *2 (N.D.Ga. Apr. 20, 2009) (dismissing retaliation claim where plaintiff failed to allege retaliation in her EEOC charge).

For these reasons, and the reasons set forth in Local 1996's opening Brief, Plaintiff's claims against the Union should be dismissed with prejudice.

DATED this 20th day of March, 2025.

15

          By:   <u>s/ Michael B. Schoenfeld</u>
                  Georgia Bar No. 863727
                  STANFORD FAGAN LLC
                  2540 Lakewood Avenue SW
                  Atlanta, GA 30315
                  (404) 622-0521, ext. 2244
                  michaels@sfglawyers.com

## **CERTIFICATION OF COMPLIANCE**

The undersigned attorney hereby certifies, pursuant to LR 7.1(D), NDGa., that the foregoing **REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was prepared in accordance with LR 5.1, NDGa., using Times New Roman font, 14 point.

By:   s/ Michael B. Schoenfeld

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, I submitted the foregoing **REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** to the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following counsel of record:

>Jake Knanishu
>James Radford
>RADFORD SCOTT LLP
>125 Clairemont Ave., Suite 380
>Decatur, Georgia 30030
>jradford@radfordscott.com
>jknanishu@radfordscott.com
>*Counsel for Plaintiff*
>
>Aaron Holt
>Silvia Chicas
>COZEN O'CONNOR, P.C.
>1221 McKinney Street, Suite 2900
>Houston, TX 77010
>aholt@cozen.com
>schicas@cozen.com
>
>Danielle Le Jeune
>COZEN O'CONNOR, P.C.
>The Promenade, Suite 400
>1230 Peachtree Street, N.E.
>Atlanta, GA 30309
>dlejeune@cozen.com
>
>*Counsel for Defendant Kroger*

By:   s/ Michael B. Schoenfeld