IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| LYNN NORTH, as next friend of Lindsey Wheeler, § § § **Plaintiff,** § § § **v.** § § § THE KROGER CO. and UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 1996, § § § § § **Defendants.** § | Civil Action No. 3:24-cv-00192-TCB-RGV |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff's Response makes crystal clear that all of her claims solely relate to the grievance process stemming from her October 2023 termination. *See* Plaintiff's Response in Opposition to Motion to Dismiss [Doc. 29] ("Response") at 10 ("Ms. Wheeler's case is about her entire grievance appeal"). Plaintiff does not and cannot cite to any authority holding post-termination reasonable accommodation requests are actionable. At bottom, Plaintiff's attempt to use the Americans with Disabilities Act ("ADA") as a vehicle to renegotiate a post-termination settlement of that grievance, and entirely ignore her actual termination, should be rejected.

### I. Plaintiff's Failure to Allege any Pre-Termination Reasonable Accommodation Requests is Fatal to her Claims

Plaintiff's Response correctly notes there is an "avalanche of caselaw" about

post-termination activity not being actionable. Response at 17. Instead of arguing against the weight of this authority, Plaintiff attempts to distinguish these cases in three ways: (i) misapplying the 11th Circuit's *Beasely* decision to a post-termination grievance, (ii) reframing the October 2023 termination and grievance proceeding; and (iii) arguing that even if she was terminated, merely "desir[ing] the position of Courtesy Clerk" is sufficient to distinguish all post-termination reasonable accommodation caselaw. None of these attempts escape the facts of this case nor the "avalanche" of caselaw on post-termination reasonable accommodation requests.

### (i)   *Beasley v. O'Reilly Auto Parts,* 69 F.4th 744 (11th Cir. 2023)

Unlike the facts presented here, *Beasley* involved an active employee denied an accommodation of an interpreter for "nightly pre-shift meetings" and to "communicate with his supervisor and O'Reilly HR representatives" about "absences [that] were authorized and excused." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 751 (11th Cir. 2023). As a result, the alleged failure to provide an interpreter "prevented Beasley from adequately discussing and successfully resolving the disciplinary dispute…[w]hich in turn may have adversely affected that discipline decision and O'Reilly's evaluations, pay, and the later disciplinary actions imposed on him." *Id*. at 756. The *Beasley* court expressly noted he was a *current* employee at the time of the requested accommodations; and termination was not an issue in the opinion itself. "No failure to accommodate could have negatively

2

impacted Beasley's hiring because he was hired, **_nor could any have negatively impacted him by contributing to his firing because he was not fired_**." *Id*. at 756.

Plaintiff's case is factually dissimilar to *Beasley*. The plaintiff in *Beasley* was an active employee seeking to communicate regarding ongoing absences, and the alleged failure to do so impacted future aspects of his continued employment, including progressive discipline under the attendance policy. Here, Plaintiff was terminated *before* any reasonable accommodation requests; and the Response concedes the "case is about her entire grievance appeal[.]" Response at 14.

Plaintiff cites absolutely no authority holding a post-termination reasonable accommodation request is actionable. *See generally*, Response *Compare with* [Doc. 26-1] at 9-10, note 3. At best, Plaintiff cites *Barneman v. Int'l Longshoreman Ass'n Loc. 1423*, 840 F. App'x 468, 478 (11th Cir. 2021) for the proposition an employee "was granted reasonable accommodation during his grievance appeal." Response at 17 (emphasis in original). The plaintiff in *Barneman* was a union member subject to a collective bargaining agreement that hired workers "on a daily, per job basis through the Union's hiring hall." *Barneman,* 840 F. App'x at 471. Barneman was terminated from two different day jobs on two different days (April 9, 2016 and October 17, 2016) and had filed grievances on both. *Id*. at 471-472. Before the grievance hearing on the April 9th termination, Barneman requested he be allowed to carry a seat cushion as a reasonable accommodation on future jobs. *Id*. at 471.

3

During the grievance hearing on the April 9th termination, the employer denied Barneman's requested accommodation but allowed him to bring a disability-related cushion to future day jobs. *Id*. In the subsequent lawsuit and claim of failure to accommodate heard by the 11th Circuit, the appellate court held that "no duty to provide a reasonable accommodation was triggered, and the April 9 termination cannot serve as a basis for Barneman's ADA claim" because "he never requested an accommodation prior to that date." *Id*. at 478. In other words, Barneman's request for an accommodation was not actionable because it occurred after he had been terminated. *Id*.[1] The same result should be reached here.

    *(ii)*    <u>Reframing the October 2023 Termination and grievance proceeding</u>

Plaintiff argues that she was "not terminated as a matter of law," citing the ADA's definition of an "employee" as "an individual employed by an employer." Response at 18 *citing* 42 USC § 12111(4). Again, the plain language of the October 19, 2023 Notice of Termination [Doc. 26-2] is clear: "[t]his letter is to advise you that your *employment* with Kroger Store 00420 has been terminated for the reasons outlined above." Plaintiff simply cannot argue both that she was "employed" by

---

[1] It is further notable that the accommodation requested in *Barneman* related to the performance of his actual job duties, not the grievance process itself. *See* 29 C.F.R. § 1630.2 ("modifications or adjustments to the work environment, or to the manner or circumstances under which the *position held or desired is customarily performed*, that enable an individual with a disability who is qualified to perform the essential functions of that position.")

Kroger and that the Notice of Termination of her *employment* is of no importance to her claim.

The Response next contends Plaintiff was seeking "modifications or adjustments to a job application process" related to hiring for the position of a Courtesy Clerk. Response at 17. If it were as easy as simply "desiring" a position from which the employee was terminated, then the "avalanche" of caselaw on post-termination reasonable accommodations being futile would not exist. *See Puckett v. Bd. of Trustees of First Baptist Church of Gainesville, Inc.,* 17 F. Supp. 3d 1339, 1343 (N.D. Ga. 2014) (granting 12(b)(6) motion where plaintiff "does not allege that he requested an accommodation before he was terminated[.]"); *McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x 897, 899–900 (11th Cir. 2014) ("Because [plaintiff] did not make a specific demand for an accommodation *until after the decision to fire h[er] had been made*, [the employer] is not liable for failing to accommodate [plaintiff's] disability … before making the decision to terminate [plaintiff's] employment.") (emphasis added); *Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir.1997) ("where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant."). The weight of this post-termination authority is mirrored by the holdings of Circuit Courts across the country. *See* Motion [Doc. 26-1] at note 3.

Next, Plaintiff attempts to reframe the grievance meeting on October 27, 2023 as an evidentiary determination on her misconduct to characterize it as a part of "an employee's day-to-day job duties and all other 'terms and conditions and privileges of employment.'" Response at 13. Again, Plaintiff does so to distinguish post-termination reasonable accommodation request caselaw. *See* Response at 14 ("*Novella* considered only 'a termination meeting, the purpose of which is to give the employee notice of his termination.'"). The October 27, 2023 grievance meeting was effectively a settlement discussion about possibly resolving the grievance filed on an already issued and final termination for misconduct. The December 12, 2023 letter from the Union to Plaintiff shows the grievance meeting is much closer to the termination meeting in *Novella* than the attendance discussion with a current employee in *Beasley*. *See* December 12, 2023 UFCW Letter [Doc. 26-3] ("The Union's request was for you to be reinstated[. O]n November 3, 2023, the Union received an offer of reinstatement [which] was discussed with you and your mother…A copy of the offer was email to [your mother] Lynn North on November 8, 2023[. Kroger then] presented me with a new settlement offer of reinstatement to Kroger store #647…The offer was discussed with you and your mother on the same day. A copy of the offer was email to Lynn North on November 28, 2023.")

The facts here are beyond even the facts in *Novella* in that Plaintiff already *received* a notice of termination. *See Novella v. Wal-Mart Stores, Inc.*, 226 F. App'x

6

901, 903 (11th Cir. 2007) ("[W]e conclude that communication at a termination meeting, the purpose of which is to give the employee notice of his termination, is not an 'essential function' of an employee's job."). Recently, in *Equal Emp. Opportunity Comm'n v. Kaiser Found. Health Plan of Georgia, Inc.,* a sister Court in the Northern District of Georgia, made clear the holding in *Novella*, and the purpose behind the holding still holds true:

> "The Court in *Novella* found that the plaintiff's job functions and duties had effectively ceased at the point of his termination meeting. Therefore, in its view, the interpreter accommodation requirement was not "reasonable" and required under the ADA as participation in the termination meeting was not an essential function of the job." No. 1:19-CV-5484-AT, 2021 WL 3508533, at *4 (N.D. Ga. Aug. 9, 2021).

The Court in *Kaiser* specifically distinguished the holding in *Novella* to situations where the employee is still active. *Id*. ("By contrast, in this case, Plaintiff's claim focuses on the employer's failure to provide requisite accommodations to facilitate Plaintiff reasonably accessing her worksite to perform her duties in the first six months of her job."). Thus, situations involving current employees, like in the Eleventh Circuit's decision in *Beasley*, are fundamentally different than those involving terminated employees, like Plaintiff.

It is true that Plaintiff may "exercise[] a collectively-bargaining right to appeal" her termination, but such a contractual right is distinctly separate from statutory rights as an employee. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50, 94 S. Ct. 1011, 1020, 39 L. Ed. 2d 147 (1974) (holding "distinctly separate nature

7

of these [collectively-bargained] contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respective forums."). In other words, Plaintiff has a right to file a grievance on her October termination just like she has a right to file a lawsuit challenging her termination, but exercising these rights are distinctly different and apart from a current employee or job applicant requesting a reasonable accommodation. To hold otherwise would allow for *any* terminated employees to sue for failure to provide a reasonable accommodation during the litigation process itself if it is connected to their terminated employment.

At bottom, the facts of this case are closest to this Court's decision in *Puckett v. Bd. Of Trustees of First Baptist Church of Gainesville*; and Plaintiff's failure to address this case at all speaks volumes. 17 F. Supp. 3d 1339, 1343 (N.D. Ga. 2014) (granting 12(b)(6) motion to dismiss failure to accommodate claims because plaintiff simply "does not allege that he requested an accommodation before he was terminated[.]"). The same result as in *Puckett* should be reached here.

   *(iii)*   Plaintiff's Accommodation Requests, as Pled, Are Not Reasonable

As a preliminary matter, Plaintiff selectively quotes *Beasley* for the proposition that a reasonable accommodation need not "only" be limited to essential job functions but "are available in a broad range of circumstances[.]" Response at

13. This is misleading and is a misapplication of *Beasley*. First, the *Beasley* Court specifically stated in its decision that it says "[n]othing" regarding "whether the ADA's requirement that an employer provide an employee with reasonable accommodations extends beyond those that will enable him to perform the essential functions of his job[.]" *Beasley*, 69 F.4th at 760. Additionally, after *Beasley,* this Court has continued applying the same line of cases establishing that "an employer is under ***no obligation*** to make an accommodation if an employee does not require an accommodation to perform his essential job functions." *Batten v. K-VA-T Food Stores, Inc.*, No. 4:22-CV-00179-WMR, 2023 WL 9106966, at *4 (N.D. Ga. Dec. 8, 2023), *appeal dismissed,* No. 23-14199-AA, 2024 WL 3019904 (11th Cir. May 15, 2024) (emphasis added). In *Batten*, the Court reiterates this position:

> "Given this lengthy discussion [regarding *Beasley*], **the Court restates the aforementioned rule of law** from *Willis*, *LaChance*, and *Lucas* as articulated in *D'Onofrio*: '[I]f **an employee does not require an accommodation to perform h[is] essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided.**'" *Id*. at *8.

  (a) <u>Request to Have a Second Representative Present</u>

Plaintiff's Response argues that without a family member present at unidentified grievance meetings, "nobody at the meetings could communicate with her effectively because of her reliance on home signs," which is especially important "in conversations as legally sophisticated as the negotiation of a grievance." *See*

9

Response at 14. Yet, the Complaint makes clear there *was* communication with Plaintiff's family about the only alleged product of the grievance hearings (*i.e.*, possible offers of reinstatement). *See* First Amended Complaint [Doc. 20] ("FAC") ¶ 40 ("Ms. Wheeler <u>and her family</u> informed Defendants that she did not accept the terms."); ¶ 53 ("<u>Ms. Wheeler's mother informed Ms. Whipple</u> that they were not going to sign[.]").

The December 12, 2023 letter from the UFCW further shows the back-and-forth dialogue between the UFCW and Ms. Wheeler's mother. *See* December 12, 2023 UFCW Letter [Doc. 26-3] ("The Union's request was for you to be reinstated[. O]n November 3, 2023, the Union received an offer of reinstatement [which] was discussed with you and your mother…A copy of the offer was emailed to [your mother] Lynn North on November 8, 2023[. Kroger then] presented me with a new settlement offer of reinstatement to Kroger store #647…The offer was discussed with you and your mother on the same day. A copy of the offer was emailed to Lynn North on November 28, 2023."). It is undisputed that "Ms. Wheeler's case is about her entire grievance appeal[.]" Response at 14. This "grievance appeal" was effectively a settlement negotiation that Ms. Wheeler's mother was – as pled in the complaint – intimately involved in. *See* FAC ¶ 40, ¶ 53. Plaintiff has pled no facts establishing how a *second* representative physically present at a post-termination grievance meeting relates to the essential functions of her job as a Courtesy Clerk,

10

especially when she also pled facts establishing a pattern of communication with her preferred representative – the exact purpose of her alleged reasonable accommodation. The FAC has simply failed to allege sufficient facts establishing an actionable reasonable accommodation in this case.

(b) <u>Request to Change the Reinstatement Deal to Have a Shorter Commute</u>

Plaintiff's second pled reasonable accommodation request relates to her argument that she should have been reinstated to her preferred store instead of the store agreed by the union because of the length of her commute. FAC ¶ 44 (requesting to "remain at the Kroger store where she had been working, because it was much closer to her house and her disabilities make it impossible for her to drive."). Because the FAC alleges it is "impossible" for Plaintiff to drive at all, the FAC's failure to allege how the store "much closer to her house" allows her to perform the essential functions of her role as a Courtesy Clerk while the alternative store less than six miles away does not. *See* [Doc. 25-1] at 15. Plaintiff's response does not meaningfully respond to this fact, except to say the "proximity to her home made it more feasible for her family to bring her to work and for her mother to come interpret for her when needed." Response at 15. Even assuming this to be true, it does not establish facts sufficient to allege a reasonable accommodation. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (quoting *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 947 (N.D. Ga. 1997) (holding an

11

employer is not required to provide an employee "the maximum accommodation or every conceivable accommodation possible."). Numerous courts have rejected, as a matter of law, reasonable accommodations based on commute preferences. *See* Motion [Doc. 26-1] at 20.

Finally, Plaintiff's attempts to allege a discriminatory transfer are predicated on reframing the offer of reinstatement made to her. This alleged reasonable accommodation request arises solely from the offer of reinstatement the FAC makes clear the Plaintiff rejected. *See* FAC ¶ 40, 53 *Compare* December 12, 2023 UFCW Letter [Doc. 26-3] ("Local 1996 has accepted the settlement offer…you will be reporting to store #647 located at 1751 Newnan Crossing Blvd. East, Newnan, Georgia 30265."). Either Plaintiff rejected the offer of reinstatement and remained terminated, or she accepted the offer of reinstatement at a new store. She cannot have it both ways to argue she had a legal right to change the terms of her reinstatement as a form of "accommodation." Plaintiff has pled in the FAC and argued in her Response that "Ms. Wheeler did not… agree to the transfer[.]" Response at 5 *citing* FAC ¶¶40-42. This simply means she never changed from the status she occupied at the time the offer was made: a terminated, former employee. The fact Plaintiff "reported as scheduled to her first shift at the new store" on December 26, 2023, does not change this result because her FAC specifically alleges she rejected the offer of reinstatement. *See* FAC ¶ 40 ("…Ms. Wheeler … did not accept the

terms."); ¶ 53 ("…they were not going to sign…"). Accordingly, her reasonable accommodation request relating to commute preference and transfer must fail as a matter of law.

## II. Plaintiff's Termination is Inarguably "Central" to her Claims

As a threshold matter, Plaintiff contends that both the (i) October 19, 2023 Notice of Termination [Doc. 26-2] and (ii) December 12, 2023 UFCW Letter [Doc. 26-3] should not be considered because they are not "necessary and essential" to her claims. Response at 7. Rather, in her view, the only document fitting that bill "is the release." *Id.* This position cannot withstand even cursory review as both documents directly relate to the central allegations pled in the FAC [Doc. 20].[2]

Critically, Plaintiff concedes one of her "central claims" against Kroger is that it "***terminated*** her employment because ADA-protected activity[.]" Response at 7 (emphasis added). Plaintiff's FAC attempts to maneuver around her October 2023 termination as follows:

- "Ms. Wheeler's manager sent her home and wrote her up … *suspending her employment indefinitely*." FAC ¶ 24 (emphasis added).
- "The official Department of Labor 'Separation Notice' … provide[s] her termination 'effective' October 7, 2023." FAC ¶ 58.
- "Kroger terminated Ms. Wheeler's employment on December 30, 2023." FAC ¶ 57.

---

[2] *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").

Plaintiff cannot simply reframe the clear and self-evident meaning of the October 19, 2023 Notice of Termination [Doc. 26-2] as an "indefinite suspension" for purposes of advancing an ADA claim past a 12(b)(6) motion. *Compare* FAC ¶ 24 *with* [Doc. 26-2] ("[t]his letter is to advise you that your employment with Kroger Store 00420 has been terminated for the reasons outlined above."). Similarly, Plaintiff attempts to conjure facts relating to the resolution of the grievance negotiation in order to recast it as a part of her employment rather than a post-termination meeting to discuss possible offers of reinstatement. Regardless, the grievance and post-termination offers of reinstatement are the sum and substance of her claims:

> "On or around December 12, 2023, UFCW told [Plaintiff] her *grievance had been withdrawn*, *that UFCW considered it resolved, and that she was to report to work at the new store on December 26, 2023*." FAC ¶ 48 (emphasis added)

The grievance was not simply "withdrawn" in a vacuum such that an active employee should simply "report to work at the new store on December 26, 2023;" the December 12, 2023 UFCW Letter [Doc. 26-3] makes clear the "*offer of reinstatement*" to a terminated employee was "*accepted"* by the Union and, as a result, "*the grievance challenging your discipline is withdrawn*." *See* December 12, 2023 UFCW Letter [Doc. 26-3] at 2.

Both documents are central and necessary to Plaintiff's failure to

14

accommodate claims because the facts pled, posture of reinstatement offer, and circumstances of the grievance arising from the October 7, 2023 termination are central to the two failure to accommodate claims alleged. Indeed, both alleged accommodation failures are intertwined with that grievance, inarguably relating to the October 2023 termination.[3]

Plaintiff's Response does not refute *Brown v. Delta Air Lines, Inc.* at all, which is directly on point and involves consideration of a similar situation where Plaintiff alleged a medical "restriction on lifting over 50 pounds" when, in fact, the doctor's note attached to the employer's 12(b)(6) shows she could lift 50 pounds "frequently[.]" No. 1:20-CV-4566-JPB-JSA, 2021 WL 2479091, at *15 (N.D. Ga. Mar. 9, 2021), *report and recommendation adopted,* No. 1:20-CV-4566-JPB-JSA, 2021 WL 12299007 (N.D. Ga. July 21, 2021) (Anand, J.). As a result, the Court found that "the exhibits demonstrate that Plaintiff's allegations regarding the restrictions in her 'doctor's note' are not accurate" and considered the exhibits when granting the 12(b)(6) motion. *Id.* The same result should be reached here.

---

[3] Plaintiff does not seriously challenge the authenticity of the documents attached to Kroger's Motion insofar as she fails to specify how or why she believes the exhibits attached to Kroger's Motion are not authentic. *See* Response at 8. Similarly, claiming the records are incomplete because it does not include a release misses the mark because Plaintiff repeatedly argues she never agreed to any such release (or, by extension reinstatement, which necessitated Kroger's Motion in the first place). FAC ¶ 40 ("After discovering … that UFCW had purported to accept the agreement on her behalf, [Plaintiff] and her family informed Defendants that she did not accept the terms.").

        Respectfully submitted,

        **COZEN O'CONNOR, P.C.**

        */s/ Aaron Holt*
        Danielle Le Jeune
        Georgia Bar No. 134222
        The Promenade, Suite 400
        1230 Peachtree Street, N.E.
        Atlanta, GA 30309
        Telephone: 404-572-2052
        Facsimile:  877-728-1396
        dlejeune@cozen.com

        Aaron Holt (*pro hac vice* granted)
        Texas Bar No. 24058545
        Silvia Chicas (*pro hac vice* granted)
        Texas Bar No. 24138475
        1221 McKinney Street, Suite 2900
        Houston, TX  77010
        Telephone: (832) 214-3961
        Facsimile:  (832) 214-3905
        aholt@cozen.com
        schicas@cozen.com

        **ATTORNEYS FOR DEFENDANT THE KROGER CO.**

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULES

The above-signed counsel hereby certifies that this document was prepared in Times New Roman 14-point font and a 1-inch margin in accordance with LR 5.1(C)(D), N.D. Ga.

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, a true and correct copy of the foregoing *Defendant's Reply In Support Of Motion To Dismiss* has been served via ECF, email, and/or facsimile to all counsel-of-record as follows:

Radford Scott LLP
Jake Knanishu
James Radford
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
T: (404) 400-3600
jradford@radfordscott.com
jknanishu@radfordscott.com
**ATTORNEYS FOR PLAINTIFF**

Michael B. Schoenfeld
Georgia Bar No. 863727
STANFORD FAGAN LLC
2540 Lakewood Avenue SW
Atlanta, GA 30315
(404) 622-0521, ext. 2244
michaels@sfglawyers.com
**ATTORNEYS FOR DEFENDANT UNITED**
**FOOD AND COMMERCIAL WORKERS**
**LOCAL 1996**

*/s/ Aaron Holt*
Aaron Holt

76163468\5