# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | | |
|---|---|---|
| Lynn North, *as next friend of* Lindsey Wheeler, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | 3:24-cv-00192-LMM-RGV |
| The Kroger Co., and United Food and Commercial Workers Local 1996, | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

Plaintiff respectfully submits these objections to the Magistrate's Report and Recommendation, Doc. 38 (the "R&R"), on Defendants' two motions to dismiss. Docs. 25, 26. Plaintiff raises eight objections.

**Objection 1: Ms. Wheeler engaged in protected activity far beyond a "mere refusal to sign a release." Doc. 38 at 48 (quoting *Romero v. Allstate Ins. Co.*, 3 F. Supp. 3d 313, 328-29 (E.D. Pa. 2014) (subsequent history omitted)).**

The first reason the R&R recommends dismissing Plaintiff's retaliation claims is that, in the Magistrate's analysis, Ms. "Wheeler 'did not engage in protected activity when [s]he declined . . . [to] sign[ the] release.'" Doc. 38 at 49 (quoting *Cox v. City of Houston*, 2005 WL 2086166, at *3 (S.D. Tex. Aug. 26, 2005)) (alterations in original). The R&R characterizes Plaintiff's retaliation claims as follows: "that

[Ms.] Wheeler's refusal to sign the release is the ADA protected activity at issue and that the termination of her reinstatement on December 30, 2023, is the resulting adverse action." Doc. 38 at 46 n.25 (quotation omitted). So construing Plaintiff's claims, the R&R recommends dismissal because "a mere refusal to sign a broad release" generally does not "constitute[] protected conduct." *Id.* at 48 (quoting *Romero*, 3 F. Supp. 3d at 328-29 (subsequent history omitted)).[1]

Whether or not a refusal to sign a release—devoid of any factual context—is protected activity under the ADA, the facts here present a different question.[2] As the R&R recognizes, Ms. Wheeler did far more in this case than merely refuse to sign a release. She also "engaged in protected activity under the ADA by requesting disability accommodations, sending a letter through her counsel in November 2023 requesting these accommodations, and by filing her EEOC charges against the

---

[1] The R&R's discussion of this point cites no authority from the Eleventh (or any other) Circuit Court of Appeals. The only decision it cites from this district granted summary judgment on a retaliation claim based on the plaintiff's refusal to sign a <u>medical release</u> necessary for her doctors to communicate with her employer about her drug addiction—not, as here, a waiver of pending claims for discrimination. Doc. 38 at 48 ("However, plaintiff's 'ADA retaliation claim relating to her refusal to sign a release fails.'" (quoting *Scoggins v. Floyd Healthcare Mgmt. Inc.*, 2016 WL 11544908, at *24 (N.D. Ga. Aug. 30, 2016))).

[2] Plaintiff notes the R&R analyzes this issue *sua sponte*. On the merits, Defendants do not contest whether Ms. Wheeler engaged in "protected activity." Kroger argues only that Ms. Wheeler's protected activity was "post-termination" because it began after Kroger decided to initiate termination proceedings on October 19, 2023. Doc. 26-1 at 22-23. UFCW argues only that it had no "authority, power, or control over Kroger's disciplinary decisions." Doc. 25-1 at 23-25. The motions to dismiss argue only about causation, not protected activity.

defendants." *Id.* at 46 n.25 (quoting Doc. 20 at ¶ 78); Doc. 25-2 at 2 (the letter, asserting among other things that Ms. Wheeler "has suffered damages").

These facts fundamentally alter the analysis. They distinguish this case from every decision the R&R cites in its analysis—most of which is out-of-circuit and/or unpublished.[3] Unlike every decision in the R&R's analysis, Defendants in this case asked Ms. Wheeler for a release after denying multiple accommodation requests

---

[3] *Compare* Doc. 38 at 48-50 (citations omitted) *with Romero*, 3 F. Supp. 3d 313 (granting summary judgment to employer because general policy of conditioning transfer or severance upon execution of waiver not facially retaliatory) (subsequent history omitted); *Bottge v. Suburban Propane*, 77 F. Supp. 2d 310, 313 (N.D.N.Y. 1999) (requiring "some indicia in declining to sign a waiver suggesting that the employee has made a complaint"); *Cox v. City of Houston*, 2005 WL 2086166 (S.D. Tex. Aug. 26, 2005) (denying retaliation claim predicated entirely on plaintiff's refusal to sign a waiver after participating in an EEOC interview arising out of a different employee's charge of discrimination); *Reilly v. Capgemini Am., Inc.*, 2007 WL 945685, at *5 (N.D. Tex. Mar. 28, 2007) (recognizing that "a pending, formal charge at the time of the retaliation" is not necessary, but granting summary judgment to employer "where the employee's intent to file a charge [was] 'inchoate and unarticulated' at the time of the alleged retaliation" (quoting *Croushorn v. Bd. of Trs. of Univ. of Tennessee*, 518 F. Supp. 9, 22 (M.D. Tenn. 1980))); *Snoke v. Staff Leasing, Inc.*, 43 F. Supp. 2d 1317, 1328 (M.D. Fla. 1998) (granting summary judgment to employer where plaintiff presented "no evidence that she participated in a formal complaint procedure" and only informally complained to her supervisor about some "rumors" about her); and *Penny v. Winthrop-Univ. Hosp.*, 883 F. Supp. 839 (E.D.N.Y. 1995) (denying retaliation claim where plaintiff did not file an EEOC charge or allege protected activity of any kind until February 6, 1992, after employer offered reinstatement conditioned upon execution of a waiver on February 3, 1992). *See also* Doc. 38 at 50 n.26 (quoting *Maldonado v. Sw. Bell Tel., L.P.*, 2006 WL 3147419, at *4 (W.D. Tex. Oct. 30, 2006), a case explicitly acknowledging that under different facts "an employer's threat to discharge an employee who [does] not agree to drop claims establishes a claim of retaliation," but awarding summary judgment to an employer because the employee there engaged in no protected activity prior to the request for a release).

during the grievance process,[4] and they terminated her six weeks after her counsel had sent Defendants a letter asserting her rights and four days after she had filed EEOC charges. In this factual context, as Defendants plainly knew—or at the barest minimum should have known—Ms. Wheeler refused to sign the waiver because she intended to continue her prior, undisputedly protected activity. *Cf. Bottge*, 77 F. Supp. 2d at 313 (requiring only "some indicia in declining to sign a waiver suggesting that the employee has made a complaint").

Indeed, Plaintiff's allegations are squarely in line with Eleventh Circuit precedent holding that such circumstances do state a claim for retaliation. In this Circuit, "terminat[ing]" an employee "immediately after and because [s]he refused to relinquish [her] right to a jury trial for [her] pending [EEOC] charge" is actionable retaliation. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008).[5] Indeed, in this Circuit, as a matter of law, terminating an employee because she refuses to cease ongoing protected activity (i.e. to sign a release) does <u>more</u> than

---

[4] The R&R dismisses the accommodations requests as unprotected because, according to the R&R, they were, as a matter of law, "post-termination" and therefore "not objectively reasonable." Doc. 38 at 47 n.25. *But see* Objection 3, *infra*.

[5] In a footnote, the R&R rules that Ms. Wheeler, as a matter of law, "cannot show a causal connection" between her EEOC charge and the termination of her employment on December 30, 2023, Doc. 38 at 51 n.26, but as *Bagby Elevator* shows, causation in this case is indisputable: UFCW ordered Ms. Wheeler not to report to work, and Kroger terminated her employment, <u>because</u> she did not sign the waiver. As to the retaliation claims, the only dispute is whether her refusal was based on Ms. Wheeler's prior protected activity. It was.

describe a claim for retaliation; it proves the causation element of that claim. *Id.* ("Goldsmith argues that his immediate termination for his refusal to sign the agreement established a causal relation between his protected activity—the filing of his charge of discrimination—and his termination. We agree.").[6]

Plaintiff therefore respectfully objects to the recommendation that the Court dismiss her retaliation claims for lack of protected activity.

**Objection 2: Kroger's termination of Ms. Wheeler's employment, and UFCW's instruction that she not return to work, were adverse actions.**

The second reason the R&R recommends dismissing Plaintiff's retaliation claims is that "the demand for the execution of a release" does not "constitute[] an adverse employment action." Doc. 38 at 56 (quoting *Dolin v. ThyssenKrupp Elevator Corp.*, 2019 WL 452740, at *17 (D.N.M. Feb. 5, 2019)). As with protected activity above, Defendants' motions do not challenge Plaintiff's claims on the issue of material adversity, so Plaintiff did not thoroughly brief it in her responses.

To be clear, Plaintiff does not and has never asserted that the mere demand to execute a release would, alone, support a claim for retaliation. As set forth in the Complaint, the two adverse actions here are (1) Kroger's ultimate termination of Ms.

---

[6] *See also, e.g.*, Doc. 29-1 at 20-21 (quoting *E.E.O.C. v. Bd. Of Governors of State Colleges & Universities*, 957 F.2d 424, 430 (7th Cir. 1992), and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60 (1974)); *id.* at 21 n.4 (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 76 (1998)).

Wheeler's employment and (2) UFCW's refusal to allow Ms. Wheeler to return to work <u>because</u> she did not execute the release Defendants each and both demanded of her. *See, e.g.*, Doc. 20 at ¶ 79 ("Kroger terminated Ms. Wheeler's employment after and in response to her ADA-protected activity."); *id.* at ¶ 81 ("UFCW's demand that Ms. Wheeler execute the [release] <u>in order to continue working</u> was a material change in the conditions of her employment." (emphasis added)).

Termination is the paradigmatic adverse action. *See, e.g.*, *Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 284 (1st Cir. 2014) ("[T]he paradigmatic act of retaliation is firing an employee . . . ."). Ordering an employee not to report to work and, thereby, to earn any wages is also plainly a material, negative change in the terms and conditions of her employment. As set forth in the Complaint (and in Defendants' extraneous evidence), Kroger here did the former, and UFCW did the latter, expressly because of Ms. Wheeler's refusal to abandon her ongoing protected activity, thereby retaliating against her in violation of the ADA. *See, e.g.*, *Bagby Elevator*, *supra*.

The R&R focuses on a separate issue—whether a demand for a release, alone, is materially adverse—citing two decisions as authority. Doc. 38 at 56-57 (citations omitted). One is inapposite because the plaintiff there did not allege or engage in any kind of even arguably protected activity until three days after she had been offered a release and reinstatement. *See supra* n.3 (citing *Penny*, 883 F. Supp. 839).

The other decision the R&R cites is one from New Mexico. According to the R&R, this decision shows that a demand to sign a release as a term of reinstatement is not materially adverse when the release is "negotiated and agreed upon," and according to the R&R, Plaintiff "ignores the fact that [defendants ] negotiated and agreed upon the . . . settlement agreement." Doc. 38 at 56 (quoting *Dolin*, 2019 WL 452740, at *17) (alterations in original).

But that is not what *Dolin* held, and the R&R's alterations to *Dolin* transform the holding of that case. In *Dolin*, the District Court found that a plaintiff who voluntarily agreed to a reduced salary in exchange for reinstatement could not thereafter claim said reduction as a materially adverse action. 2019 WL 452740, at *17. The *Dolin* court's reasoning specifically depended on the facts that <u>the plaintiff herself was a party to the negotiations and voluntarily executed the agreement</u> (which included other beneficial terms such as "a $30,000 payment"). *Id.*

The opposite is true here. Defendants deliberately <u>excluded</u> Ms. Wheeler from their negotiations. *See, e.g.*, Doc. 20 at ¶¶ 35, 36, 39, 75. Plaintiff does <u>not</u> "ignore[]" this fact. Doc. 38 (quotation omitted). It is central to her claims, as evidence of Defendants' discriminatory animus, among other things. *See, e.g.*, Objection 7, *infra* (discussing Plaintiff's claims for disparate treatment).

Plaintiff therefore respectfully objects to the recommendation that the Court dismiss her retaliation claims for lack of a materially adverse action.

**Objection 3**: **The R&R incorrectly rules that Ms. Wheeler's ADA rights terminated as a matter of law on October 19, 2023. Doc. 38 at 27 and** *passim*.

Much of the R&R's discussion of Plaintiff's claims for disability discrimination hinges on the characterization of Ms. Wheeler's accommodation requests as "post-termination." Doc. 38. On that basis, the R&R rules that her requests "are not actionable as a matter of law." *Id.* at 27 (string cite omitted).

But suppose Ms. Wheeler were instead a wheelchair user. If Kroger and UFCW had conducted her grievance meetings on the fourth story of a building with no elevator, and if Ms. Wheeler had requested to move the meetings to the ground floor or to be allowed to attend virtually, what then? Under the R&R's reasoning, the reasonableness of those requests is irrelevant; Kroger and UFCW would have no duty under the ADA even to entertain the requests because they would be "post-termination." That cannot be, and the R&R's analysis reflects two errors of law.

First, the ADA on its face does not limit its scope only to active employees. *See* Doc. 29 at 16-18 (string cite omitted); 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual . . . ."). It protects employees, applicants, and all other "qualified individuals," meaning any "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added).

The R&R does not conduct a qualified-individual analysis at all. The R&R cites legal authority canvassing the United States (and the territory of Puerto Rico), but of the combined twenty-two (22) decisions in this section of the R&R and Kroger's motion, zero (0) involve an employee with enforceable rights against termination requesting accommodations to allow her the equal benefit of those rights.[7] The R&R and Kroger cite no authority suggesting Ms. Wheeler, as a matter of law, was not a qualified individual at the time of her accommodation requests.

---

[7] This footnote catalogs the citations, first in the R&R and second in Kroger's motion, for the proposition that post-termination requests are "too late." *Compare* Doc. 38 at 25-30 (citations omitted) *with Cooper v. Walker Cnty. E-911*, 2018 WL 3585217, at *6 (N.D. Ala. July 26, 2018) (granting summary judgment in part to employer where, among other things, employer's "policy for grievances applied only to employees" and provided no protections against termination); *Meinen v. Godfrey Brake Serv. & Supply, Inc.*, 2012 WL 4364669 (D.S.D. Sept. 24, 2012) (granting summary judgment in part to employer where employee did not have or assert any protections against termination); *Barnes v. Nw. Iowa Health Ctr.*, 238 F. Supp. 2d 1053, 1087 n.13 (N.D. Iowa 2002) (underline denying summary judgment in part to employer who "had rescinded Barnes's offer of employment before giving her any opportunity to request accommodation" because "a finding that Barnes's claim fails because she did not request accommodation would result in the underline bizarre outcome that if an employer acts quickly enough, its discriminatory animus may be immune from liability under the ADA" (emphasis added)); *Echevarria v. AstraZeneca, LP*, 133 F. Supp. 3d 372 (D.P.R. 2015) (granting summary judgment to employer where employee did not have or assert any protections against termination) (subsequent history omitted); *Nixon v. Silverado Hospice of Houston*, 2013 WL 3973980, at *6 (S.D. Tex. July 31, 2013) (granting summary judgment in part to employer in absence of any "assertion or evidence that anything further was required before the termination was effective"); *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729 (6th Cir. 2015) (affirming summary judgment to employer where employee did not have or assert any protections against termination); *Barneman v. Int'l Longshoreman Ass'n Loc. 1423*, 840 F. App'x 468, 472 (11th Cir. 2021) (affirming summary

judgment to employer who "granted [plaintiff] reasonable accommodations for his medical condition . . . following a grievance hearing"); *McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x 897 (11th Cir. 2014) (affirming summary judgment to employer where employee did not have or assert any protections against termination); *Johnson v. Otter Tail Cnty., Minnesota*, 2001 WL 664217, at *1 (8th Cir. June 14, 2001) (affirming summary judgment to employer where employee "failed to meet her burden of creating a genuine issue of material fact as to her termination date"); *Shock v. Webster Indus., Inc.*, 2024 WL 4363190, at *9 (N.D. Ohio Sept. 30, 2024) (granting summary judgment to employer where employee "provide[d] no evidence or argument to rebut the conclusion that 'the appropriate disciplinary action [was] termination in his case," "[did] not cite to the record to support any portion of his failure-to-accommodate argument," and did not allege any failure to accommodate during the grievance process—only at the termination meeting itself (quoting *Yarberry*, 625 F. App'x at 742)) *appeal docketed*, No. 24-3944 (6th Cir. Oct. 29, 2024); *Laun v. Bd. of Regents of Univ. Sys. of Georgia*, 2019 WL 4694940, at *10 (S.D. Ga. Sept. 25, 2019) (granting summary judgment in part to employer <u>for reasons unrelated to timing</u> on employee's request "<u>after having already exhausted all the formal grievance policies and procedures</u>" for mediation in lieu of termination as a disability accommodation (emphasis added)); *Beller v. Wal-Mart Transportation, LLC*, 2019 WL 1409579 (S.D. Ohio Mar. 28, 2019) (granting summary judgment to employer where employee did not have or assert any protections against termination); *Equal Emp. Opportunity Comm'n v. Mathews Ford Marion*, 2018 WL 3208182 (N.D. Ohio June 29, 2018) (granting judgment to employer, following a bench trial, where employee did not have or assert any protections against termination); *Posey v. Hyundai Motor Mfg. Alabama*, 2017 WL 9470891, at *5 (M.D. Ala. Jan. 24, 2017) (granting summary judgment in part to employer where employee did not have or assert any protections against termination except a "request to be re-employed [as] a reasonable accommodation" under the ADA itself) (subsequent history omitted); *Alvarez v. Sch. Bd. of Broward Cnty.*, 208 F. Supp. 3d 1281, 1285 (S.D. Fla. 2016) (granting summary judgment to employer where employee did not have or asset any protections against termination or demotion except a "request for an accommodation of reinstatement" three months after the fact); *Payton v. Jewel Food Stores, Inc.*, 120 F. Supp. 3d 794 (N.D. Ill. 2015) (granting summary judgment to employer where employee did not have or assert any protections against termination <u>and where employee had no right to accommodations because he was not a "qualified individual"</u>); *U.S. E.E.O.C. v. St. Joseph's Hosp., Inc.*, 2015 WL 685766 (M.D. Fla. Feb. 18, 2015) (granting summary judgment in part to employer where employee did not have or assert any protections

Even though Ms. Wheeler had received a notice of termination on October 19, 2023, she was still at all relevant times undisputedly seeking reinstatement—and therefore "desire[d]" the job—and undisputedly capable of performing the essential functions of her job with reasonable accommodations. *See* Doc. 29 at 16-18 (string cite omitted). She has therefore plausibly alleged that she was, during the pendency of her appeal, a "qualified individual" under the ADA, which is what triggers the duty to provide reasonable accommodations.

Second, the existence or non-existence of an employment relationship is a fact-intensive issue, "depend[ing] on 'all the incidents of the relationship . . . with no one factor being decisive.'" *Clackamas Gastroenterology Assocs., P.C. v. Wells*,

---

against termination) (subsequent history omitted); and *Puckett v. Bd. of Trs. of First Baptist Church of Gainesville, Inc.*, 17 F. Supp. 3d 1339, 1341 (N.D. Ga. 2014) (granting motion to dismiss where employee did not have or assert any protections against termination and "fail[ed] to allege that he requested an accommodation," stating even in his complaint "only that Defendants made no effort to accommodate [his] mental illness . . . ." (quotation marks omitted) (emphasis added)).

*Compare* Doc. 26-1 at 8-12 and 12 n.3 *with Barneman*, *supra*; *McCarroll*, *supra*; *Puckett*, *supra*; *Hill v. Kansas City Area Transp. Auth.*, 181 F.3d 891 (8th Cir. 1999) (affirming summary judgment to employer where employee did not have or assert any protections against termination); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496 (7th Cir. 2004) (affirming summary judgment to employer where employee did not have or assert any protections against termination; not a failure-to-accommodate case); *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318 (3d Cir. 2003) (affirming summary judgment to employer where employee did not have or assert any protections against termination); and *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78 (1st Cir. 2012) (affirming summary judgment to employer where employee did not have or assert any protections against termination).

538 U.S. 440, 451 (2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)). It is therefore particularly inapt for disposition at the pleading stage, because "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Rule 12 dismissal requires the <u>absence</u> of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Rule 12 asks whether <u>any</u> facially plausible interpretation of a complaint is consistent with liability. *Id.*

However, the R&R here analyzes only <u>one</u> way to read the Complaint—the view Kroger offers—in a page-long sentence restating Kroger's characterization of the facts as if true. The R&R acknowledges both that Ms. Wheeler was <u>not</u> an at-will employee and that Kroger did permit her to work on December 26, 2023, but the R&R says these facts "simply" do not matter because, ultimately, "she rejected [Defendants'] grievance settlement offer of reinstatement." Doc. 38 at 27 (quoting Doc. 26-1 at 16-17); *accord* Doc. 26-1 at 11 (source of the quote).

These facts do matter. "[A]ll the incidents of the relationship" matter. *Wells*, *supra*. And the resolution of Ms. Wheeler's grievance on December 30 does not

prove—simply or otherwise—that her ADA rights expired on October 19. Her acceptance of termination on December 30, rather than the terms of Defendants' offer to settle her grievance, does not obviously preclude a finding that she still had an employment relationship with Kroger as of that date (and certainly does not preclude a finding that she was a qualified individual). Even though the R&R considers this a threshold, dispositive issue, it cites no legal authority compelling this result, and it makes no effort to connect these dots factually.[8]

By contrast, Plaintiff's statement of the facts is far more plausible, and it does account for "all the incidents of the relationship," *ibid.*, including Ms. Wheeler's contractual right to appeal before her termination became final: Her employment relationship with Kroger continued until she exhausted her bargained-for termination protections. There is no need or reason to pretend the CBA does not exist.

Indeed, insofar as it is relevant, the R&R's legal authority actually supports Plaintiff's position, in at least three ways, albeit indirectly. First, the R&R's and Kroger's exhaustive review of the caselaw does not identify a single court ever

---

[8] Furthermore, Plaintiff notes that the R&R's discussion of the facts contradicts itself, describing December 30 both as a solidification of the status quo and as a distinct termination event. *Compare* Doc. 38 at 27 (refusal of Defendants' conditions for further employment "means she remained . . . terminated effective October 7, 2023" (emphasis added) (citation omitted)); *with id.* at 25 (characterizing Defendants' response to her refusal as "another termination on December 30, 2023" (emphasis added) (citation omitted)).

reaching the conclusion they here recommend—that a self-styled "termination letter," by itself, as a matter of law, ends an employment relationship and all anti-discrimination protections incident thereto, even when the receiving employee has and exercises an enforceable right against termination.

The second reason the R&R's and Kroger's caselaw favors Plaintiff is that, of their twenty-two decisions, only one granted a Rule 12 motion (as in this case) and only because the plaintiff in that case failed to allege that he ever requested a disability accommodation at all (unlike this case). *Puckett*, 17 F. Supp. 3d 1339. One of the other twenty-one was a memorandum and order following a bench trial, and the remaining twenty were summary-judgment decisions. *See generally supra* n.7.

And thirdly, although the decisions in the R&R and Kroger's motion address a separate issue, many imply or outright state why the different facts in this case urge a different result. For example, several denied claims because the plaintiffs asked for a ruling that the ADA itself provided for reinstatement as a reasonable accommodation—unlike here, where Ms. Wheeler asserts only a right to equal access to a pre-established procedure for seeking reinstatement. *See generally supra* n.7. One Court of Appeals decision specifically acknowledged the importance of resolving questions of fact about an ADA plaintiff's termination date in these circumstances but affirmed summary judgment in part because—unlike Plaintiff here—the plaintiff in that case "failed to meet her burden of creating a genuine issue

of material fact as to her termination date." *Otter Tail*, 2001 WL 664217, at *1. And in the only three (again, out of twenty-two) cases in which the plaintiff had any kind of termination appeal right, the claims were denied for reasons completely inapposite here. *See Barneman*, 840 F. App'x 468 (employer granted accommodation request); *Laun*, 2019 WL 4694940, at *10-11 (denying summary judgment on failure-to-accommodate claim as a whole but granting summary judgment on one request the employee failed to make until "<u>after having already exhausted all the formal grievance policies and procedures</u>" (emphasis added)); *Shock*, 2024 WL 4363190, at *9 (granting summary judgment where employee admitted to the fireable offense, cited no evidence "to support any portion of his failure-to-accommodate argument," and requested an accommodation only in the meeting where he learned of his termination—not during the grievance process).

Plaintiff therefore respectfully objects to the recommendation that the Court dismiss all of Ms. Wheeler's requests as "not actionable" as a matter of law.

**<u>Objection 4</u>: A specific "essential job function" is not strictly necessary to trigger the duty to provide reasonable accommodations. Doc. 38 at 32 n.18 (declining to follow *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744 (11th Cir. 2023)).**

The R&R alternatively recommends dismissal because, in the Magistrate's analysis, Ms. Wheeler's accommodation requests did not concern an "essential

function." Doc. 38 at 30-32. The R&R acknowledges the Eleventh Circuit's recent

warning against strictly construing the "essential function requirement," which is:

> in tension with the text of the statute and the EEOC regulations that
> implement it. The statute plainly prohibits "discriminat[ion] against a
> qualified individual on the basis of disability in regard to . . . terms,
> conditions, and privileges of employment." The terms, conditions, and
> privileges of employment are more than just the essential functions of
> a job. We've repeatedly said that reasonable accommodations relate
> "only" to essential functions, even if we haven't reached any holdings
> that precedentially establish that rule.

*Beasley*, 69 F.4th at 757 (emphasis in original) (quotations omitted). However, the

R&R recommends ignoring *Beasley*. Doc. 38 at 32 n.18. The Court should not.

The R&R's recommendation to ignore *Beasley* has two prongs. One is the

claim that the facts here "are distinguishable" "for the reasons pointed out by

Kroger." *Id.* (citing Doc. 36 at 2-3, 8-9). However, "the reasons pointed out by

Kroger" are just one reason—namely, Kroger's steadfast belief that "Plaintiff was

terminated before any reasonable accommodation requests." Doc. 36 at 3 (emphasis

omitted). This belief is dubious at best, both factually and legally, and not a proper

basis for dismissal under Rule 12. *See* Objection 3, *supra*.

The R&R also claims, incorrectly, that this Court has rejected *Beasley* before,

in *Batten v. K-VA-T Food Stores, Inc.*, 2023 WL 9106966 (N.D. Ga. Dec. 8, 2023)

(subsequent history omitted). *See* Doc. 38 at 32 n.18 (purporting to quote *id.*); Doc.

36 at 8-9 (same). This claim is incorrect because the R&R (like Kroger), stating that

*Beasley* is not "the applicable rule of law," quotes exclusively from portions of the

*Batten* Magistrate's report and recommendation that the District Judge <u>did not adopt</u>. *Compare* Doc. 38 at 32 n.18 (purporting to quote *Batten* at *10) and Doc. 36 at 9 (purporting to quote *Batten* at *8) *with Batten* at *10 (does not exist) and *Batten* at *8 (analyzing pretext). In truth, the *Batten* court acknowledged the merit of the plaintiff's "first and most fervent objection" because "the Magistrate Judge's recommendation is in tension with the Eleventh Circuit's *Beasley* opinion," and instead of ignoring *Beasley* and the plain text of the ADA, the *Batten* court granted summary judgment based on the defendant's *Stewart* defense. 2023 WL 9106966, at *4-5 ("[B]ecause the Court finds that Plaintiff caused a breakdown in the interactive process in this case, the Court need not decide whether an employer is required to provide an accommodation when an employee can perform the essential functions of his job—albeit, with some difficulty—without an accommodation." (discussing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278 (11th Cir. 1997))).

As in *Batten*, the Court here should <u>not</u> ignore *Beasley*, because *Beasley* is clearly right. Among other things, the "essential function requirement," if strictly construed, would render meaningless the ADA's prohibition on discrimination "in regard to job application procedures." 42 U.S.C. § 12112(a) ("General rule"); *cf. Beasley*, 69 F.4th at 757 (quoting *id.*) (citing 29 C.F.R. § 1630.2(o)(1)). *See also* 42 U.S.C. § 12112(b)(1) ("[T]he term 'discriminate against a qualified individual on

the basis of disability' includes . . . limiting, segregating, or classifying a job applicant . . . in a way that adversely affects the opportunities or status of such applicant . . . .") ("Construction"); Doc. 29 at 16-17 (discussing same); *id.* at 14 (discussing *Novella v. Wal-Mart Stores, Inc.*, 226 F. App'x 901 (11th Cir. 2007)).

The Court also should follow *Beasley*, because it controls this case on the facts. The *Beasley* court considered a plaintiff's request for an interpreter to allow him "to participate meaningfully" in the disciplinary process—functionally identical to one of Ms. Wheeler's requests here—and found that the request was <u>not</u> unreasonable as a matter of law. 69 F.4th at 761.

The Court of Appeals' analysis in *Beasley* is also instructive. The holding did not reach "whether the ADA's requirement that an employer provide an employee with reasonable accommodations extends beyond those that will enable him to perform the essential functions of his job," *id.* at 760, but that was because, as the Court of Appeals explained, Beasley's meaningful participation in the disciplinary process was "essential . . . . A reasonable jury could find that even though disciplinary meetings were not part of Beasley's day-to-day functions as an inbound materials handler, they were an essential part of the job." *Id.* at 761.

Plaintiff therefore respectfully objects to the recommendation that the Court rule that Ms. Wheeler's request for an interpreter was not reasonable for the purposes of the ADA.

**Objection 5: Plaintiff has not failed to allege that Defendants' denials of Ms. Wheeler's accommodation requests caused her "some harm respecting an identifiable term or condition of employment." Doc. 38 at 41 (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 346-47 (2023)).**

The R&R recommends dismissing Plaintiff's claims against UFCW for an additional reason. The R&R says the Complaint (1) lacks "facts showing [Ms. Wheeler] was left 'worse off'" by Defendants' refusal to allow her to attend grievance meetings in person with a capable interpreter, and (2) lacks "any allegation that [Ms. Wheeler] was harmed due to a strange new work environment or the interruption of an eight-year routine." Doc. 38 at 42 (quoting Doc. 35 at 7); *see also id.* at 40 n.21 (same); *id.* at 42 n.22 (stating that Plaintiff "has simply failed to show that [allowing her a qualified interpreter] would have altered the resolution of her grievance (citing Doc. 25-5 at 1-2)).

Again, the standard of review on a Rule 12 permits dismissal "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*, 467 U.S. at 73 (citation omitted). Plaintiffs need not plead every conceivable relevant detail, but only "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). UFCW can pretend not to understand how a person with Ms. Wheeler's combination of disabilities,

severe enough that she is legally incompetent, will struggle with a transfer to a new worksite. UFCW can pretend not to see the benefits of an interpreter, but UFCW's professed ignorance does not satisfy Rule 12. It is no defect of the Complaint. Kroger's professed ignorance does not render Ms. Wheeler's request not to be transferred a mere "commute preference," as if she just wants to avoid rush hour. Doc. 38 at 34. A diabetic plaintiff need not plead <u>exactly how</u> insulin shock impairs her work. The Court can take notice of such things, and *Iqbal* obligates the Court, at the pleading stage, "to draw . . . reasonable inference[s]" from the factual content alleged before granting Rule 12 dismissal. 556 U.S. at 678 (citation omitted).

Plaintiff therefore respectfully objects to the recommendation that the Court dismiss Plaintiff's claims against UFCW as failing to allege "some harm."

**<u>Objection 6</u>: Claims for failure to accommodate under the ADA, including as against a union, do not require discriminatory intent.**

Claims for failure to accommodate are unique among discrimination claims in that they generally do not require discriminatory animus. *See, e.g.*, *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) ("[F]ailure to reasonably accommodate a disabled individual <u>itself</u> constitutes discrimination under the ADA, so long as that individual is otherwise qualified, and unless the employer can show undue hardship." (emphasis in original)).

Plaintiff agrees with the R&R that the Eleventh Circuit has not addressed whether such a claim, when asserted against a labor union, does require a showing of animus (via a claim for breach of the duty of fair representation). Doc. 38 at 38 n.20. The R&R recommends that the Court follow a smattering of unpublished decisions from District Courts outside this Circuit and impose such a requirement. *Id.* (string cite omitted); *id.* at 43 n.23 (string cite omitted). Plaintiff submits that the Court should follow the sound reasoning of the Ninth, Seventh, Sixth, and Third Circuit Courts of Appeals, which have all decided not to do so. *See* Doc. 30 at 14-15 (citing *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848 (9th Cir. 2016); *Green v. Am. Fed'n of Tchrs./Illinois Fed'n of Tchrs. Loc. 604*, 740 F.3d 1104 (7th Cir. 2014); *Peeples v. City of Detroit*, 891 F.3d 622 (6th Cir. 2018); *Peden v. Dist. Council 33 Loc. 696*, 662 F. App'x 183 (3d Cir. 2016)).

Plaintiff therefore respectfully objects to the recommendation that the Court dismiss Plaintiff's claim for disability discrimination against UFCW for lack of a parallel claim for breach of the duty of fair representation.

**Objection 7: Plaintiff did not abandon her disparate treatment claims.**

The R&R says Plaintiff abandoned her claims for disparate treatment. Doc. 38 at 21 n.15 (citation omitted). She did not.

"[T]here are two distinct categories of disability discrimination claims under the ADA: (1) failure to accommodate and (2) disparate treatment." *Id.* at 20-21

(quoting *Montgomery v. Ga. Power Co.*, 2016 WL 10520234, at *8 (N.D. Ga. Dec. 9, 2016)). The Complaint in this action expressly asserts both kinds of claims against each Defendant. *See, e.g.*, Doc. 20 at ¶ 73 ("Defendants discriminated against Ms. Wheeler . . . by excluding her from their negotiations in resolving her grievance, among other things."); *id.* at ¶ 74 ("Separately, Defendants discriminated against Ms. Wheeler . . . by failing to provide her the reasonable accommodations requested." (emphasis added)). The R&R recognizes that the Complaint asserts both kinds of claims. Doc. 38 at 21 n.15 (citing *id.*).

As Plaintiff noted in both of her response briefs, neither of Defendants' motions to dismiss addresses the claims for disparate treatment or their related factual allegations. Doc. 29 at 10 ("Kroger does not dispute that its actions toward Ms. Wheeler were deliberate, motivated by discriminatory animus, or done for [the] purpose [of taking advantage of her disabilities to reach its own preferred resolution of her grievance]."); Doc. 30 at 10  ("UFCW does not dispute that its actions toward Ms. Wheeler were deliberate, motivated by discriminatory animus, or done for [the] purpose [of taking advantage of her disabilities to reach its own preferred resolution of her grievance]."); *see also generally* Docs. 25-1, 26-1. Accordingly, Plaintiff did not defend these claims at length. But she did defend them. In both response briefs, this argument is the very "*First*" Plaintiff makes in outlining her *prima facie* case.

Doc. 29 at 10 (emphasis in original) (citing Doc. 20 at ¶¶ 36, 73, 74, 75); Doc. 30 at 10 (emphasis in original) (citing Doc. 20 at ¶¶ 36, 73, 74, 75).

Plaintiff therefore respectfully objects to the recommendation that the Court dismiss Plaintiff's unopposed claims for disparate treatment under the ADA.

**<u>Objection 8</u>: Defendants' extraneous exhibits in support of their motions are <u>not</u> "central" or even material to Plaintiff's claims. Doc. 38 at 2 n.2.**

As Plaintiff's first seven objections show, the R&R in various ways misapplies the Rule 12 standard to Defendants' motions. One additional way the R&R does this is by considering Defendants' various extraneous evidence.

Rule 12 permits extraneous evidence only when it "is central to the plaintiff's claim," among other factors. *See, e.g.*, *id.* (quoting *chestnut v. Ethan Allen Retail, Inc.*, 981 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013)). Without any discussion of why or how, the R&R asserts that "even a cursory review . . . reveals that [all of Defendants' exhibits] . . . are central to plaintiff's claims." *Id.*

As Plaintiff has shown, none of Defendants' extraneous evidence is relevant to her "five central claims." Doc. 29 at 7; Doc. 30 at 7. Her claims do <u>not</u> depend, for example, on Defendants' stated reasons for any of their actions. *Id.* The only document even arguably central to her claims is the release Defendants demanded, which, as Plaintiff noted in her response briefs, Defendants conspicuously <u>redacted</u>

from their exhibits. Doc. 29 at 7-8 (discussing Doc. 26-3); Doc. 30 at 7-8 (discussing Doc. 25-5).

Neither a cursory review nor a close one shows how the evidence Defendants offered is central to Plaintiff's claims. Defendants' curated selections of evidence are no doubt vital to their preferred skews of the facts and to the legal arguments depending on those skews.

These manufactured factual disputes demand—not obviate—further fact-finding, and the R&R's consideration of this incomplete factual record is no harmless error. It clearly taints the R&R's analysis. *See, e.g.*, Objection 3, *supra* (discussing why one document should not not, at the pleading stage, disprove the existence of an employment relationship); Objection 5, *supra* (discussing why UFCW's professed ignorance and opinion of its own conduct, memorialized in Doc. 25-5, should not define Ms. Wheeler's claims).

Plaintiff therefore respectfully objects to the recommendation that the Court recognize Defendants' motions as valid Rule 12 motions and not premature motions for summary judgment.

Respectfully submitted this July 28, 2025.

*/s/ Jake Knanishu*
James Radford
Georgia Bar No. 108007
Jake Knanishu
Georgia Bar No. 597103
Radford Scott LLP
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
T: (404) 400-3600
jradford@radfordscott.com
jknanishu@radfordscott.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 28, 2025, I filed the foregoing document through the Court's CM/ECF system, which will send email notification of such filing to all attorneys of record in this matter.

*/s/ Jake Knanishu*
Jake Knanishu
Georgia Bar No. 597103