# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

LYNN NORTH )
*as next friend of Lindsey Wheeler* )
)
Plaintiff, )
)
vs. )     CIVIL ACTION NO:
)     3:24-cv-00192-LMM-RGV
THE KROGER CO., AND UNITED )
FOOD AND COMMERCIAL WORKERS )
LOCAL 1996 )
)
Defendants. )

## DEFENDANT UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1996's AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

Michael B. Schoenfeld
Georgia Bar No. 863727
STANFORD FAGAN LLC
2540 Lakewood Avenue SW
Atlanta, GA 30315
(404) 622-0521, ext. 2244
michaels@sfglawyers.com
*Counsel for Local 1996*

COMES NOW, Defendant United Food and Commercial Workers, Local 1996 (the "Union" or "Local 1996"), and submits this Amended[1] Response in Opposition to Plaintiff's Objections to Magistrate's Report and Recommendation. (ECF No. 40)

I.      **Objection 1 – The Magistrate Judge's recommended dismissal of Plaintiff's retaliation claim against the Union was not based on the finding that Plaintiff did not engage in protected activity when she declined to sign a release and therefore whether declining to sign a release constitutes protected activity does not impact the recommended dismissal of Plaintiff's retaliation claim against the Union.**

In Objection 1, Plaintiff seems to argue that the Magistrate Judge's recommended dismissal of her retaliation claims against both defendants is centered on the Judge's finding that Plaintiff did "not engage in protected activity when she declined to sign the release." Pl's Objs. at 1, citing Doc. 38 at 49 (ellipses, brackets, and quotations omitted). However, as it relates to the Union, the Magistrate Judge's recommended dismissal of Plaintiff's retaliation claim does not rise or fall on this issue. Instead, the Magistrate Judge correctly recommended dismissal of Plaintiff's retaliation claim against Local 1996 because, 1) Plaintiff did not allege in the Amended Complaint that a Union decisionmaker knew that she filed an EEOC charge, R&R at 53-54, 2) the demand to execute the release cannot be considered an adverse employment action, *id*. at 55-56, and that 3)

---

[1] *See* ECF No. 44.

Plaintiff does not plausibly allege that Local 1996 was responsible for any alleged adverse employment action that she allegedly suffered. *Id*. at 56-57.

To the extent that Plaintiff objects to the Magistrate Judge's finding that she failed to allege that Local 1996 knew she filed an EEOC charge, Plaintiff's only response is that "Defendants plainly knew—or at the barest minimum should have known—Ms. Wheeler refused to sign the waiver because she intended to continue her prior, undisputedly protected activity." Pl's Objs. at 4. However, the Amended Complaint does not allege any facts showing that Local 1998 "plainly knew" that Plaintiff had filed an EEOC charge or otherwise "intended to continue her prior, undisputedly protected activity." *Id*. Instead, regarding alleged retaliation, the Amended Complaint contains only conclusory allegations that are not supported by any factual enhancement. *See* Am. Compl. ¶¶ 82, 83. Furthermore, as argued in detail below, even assuming *arguendo* that Plaintiff engaged in protected activity that the Union was aware of, Plaintiff fails to allege facts in the Amended Complaint that plausibly show that Local 1996 took any adverse action against Plaintiff or was responsible for any alleged adverse employment action taken by The Kroger Company ("Kroger").

II.     **Objection 2 – Plaintiff alleges in the Amended Complaint that the adverse action taken by the Union was the demand for the execution of the release, and the Magistrate Judge correctly found that the demand cannot be considered an adverse employment action.**

In Objection 2, Plaintiff claims that "Plaintiff does not and has never asserted that the mere demand to execute a release would, alone, support a claim for retaliation." Pl's Objs. at 5. However, Plaintiff's retaliation claim against the Union is based *entirely* on the Union's alleged demand that she execute a release. *See* Am. Compl. ¶¶ 81-83. Plaintiff does not allege that the Union took any retaliatory action against her other than the demand that Plaintiff execute a release after she was reinstated to Store #647. Am Compl. ¶¶ 52, 56.

Moreover, Plaintiff incorrectly claims that "Defendants' motions do not challenge Plaintiff's claims on the issue of material adversity, so Plaintiff did not thoroughly brief it in her responses," Pl's Objs. at 5. In fact, Local 1996's brief in support of its motion to dismiss plainly argues that "Plaintiff failed to allege that she suffered any materially adverse action as a result of Local 1996's alleged demand that she execute a release." ECF No. 25-1 at 24-26[2]. Therefore, Plaintiff had an opportunity to argue in her response brief that "Plaintiff does not and has never asserted that the mere demand to execute a release would, alone, support a claim for retaliation." Pl's Objs. at 5. However, Plaintiff failed to make this

---

[2] The page number refers to the page number shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

argument to the Magistrate Judge, and as a result, the District Court should not consider it for the first time here. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.")

Nevertheless, even if this Court considers Plaintiff's argument that the alleged adverse employment action committed by the Union was not confined to the Union's alleged demand for her to execute a release, the argument has no merit. In Objection 2, Plaintiff attempts to re-write her Amended Complaint and contends that Local 1996's alleged adverse employment action consisted of its "refusal to allow Ms. Wheeler to return to work because she did not execute the release Defendants each and both demanded of her." Pl's Objs. at 6. In support thereof, Plaintiff cites Paragraph 81 of the Amended Complaint:

> UFCW's demand that Ms. Wheeler execute the above-described "general, complete and unconditional release" in order to continue working was a material change in the conditions of her employment.

Paragraph 81 of the Amended Complaint plainly alleges that the "demand … was a material change in the conditions of her employment." That is, Plaintiff alleges that the demand itself is the alleged adverse employment action taken by the Union.

In Objection 2, it appears that Plaintiff argues that she alleged in the Amended Complaint that Local 1996 "ordered" Plaintiff not to return to work. *See* Pl's Objs. at 6 ("Ordering an employee not to report to work and, thereby, to earn

any wages is also plainly a material, negative change in the terms and conditions of her employment. As set forth in the Complaint (and in Defendants' extraneous evidence), Kroger here did the former, and UFCW did the latter, expressly because of Ms. Wheeler's refusal to abandon her ongoing protected activity …") However, Plaintiff does not allege in the Amended Complaint that Local 1996 "ordered" Plaintiff not to return to work. To be clear, Plaintiff alleges that a Union representative "told [Plaintiff] she would not be allowed back to work" unless she signed the release, Am. Compl. ¶¶ 52, 56, but that is a far cry from alleging that the Union "ordered" Plaintiff not to return to work or otherwise prevented her from working. Moreover, Plaintiff does not allege that Local 1996 was involved in, caused, and/or contributed to her alleged termination from Kroger or had any power or authority to "order" her not to return to work. Instead, Plaintiff alleges that "Kroger terminated Ms. Wheeler's employment on December 30, 2023", Am. Compl. ¶ 57, and "Kroger terminated Ms. Wheeler's employment after and in response to her ADA-protected activity." *Id.* ¶ 79. Importantly, Plaintiff does not allege that Local 1996 was responsible for her alleged termination, and thus she fails to state a claim against Local 1996 for retaliation because she does not allege facts that show that Local 1996 was involved in any way with any adverse employment action she allegedly suffered. Therefore, even if Plaintiff alleges that Local 1996 "told" Plaintiff that she would not be allowed back to work if she did

not sign the release, Plaintiff does not allege that the Union in-fact terminated her or took any adverse employment action against her for refusing to sign the release.

Instead, Plaintiff alleges that the act of "demand[ing] that Ms. Wheeler execute the [release] in order to continue working was a material change in the conditions of her employment" and constituted unlawful retaliation because the "demand" was made "after and in response to Ms. Wheeler's ADA-protected activity," and that Local 1996 "would not have insisted on this [release] but for her ADA-protected activity." *Id*. ¶¶ 81-83. Even if these factual allegations are assumed true, they do not state a plausible claim for retaliation under the ADA.

Plaintiff's allegation that the "demand … was a material change in the conditions of her employment" is a textbook example of "a formulaic recitation of the elements of a cause of action" that is insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiff fails to allege facts showing how the Union's alleged "demand" that she sign a release contributed to, or resulted in, her termination or otherwise altered any other term or condition of her employment. Notably, Plaintiff does not allege that Kroger terminated her employment because she did not sign a release. Plaintiff is represented by experienced counsel, and if she had been terminated for not signing a release, Plaintiff would have alleged that fact. Moreover, the Amended Complaint does not allege any facts showing that Local 1996 had any authority, power, or control over

6

Kroger's decision to terminate her. That is, Plaintiff failed to plead that she suffered any materially adverse action as a result of Local 1996's alleged demand that she execute a release.

ADA retaliation claims require a showing of a "materially adverse" employment action. *Brown v. State Farm Mutual Automobile Insurance Co*., 770 F.Supp.3d 1355, 1387 (N.D.Ga. 2025), citing *Weeks v. Harden Mfg. Corp*., 291 F.3d 1307, 1311 (11th Cir. 2002).[3] Plaintiff failed to allege that she suffered any materially adverse employment action as a result of Local 1996's alleged demand that she execute a release, or because of any other Union conduct. As a result, Plaintiff fails to state a plausible claim of ADA retaliation against Local 1996 and the Magistrate Judge correctly recommended dismissal of her retaliation claim.

## III.    Objections 3 and 4.

Plaintiff's Objections 3 and 4 relate to allegations against Kroger. Pl's Obj. to R&R at 8-18. The Union opposes Objections 3 and 4 for the reasons set forth in Kroger's Amended Response in Opposition to Plaintiff's Objections to Magistrate's Report and Recommendation.

---

[3] *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), discussed in detail below, did not change the standard for employment law retaliation claims. *See Khazin v. City of New York*, No. 24-1236-cv, 2025 WL 1091241, at *2 (2nd Cir. April 8, 2025). However, even if ADA retaliation claims do not require a "materially adverse" employment action and instead require "some harm" as defined in *Muldrow*, Plaintiff fails to allege that she suffered any harm as a result of Local 1996's alleged demand that she execute a release or from any other Union conduct.

**IV.    Objection 5 – Plaintiff failed to allege that the Union's alleged denials of her accommodation requests caused her "some harm" as is required to state a plausible ADA failure to accommodate claim.**

In her Objections, Plaintiff argues that the Magistrate Judge erred by finding that Plaintiff failed to allege facts that show she suffered a change in terms or conditions of employment that left her worse off as a result of the Union's alleged failure to grant her requests for a family member to be present during the grievance procedure and/or her request to return to store #420. Pl's Objs. at 19-20. Notably, Plaintiff does not show where in her Amended Complaint she alleges that the Union's alleged refusals negatively impacted her "hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of his employment" as is required to establish a *prima facie* case of discrimination based on a purported failure to accommodate. *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023). Instead, Plaintiff accuses the Union of "pretending" not to understand several hypothetical impacts of the Union's alleged failures to accommodate (e.g., "struggl[ing] with a transfer to a new worksite" and "the benefits of an interpreter"). Pl's Objs. at 19-20. For one, none of these hypothetical impacts are pled in the Amended Complaint, and Plaintiff cannot amend her pleading through objections to an R&R. *See Craddock v. Becerra*, No. 1:22-CV-01443-JPB, 2023 WL 1099755, at *2 (N.D. Ga. Jan. 27, 2023). Furthermore, even if the hypothetical impacts cited by Plaintiff in her Objections were pled in the

Amended Complaint, none of them constitute an actionable adverse employment action under Eleventh Circuit precedent. *Beasley*, 69 F.4th at 754.

In *Beasley,* the Eleventh Circuit held that "discrimination in the form of a failure to reasonably accommodate is actionable under the ADA <u>only</u> if that failure negatively impacts the employee's hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of his employment." *Id.* (Underline added). Thus, "to establish a prima facie case of discrimination based on an employer's failure to accommodate, a plaintiff must show that (1) she is disabled, (2) she is qualified, (3) her employer failed to provide her with a reasonable accommodation, and (4) <u>'that failure negatively impacted her hiring,</u> <u>advancement, discharge, compensation, training, or other terms, conditions, and</u> <u>privileges of her employment.</u>"' *Lloyd v. Twin Cedars Youth & Fam. Servs., Inc*., No. 5:22-cv-195 (MTT), 2024 WL 247066, at *4 (M.D. Ga. Jan. 23, 2024) (underline added), citing *Holly v. Clairson Indus., LLC*, 492 F.3d 1255-56, 1263 n.17 (11th Cir. 2007), quoting *Beasley* 69 F.4th at 754.

In the Amended Complaint, Plaintiff fails to allege that she suffered a negative impact to any term or condition of her employment as a result of the alleged failure to provide her requested accommodations. Therefore, even if Local 1996 denied her request for a family member to be present during the grievance procedure and/or her request to return to store #420, she fails to state a plausible

claim of ADA discrimination because she fails to allege how the denials negatively impacted her "hiring, advancement, discharge, compensation, training, or other terms, conditions, and privileges of her employment." *Beasley*, 69 F.4th at 754.

The Amended Complaint, and documents incorporated by reference therein, show that Plaintiff was fired because her employer concluded that she knowingly took drugs at work. Am. Compl. ¶ 24; ECF No. 25-3. The Union grieved the discharge, held "several grievance meetings", and secured her reinstatement to a store in the same city along with 52 hours of backpay. Am. Compl. ¶¶ 29, 37, 48; ECF No. 25-5. The only thing that Plaintiff complains of is that Defendants did not allow a family member to be present during the grievance process, Am. Compl ¶ 68, and that she was not reinstated to the exact same store where she took drugs. *Id*. ¶ 69.

Assuming, *arguendo*, that Local 1996 failed to "allow" Plaintiff to remain at her store and failed to allow Plaintiff to have a family member during the grievance process, Plaintiff fails to plead facts showing that she suffered any harm as a result of this conduct as required to state an ADA discrimination claim. *Beasley,* 69 F.4th at 754. *See also Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (to show discrimination under Title VII related to an involuntary job transfer a plaintiff must "show that the transfer brought about some

disadvantageous change in an employment term or condition.") (Internal
quotations and citation omitted).

In *Muldrow,* the U.S. Supreme Court held that a plaintiff alleging
discrimination under Title VII is not required to show "significant" or "material"
harm but still must "show some harm respecting an identifiable term or condition
of employment" such as a change in "responsibilities, perks, and schedule." *Id.* at
351, 354-55. In other words, "there must be some change in an identifiable
employment term or condition that left [the plaintiff] worse off." *Murray v.
Learjet, Inc*., No. 24-11189, 2024 WL 4707968, at *2 (11th Cir. Nov. 7, 2024),
citing *Muldrow*, 601 U.S. at 354-55. *See also DeLaughter v. Verizon
Communications, Inc.*, No: 6:22-cv-2370-JSS-DCI, 2024 WL 4956730, at *12
(M.D.Fl. Dec. 3, 2024) ("Even after *Muldrow*, [a plaintiff] must show that the
claimed adverse employment action injured him or otherwise left him worse off.");
*Bennett v. Butler Cnty. Bd. of Educ.*, No. 18-cv-01061-RAH, 2025 WL 27598, at
*3 (M.D. Ala. Jan. 3, 2025) (stating that "[w]hile *Muldrow* has lowered a plaintiff's
burden, *Muldrow* did not change a plaintiff's obligation of presenting actual
evidence of 'some injury' when viewed by the reasonable person standard; that is,
an objective standard based on the evidence.") (Citations omitted).

Assuming that ADA discrimination claims are governed by the *Muldrow* "some harm" standard[4], Plaintiff failed to allege that she suffered "some harm" from Local 1996's alleged failures to accommodate. First, as for her allegation that she asked to have a family member present during the grievance process, she failed to plead any facts to show that the presence of a family member would have impacted (i.e., changed) the resolution of the grievance in any way or led to her reinstatement to store #420 and thus Plaintiff fails to plead any facts to show that she was left "worse off" by Local 1996's alleged exclusion of her family member. *See* Am. Compl. ¶¶ 60-76. That is, Plaintiff does not allege how or why the grievance would have been resolved more favorably if a family member were present during one or more grievance meetings. As a result, Plaintiff fails to state a plausible claim of discrimination due to the alleged refusal to allow her family member to attend grievance meetings. *Murray*, 2024 WL 4707968, at *2.

Next, as for her reinstatement to a different store *in the same city*, Plaintiff merely alleges that the location of the store where she took drugs "made the store much more accessible to her than others in the Atlanta area because of her

---

[4] *Davis v. Orange Cnty.*, No. 23-12759, 2024 WL 3507722, at *4 (11th Cir. July 23, 2024) (per curiam) (Vacating district court's dismissal of ADA claim and remanding for the district court to reassess the claim under *Muldrow*). *But see Collins v. Alabama State University*, No. 2:23-cv-00231-RAH, 2025 WL 928821, at *4 (M.D. Ala. March 27, 2025) (Explaining that "[w]hile yet to be addressed by the Eleventh Circuit in the ADA discrimination context, other circuits have applied *Muldrow* to ADA discrimination claims.") (Citations omitted).

disabilities." Am. Compl. ¶ 69. But Plaintiff was not reinstated to a store "in the Atlanta area." She was reinstated to a store in Newnan, Georgia - the exact same city as her preferred store. ECF No. 25-5. Plaintiff's preferred store, #420, is located at 3150 East Hwy 34, Newnan, GA 30265[5], *less than six miles* from store #647, located at 1751 Newnan Crossing Blvd E, Newnan, GA 30265[6]. In the Amended Complaint, Plaintiff fails to allege *any* facts showing that she is not able to travel to store #647 because of her disability or that she suffered some "harm respecting an identifiable term or condition of employment" as a result of her reinstatement to store #647. *Muldrow*, 601 U.S. at 354-55.

Instead, Plaintiff alleges that she asked to "be allowed to remain at the Kroger store where she had been working, because it was much closer to her house and her disabilities make it impossible for her to drive." Am. Compl. ¶ 44. However, Plaintiff's alleged disabilities did not prevent her from commuting to store #420 since 2015[7], so she obviously had a reliable method of transportation to get to work, and Plaintiff does not allege that the same method of transportation is not available for her commute to store #647. In fact, the opposite is true because

---

[5] *See* https://www.kroger.com/stores/grocery/ga/newnan/thomas-crossroads/011/00420  (last accessed, Aug. 22, 2025).
[6] *See* https://www.kroger.com/stores/grocery/ga/newnan/newnan-crossing/011/00647 (last accessed, Aug. 22, 2025).
[7] Am. Compl. ¶ 8.

Plaintiff alleges that she reported to work at store #647 on December 26, 2023 and worked a full day. Am. Compl. ¶ 50.

Moreover, Plaintiff does not allege that she suffered a reduction in pay, a loss of "perks", or a change in her schedule or job responsibilities, or any other harm as a result of her reinstatement to store #647. Thus, the Amended Complaint does not allege facts showing that Plaintiff suffered any "disadvantageous" change in her terms or conditions of employment as a result of her reinstatement to store #647 and therefore fails to state a plausible ADA discrimination claim. *Muldrow*, 601 U.S. at 354. *See also Lukie v. MetLife Group, Inc.*, No. 22-10967, 2024 WL 4471109, at *5-6 (11th Cir., Oct. 11, 2024) (finding involuntary "assignment of administrative tasks" not a "disadvantageous" change in terms or conditions of employment under *Muldrow*); *DeLaughter v. Verizon Communications, Inc*., No: 6:22-cv-2370-JSS-DCI, 2024 WL 4956730, at *10-11 (M.D. Fla., Dec. 3, 2024) (finding that "change in work assignment does not qualify as an actionable adverse employment action" under *Muldrow*, because '"not everything that makes an employee unhappy is an actionable adverse action.'"), quoting *Doe v. Dekalb Cnty. Sch. Dist*., 145 F.3d 1441, 1449 (11th Cir. 1998); *Collins*, 2025 WL 928821, at *4. As a result, Plaintiff fails to plead a plausible claim of disability discrimination against Local 1996 related to her alleged requests for accommodations.

**V.     Objection 6 – To plead a plausible ADA claim against a labor organization, a plaintiff is required to show that the union breached its duty of fair representation. Plaintiff failed to do so here and therefore her discrimination claim is subject to dismissal for this reason as well.**

Because the Magistrate Judge correctly found that Plaintiff failed to plead facts showing that she suffered sufficient harm to state an ADA disability claim against Local 1996, Plaintiff's disability claim against the Union fails for that reason alone. However, even if Plaintiff had alleged some harm, an ADA disability claim brought against a labor organization requires a showing that the union breached its duty of fair representation, and Plaintiff failed to plead facts showing a breach of the Union's duty and the discrimination claim fails for that reason as well.

While the Eleventh Circuit has not specifically held that ADA or other statutory discrimination claims against labor organizations require a breach of duty showing, as the Magistrate Judge cited in the R&R, numerous federal courts do require a breach of duty showing. R&R at 38, n.20. *See also Bryant v. JK Concrete Construction*, No. 4:23-cv-00787-DGK, 2024 WL 2785305, at *2 (W.D. Mo. May 30, 2024) ("A union can *only* be held liable under the ADA if it breached its duty of fair representation.") (Emphasis added).

It is easy to see why federal courts require a breach of duty showing for statutory discrimination claims brought against labor organizations related to grievance handling, because as this Court has explained, "protection against

15

discrimination overlaps with the duty of fair representation." *Turner v. Atl. Se. Airlines, Inc*., No. 1:07-CV-0039-RLV-CCH, 2008 WL 11320102, at *4 (N.D. Ga. Aug. 7, 2008). In other words, "[d]iscrimination claims against unions or labor organizations are grounded in the union's duty of fair representation to its members." *Langenback v. 32BJ SEIU*, No. 24-CV-03574 (OEM) (CLP), 2025 WL 2240321, at *6 (E.D.N.Y. Aug. 6, 2025) (internal quotations and brackets omitted).

Thus, even if Plaintiff had pled facts showing that she suffered a sufficiently disadvantageous change in terms or conditions of employment as a result of her reinstatement to store #647 or because a family member was allegedly excluded from grievance meetings, Plaintiff's disability claim against the Union still fails because she does not allege facts showing that Local 1996 breached its duty of fair representation to her. R&R at 38, fn. 20.

A union "has an obligation to fairly represent the employee during the course of grievance proceedings." *Harris v. Schwerman Trucking Co*., 668 F.2d 1204, 1206 (11th Cir. 1982). A union breaches its duty of fair representation when its "handling of the grievance was either arbitrary, discriminatory, or in bad faith." *Id*. (Quotation marks omitted). Under the duty of fair representation, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' ... as to be irrational." *Air Line Pilots Assoc. v. O'Neill*, 499 U.S.

65, 67 (1991). "Cases are uniform in holding that neither negligence of the union nor a mistake in judgment is sufficient to support a claim that the union acted in an arbitrary and perfunctory manner, and that <u>nothing less than a determination that the union acted with reckless disregard for the employee's rights or was grossly deficient in its conduct will suffice to establish a breach of the duty claim</u>." *Taaffe v. Bellsouth Telecomm., Inc*., 204 F. App'x 823, 824 (11th Cir. 2006) (quotations, citation, and brackets omitted, underline added).

Furthermore, the law is clear that employees *do not* have a right to have their grievances advanced to arbitration. *See, e.g. Lomax v. Armstrong Cork Co.,*433 F.2d 1277 (5th Cir. 1970) ("[A]n employee does not have an absolute right to have any grievance taken to arbitration…").[8] Accordingly, a union does not breach its duty of fair representation by settling an employee's grievance prior to arbitration. *Turner v. Air Transp. Dispatchers' Ass'n*, 468 F.2d 297, 300 (5th Cir. 1972) ("A union's broad discretion in prosecuting grievance complaints includes … the right to settle the dispute short of arbitration ....")

Here, Plaintiff alleges that she was fired from Kroger for taking psychedelic mushrooms at work, and that her manager accused her of being "aware of the drugs in the candy bar" and of "doing drugs on the clock". Am. Compl. ¶¶ 19-20,

---

[8] Decisions by the Fifth Circuit prior to October 1, 1981 are binding precedent upon district courts in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

24. Plaintiff also alleges that Local 1996 filed a grievance challenging her termination and represented her during the grievance procedure. *Id.* ⁋ 29, 37.

Local 1996's December 12, 2023 letter to Plaintiff, ECF No. 25-5, which is incorporated by reference in the Amended Complaint, Am. Compl. ¶ 48, shows that Local 1996 sought to have Plaintiff reinstated and "made whole of all losses." ECF No. 25-5 at 2. Thus, Local 1996 requested that Plaintiff be returned to store #420 and paid for her lost wages. *Id.* Kroger rejected that offer and countered with an offer of "reinstatement to Kroger store #363 with no back pay." *Id.* This offer "was discussed with [Plaintiff] and [Plaintiff's] mother" but it was rejected. *Id.* Several weeks later, Kroger proposed a new settlement offer of "reinstatement to Kroger store #647 and 52 hours of back pay." *Id.* This offer too was discussed with Plaintiff and her mother and emailed to Plaintiff's mother. *Id.* Local 1996 determined that the offer was reasonable and accepted it, and informed Plaintiff of the date and time that she was to report to work at #647. *Id.*

Here, the facts alleged in the Amended Complaint and the documents incorporated by reference therein show that after Plaintiff was fired, Local 1996 filed a grievance, processed it through the grievance procedure, proposed a full make-whole remedy, and accepted Kroger's settlement offer of reinstatement to a store in the same city along with 52 hours of pay. Thus, the allegations in the Amended Complaint show that the Union not only did not breach its duty of fair

18

representation to Plaintiff, but it effectively represented her and won her job back with pay after she was accused of doing drugs at work. As a result, Plaintiff failed to plead facts showing that Local 1996 breached its duty of fair representation related to her reinstatement and therefore she fails to state a plausible claim of ADA discrimination against the Union. *See Bommicino v. GM, LLC,* No. 1:10-cv-2400-JEC, 2012 WL 1029389, at *15 (N.D. Ga. Mar. 26, 2012) (finding that union did not breach its duty of representation by settling grievance without employee's consent whereby employee's termination was converted to a resignation); *Hammond v. International Longshoremen's Association, Local 1408*, No. 3:23-cv-1450-MMH-LLL, 2024 WL 3890006, at *4 (M.D.Fl. Aug. 21, 2024) (explaining that to survive a motion to dismiss on a breach of duty of fair representation claim, a plaintiff "must plead sufficient factual material, accepted as true, to permit the Court to draw the reasonable inference that [the union's] acts or omissions were 'arbitrary, discriminatory, or done in bad faith.'"), quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1520 (11th Cir. 1988).

Moreover, even assuming the allegations of the Amended Complaint as true, Plaintiff cannot show that the Union breached its duty of fair representation by not allowing a family member to attend grievance meetings. Under well-established Eleventh Circuit precedent, employees themselves are not entitled to attend grievance meetings or even participate in grievance settlement negotiations, let

alone their family members. *Higdon v. United Steelworkers of America*, 706 F.2d 1561, 1562 (11th Cir. 1983) ("A union does not breach its duty of fair representation simply by failing to give the grievant-member an opportunity to attend and notice of a particular segment of the grievance process."). As a result, Plaintiff's allegation that Defendants did not allow her to have a family member present and this "prevented her from otherwise meaningfully participating in the grievance process, thereby allowing Defendants to reach their own desired outcome without any input from her"[9] cannot form the basis of an ADA discrimination claim as a matter of law, because the Union had no duty under federal law to allow Plaintiff to participate in the grievance process or provide "input" into the settlement of the grievance. *Higdon, supra. See also Whitten v. Anchor Motor Freight, Inc.,* 521 F.2d 13351 1341 (6th Cir. 1975) (holding that union has no duty to involve worker in the grievance process)*; Caputo v. National Ass'n of Letter Carriers*, 730 F.Supp. 1221, 1230 (E.D.NY 1990) ("A union does not act unfairly when i[t] fails to consult with or advise a grievant of its bargaining activities, nor in the legitimate exercise of its discretion, need it obtain the employee's consent before settling a grievance.") (Internal citations omitted).

Even though the Union shared all of Kroger's settlement offers with Plaintiff and her mother, ECF No. 25-5, the Union had no obligation to do so and could

---

[9] Am. Compl. ¶ 36

have negotiated the settlement of the grievance without any input or participation from Plaintiff or her mother. As a result, even if the Union refused to allow Plaintiff's family member to be present during grievance meetings, the Union had a right to do so under established federal law and as a result Plaintiff fails to state a plausible discrimination claim.

## VI.    Objection 7 – Plaintiff did not plead a plausible ADA disparate treatment claim in the Amended Complaint.

The Amended Complaint's ADA discrimination allegations are entirely focused on alleged failures to accommodate. Indeed, as the Magistrate Judge correctly noted, Plaintiff's failure to address disparate treatment in her response brief shows that she did not intend to bring such a claim. R&R at 21, n.15.

To be clear, the Union moved to dismiss *all* of Plaintiff's claims against it under Fed.R.Civ.P. 12(b)(6). ECF No. 25. Therefore, even assuming, *arguendo*, that Plaintiff intended to bring an ADA disparate treatment claim against the Union, she clearly failed to state sufficient facts to support such a claim. Plaintiff's allegations in Paragraph 75 of the Amended Complaint are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that are insufficient to defeat a motion to dismiss. *Iqbal,* 556 U.S. at 678. Plaintiff does not allege any facts to show that she was singled-out because of her alleged disability, treated differently than anyone else, or any other facts that show that Local 1996's actions were motivated by discriminatory

animus. *Booth v. City of Roswell*, 754 F. App'x 834, 836-37 (11th Cir. 2018) ("[T]o survive a motion to dismiss, an ADA claim for disparate treatment must contain more than speculative conclusions and must provide enough factual matter, taken as true, to plausibly suggest intentional disability discrimination.") As a result, the Magistrate Judge did not err by confining his analysis to Plaintiff's failure to accommodate allegations.

## VII.    Objection 8 – Exhibits 1-4 to the Union's motion to dismiss are central to Plaintiff's claims and their authenticity is not disputed and therefore the Magistrate Judge properly considered them.

The Magistrate Judge correctly found that "even a cursory review of plaintiff's first amended complaint and the exhibits reveals that they are specifically referenced in the first amended complaint and are central to plaintiff's claims." R&R at 2-23, fn.2. Courts in the Eleventh Circuit may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Plaintiff does not challenge the authenticity of any of the exhibits but attempts to shield them from the Court by arguing that they are not central to her claims and present a "curated selection[] of evidence" favorable to Defendants' positions. Pl's Objs. at 24. However, all of the exhibits attached to Local 1996's motion to dismiss meet the centrality test because

22

they all relate to Plaintiff's termination from, and reinstatement to, Kroger, which are "the events that are central to [Plaintiff's] claims." *Johnson*, 107 F. 4th at 1301.

Exhibit "1" to the Union's Motion to Dismiss, ECF No. 25-2, is a letter dated November 10, 2023, from Plaintiff's counsel to Defendants. The November 10 letter is incorporated by reference in the Amended Complaint, Am. Compl. ¶ 47, and is central to Plaintiff's retaliation claims because, for one, Plaintiff alleges that the letter constitutes protected ADA activity. *Id*. ¶ 78. Exhibit "2", ECF No. 25-3, is expressly referenced by Plaintiff in the Amended Complaint. Am. Compl. ¶ 24 ("Ms. Wheeler's manager sent her home for the day and wrote her up in a 'Constructive Advice Record' ("CAR") […]") The CAR is also central to Plaintiff's claim of ADA discrimination because it provides the reason given by Kroger for her suspension and the date of the suspension. Exhibit "3", ECF No. 25-4, is incorporated by reference and central to her claims as well because it is her notice of termination that contains the date of termination that Plaintiff expressly cites in the Amended Complaint. Am. Compl. ¶ 58. Finally, Exhibit "4", ECF No. 25-5, is also explicitly referenced in the Amended Complaint, Am. Compl. ¶ 48, and is central to her claims because according to the Amended Complaint, it constituted the notice provided to Plaintiff for her "to report to work at the new store." *Id*.

Because the authenticity of Local 1996's exhibits are not in dispute and they are all central to Plaintiff's claims of ADA discrimination and retaliation, the Magistrate Judge did not err by considering the exhibits.

Finally, the Magistrate Judge did not consider Exhibit "5" to the Union's motion to dismiss - Plaintiff's EEOC charge against the Union, ECF No. 25-6 - because the Amended Complaint was dismissed for other reasons. R&R at 58, fn.28. Nevertheless, that Magistrate Judge could have considered the EEOC charge because it is incorporated by reference in the Amended Complaint, Am. Compl. ¶ 49, and EEOC charges are routinely considered by district courts even when they are not attached to a pleading. *See Chesnut v. Ethan Allen Retail, Inc*., 971 F.Supp.2d 1223, 1228 (N.D.Ga. 2013) ("In discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading.")

In her EEOC charge against Local 1996, Plaintiff only alleges that she was discriminated against by the Union based on her disability. ECF No. 25-6. That is, Plaintiff does not allege retaliation and Plaintiff does not allege in the Amended Complaint that she filed a subsequent charge alleging retaliation after her termination. Therefore, in addition to the reasons set forth in the R&R, Plaintiff retaliation claim against the Union is subject to dismissed for failure to exhaust administrative remedies.

Plaintiff was required to file a new charge before bringing an ADA retaliation claim because the alleged retaliation is a new "discrete" act. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."); *Terhune v. Potter*, No. 8:08–cv–1218–T–23MAP, 2009 WL 2382281, at *4 (M.D.Fla. July 31, 2009) ("[R]etaliatory acts constitute discrete acts of discrimination.") (Internal quotations omitted). Because Plaintiff did not file an EEOC charge against Local 1996 alleging the discreet act of retaliation, she failed to exhaust administrative remedies.

The subject of her EEOC charge against the Union was her transfer to store #647. ECF No. 25-6. In her Amended Complaint, Plaintiff does not allege that her termination "grew out of" her reinstatement to store #647. Instead, she merely alleges - without any factual enhancement - that "Kroger terminated [Plaintiff's] employment on December 30, 2023." Am. Compl. ¶ 57. Because Plaintiff fails to plead any facts showing that her alleged termination "grew out of" her reinstatement to store #647, she failed to exhaust her administrative remedies prior to bringing an ADA retaliation claim against Local 1996.

## <u>CONCLUSION</u>

For these reasons, and the reasons set forth in the R&R, Plaintiff's Amended Complaint should be dismissed in its entirety with prejudice.

DATED this 22nd day of August, 2025.

By:     s/ Michael B. Schoenfeld
Georgia Bar No. 863727
STANFORD FAGAN LLC
2540 Lakewood Avenue SW
Atlanta, GA 30315
(404) 622-0521, ext. 2244
michaels@sfglawyers.com

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned attorney hereby certifies, pursuant to LR 7.1(D), NDGa., that the foregoing **AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION** was prepared in accordance with LR 5.1, NDGa., using Times New Roman font, 14 point.

By:    <u>s/ Michael B. Schoenfeld</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2025, I submitted the foregoing

**AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S**

**OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION**

to the Clerk of Court using the CM/ECF system, which will send a notification of

such filing to the following counsel of record:

> Jake Knanishu
> James Radford
> RADFORD SCOTT LLP
> 125 Clairemont Ave., Suite 380
> Decatur, Georgia 30030
> jradford@radfordscott.com
> jknanishu@radfordscott.com
> *Counsel for Plaintiff*
>
> Aaron Holt
> Silvia Chicas
> COZEN O'CONNOR, P.C.
> 1221 McKinney Street, Suite 2900
> Houston, TX 77010
> aholt@cozen.com
> schicas@cozen.com
>
> Danielle Le Jeune
> COZEN O'CONNOR, P.C.
> The Promenade, Suite 400
> 1230 Peachtree Street, N.E.
> Atlanta, GA 30309
> dlejeune@cozen.com
> *Counsel for Kroger*

By:    s/ Michael B. Schoenfeld