# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| **LYNN NORTH, as next friend of** | § | |
| **Lindsey Wheeler,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:24-cv-00192-** |
| | § | **LMM-RGV** |
| **v.** | § | |
| | § | |
| **THE KROGER CO. and UNITED** | § | |
| **FOOD AND COMMERCIAL** | § | |
| **WORKERS, LOCAL 1996,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANT THE KROGER CO.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTIONS

Defendant The Kroger Company ("Kroger") respectfully submits this Response in Opposition to Plaintiff's Objections (Doc. 40) ("Objections") to the Magistrate Judge's Final Report and Recommendation (Doc. 38) ("R&R").

## I.    INTRODUCTION

The 58-page R&R thoroughly analyzes and applies the relevant law before correctly concluding that dismissal is warranted. Plaintiff's Objections do not raise any new or compelling arguments that were not already extensively considered and rejected. While invoking a kitchen-sink approach to reframing the facts pled, the Objections inadvertently concede the cornerstone issue that is fatal to her ADA claim: "[e]ven though Ms. Wheeler had received a notice of termination on October

19, 2023, she was still at all relevant times undisputably seeking reinstatement[.]" A *terminated* employee (even one seeking reinstatement) occupies a fundamentally different position than, for example, a job applicant seeking employment. The R&R correctly held, *inter alia*, Plaintiff's failure to allege any protected activity or reasonable accommodation request *before* her October 19, 2023 Notice of Termination was fatal to her claims. Plaintiff's attempt to argue around this fact by using a settlement negotiation that included an offer of *reinstatement* (which she unequivocally rejected) does not change the fundamental truth—she was terminated. The Objections' attempt to mutate the byproduct of the *offer* of reinstatement (*i.e.,* execution of a release) into an adverse *employment* action similarly fails because she both admits in briefing and in the Complaint that she rejected the settlement offer. Simply stated, the Objections' attempt at reframing the facts as pled cannot withstand scrutiny when applied to controlling Eleventh Circuit precedent and factually analogous decisions in *Puckett, Barneman*, and *Dolin*.

## II.    <u>RESPONSE TO OBJECTIONS</u>

## A.    <u>Plaintiff's Objections 1 through 4 are Predicated on a Reframing of her October 19, 2023 Notice of Termination.</u>

Plaintiff's Objections 1 through 4 all fail because they are predicated on reframing her October 19, 2023 termination and subsequent settlement negotiations as continued employment despite pleading an explicit rejection of any offer of

reinstatement.[1] For example, Objection 1 argues Plaintiff's refusal to sign a release included with an offer of reinstatement, along with other post-termination conduct, constitutes protected activity. Doc. 40 at 1. Objection 2 argues Kroger's "ultimate termination" and refusal to return her to work after failing to sign the offer of reinstatement are adverse *employment* actions. Doc. 40 at 11. Objection 3 argues for post-termination accommodation requests in the negotiation of a grievance settlement. Doc. 40 at 8. Objection 4 argues post-termination accommodation requests need not relate to the essential functions of a job. Doc. 40 at 15-16. Critically, the Objections simultaneously concede "… ***Ms. Wheeler had received a notice of termination on October 19, 2023*** …" while arguing (without citation to authority) merely "seeking reinstatement … triggers the duty to provide a reasonable accommodation[.]" Doc. 40 at 11 (emphasis added). These Objections advance two primary arguments: (1) the ADA "does not limit its scope only to active employees;" (Doc. 40 at 8, 12) and (2) the grievance process of a collective bargaining agreement grants an employee "enforceable rights against termination." Doc. 40 at 9.

---

[1] *Compare* Doc. 26-2, October 19, 2023 Notice of Termination ("This letter is to advise you that your employment with Kroger [] has been terminated[.]") *and* Doc. 20 at ¶ 24 (Kroger "suspend[ed] her employment indefinitely.") *with* ¶ 57 ("Kroger terminated [Plaintiff's] employment on December 30, 2023") *and* ¶ 40 ("Ms. Wheeler and her family informed Defendants that she did not accept the terms."), ¶ 53 ("Ms. Wheeler's mother informed Ms. Whipple that they were not going to sign[.]"); *see also* Objections [Doc. 40] at 11("Ms. Wheeler had received a notice of termination on October 19, 2023…she was still…seeking reinstatement").

*First,* the Objections argue the ADA protects any individual who "*desires*" employment. Doc. 40 at 8.[2] She dedicates most of her briefing trying to distinguish twenty-one (21) decisions interpreting this statutory language in post-termination accommodation cases. Doc 40 at 8-15. In doing so, Plaintiff entirely misses the point and weight of the R&R's cited authority: "post-termination accommodation requests are not actionable as a matter of law[.]" R&R [Doc. 38] at 27-29.

Plaintiff's Objections notably omit discussing the Eleventh Circuit decision on post-termination reasonable accommodation requests in *Barneman v. Int'l Longshoreman Ass'n Loc. 1423*, 840 F. App'x 468, 478 (11th Cir. 2021), an analogous case involving a union member hired "on a daily, per job basis[.]" *Id.* at 471. Barneman was terminated from two separate day jobs on different dates and filed grievances for both. *Id.* Before the grievance challenging one of his terminations, he requested to carry a seat cushion as an accommodation for the first time. *Id.* During that grievance meeting, the employer denied the accommodation request, but permitted a cushion for future jobs. *Id.* Evaluating Barneman's failure to accommodate claim, the Eleventh Circuit held **"no duty to provide a reasonable**

---

[2] Despite arguing she "desires" reinstatement, it is undisputed Plaintiff rejected the offer of reinstatement. *Compare* Objections [Doc. 40] at 11 (after "receiv[ing] a notice of termination on October 19, 2023…she was still…seeking reinstatement") *and* Objections [Doc. 40] at 4 ("terminating an employee because she refuses to cease ongoing protected activity (*i.e.,* to sign a release)…") *with* Doc. 20 ¶ 40. ("Ms. Wheeler and her family informed Defendants that she did not accept the terms.").

**accommodation was triggered, and the [] termination cannot serve as a basis for Barneman's ADA claim" because "he never requested an accommodation prior to that date.**" *Id.* at 478. In other words, his *post*-termination accommodation request was not actionable. *Id.; see also McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x 897, 899–900 (11th Cir. 2014) (failure to accommodate claim fails where plaintiff "did not make a specific demand for an accommodation until after the decision to fire h[er] had been made, [the employer] is not liable for failing to accommodate [plaintiff's] disability … before making the decision to terminate [plaintiff's] employment."); R&R [Doc. 38] at 27–30.

Despite the weight of this authority, the Objections argue in favor of creating new law expanding the interpretation of 42 U.S.C. § 12111(8) to include any individual desiring employment in any circumstance, including terminated former employees. Doc. 40 at 8 ("Even though Ms. Wheeler had received a notice of termination on October 19, 2023, she was still at all relevant times undisputedly seeking reinstatement—and therefore "desire[d]" the job[.]") (quoting 42 U.S.C. § 12111(8)). Plaintiff fails to cite a *single case* applying 42 U.S.C. § 12111(8)'s "desired" language to a terminated employee. Doc 40 at 8–15.

In contrast, numerous courts analyzing this issue have applied 42 U.S.C. § 12111(8)'s statutory language to job applicants and *current* employees. *See Daugherty v. City of El Paso*, 56 F.3d 695, 699 (5th Cir. 1995) (finding "the statutory

reference to employment an individual "desires" as applicable [] to job applicants [and] individuals like Daugherty who are already employed and then become disabled[.]"); *U.S. E.E.O.C. v. Humiston-Keeling, Inc.*, 54 F. Supp. 2d 798, 809 (N.D. Ill. 1999), *aff'd sub nom. E.E.O.C. v. Humiston-Keeling, Inc.*, 227 F.3d 1024 (7th Cir. 2000) (interpreting "position desired" as applying to a *current* employee); *Turco v. Hoechst Celanese Chem. Grp., Inc.*, 906 F. Supp. 1120, 1129 (S.D. Tex. 1995), *aff'd sub nom. Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090 (5th Cir. 1996) ("The statutory reference in [42 U.S.C. § 12111(8)] to 'individuals' who 'desire' positions refers [] to job applicants [and] to individuals who are already employed and then become disabled…").

Courts considering this issue in the context of *terminated* employees have consistently rejected the exact position Plaintiff urges this Court to adopt. R&R [Doc. 38] at 27–30; *see also Fussell v. Georgia Ports Auth.*, 906 F. Supp. 1561, 1574 (S.D. Ga. 1995), *aff'd,* 106 F.3d 417 (11th Cir. 1997) (rejecting "reassignment to a vacant position as a means of accommodating [plaintiff where he] points to no legal authority requiring the [employer] to contact him, **post-termination**, and offer him every job that opened up.") (emphasis added); *Johnson v. Otter Tail Cnty., Minnesota*, No. 00-3098, 2001 WL 664217, at *1 (8th Cir. June 14, 2001) (affirming dismissal of failure-to-accommodate claim where "[Plaintiff's] first request for accommodation, [] post-dated her termination" because "the duty to offer continued

employment existed only while [Plaintiff] was employed[.]"); *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1218 (8th Cir.1999) (post-termination requests for accommodation are not properly viewed as requests for accommodation at all but, rather, as "a request for reinstatement"), *cert. denied,* 528 U.S. 821, 120 S.Ct. 65, 145 L.Ed.2d 56 (1999); *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995) (rejecting evidence a plaintiff "was not chosen for a job that would have accommodated his limitations … because the job became available only after he was terminated."); *Cooper v. Walker Cnty. E-911*, Case No. 6:16-cv-1746-TMP, 2018 WL 3585217, at *12 (N.D. Ala. July 26, 2018) ("[a] request for accommodation that comes post-termination does not trigger the employer's duty."); *Meinen v. Godfrey Brake Serv. & Supply, Inc.*, No. CIV. 10-5077-JLV, 2012 WL 4364669, at *7 (D.S.D. Sept. 24, 2012) (holding "requests for reasonable accommodations after termination are actually requests for reinstatement because ADA protections do not follow a person after termination"); *Nixon v. Silverado Hospice of Houston*, No. CIV.A. H-12-0985, 2013 WL 3973980, at *6 (S.D. Tex. July 31, 2013) (rejecting Plaintiff's failure to accommodate claim because "[t]hese claims fail as a matter of law. ADA protections cease after an employee is terminated."); *Hammon v. DHL Airways*, 980 F.Supp. 919, 926–27 (S.D.Ohio 1997), *aff'd*, 165 F.3d 441 (6th Cir.1999) (former employee is not considered a "qualified individual" with a disability within the meaning of the ADA); *Weyer v. Twentieth Century Fox Film*

7

*Corp.*, 198 F.3d 1104, 1112 (9th Cir. 2000) ("Title I [of the ADA] unambiguously excludes former employees.").

Recently, the Supreme Court in *Stanley v. City of Sanford, Fla.,* considered 42 U.S.C. § 12111(8)'s statutory language in the context of a retiree's ADA discrimination claim discussed at the pleading stage following dismissal for failure to state a claim.  145 S. Ct. 2058 (2025).  In affirming the 12(b)(6) dismissal, the Court held:

> "Congress's use of present-tense verbs ("holds," "desires," "can perform") signals that § 12112(a) protects individuals able to do the job they hold or seek at the time they suffer discrimination. [The statute's definition of] a 'reasonable accommodation' … refers to things like 'job restructuring,' modifying 'existing facilities used by employees,' and altering 'training materials or policies,' § 12111(9).  Those kinds of accommodations make perfect sense when it comes to current employees or applicants.  But it is hard to see how they might apply to retirees who do not hold or seek a job."

*Stanley v. City of Sanford, Fla.*, 145 S. Ct. 2058, 2063-64 (2025).  The same logic is persuasive here insofar as the above quote can just as easily replace the word "retirees" with "terminated employees." Applied here, it is undisputed Plaintiff at all times relevant rejected the offer of reinstatement. *See* Doc. 20 at ¶ 40, ¶ 53.

Regardless, a Court from the Northern District of Georgia has previously ruled on this same issue at the 12(b)(6) pleading stage. In *Puckett v. Bd. of Trustees of First Baptist Church of Gainesville, Inc.*, a sister Court in the Northern District of Georgia granted a 12(b)(6) motion to dismiss because, as here, plaintiff simply "does

not allege that he requested an accommodation before he was terminated[.]" 17 F. Supp. 3d 1339, 1343 (N.D. Ga. 2014) (Story, J.). The Objections are dismissive of this controlling case, arguing "plaintiff in that case failed to allege that he ever requested a[n] accommodation," while neglecting to discuss the portion of the *Puckett* decision where Judge Story explains <u>why</u> he denied leave to amend: "**allegations that Defendants refused to discuss possible accommodations post-discharge are futile**." *Id*. at n.2 (emphasis added). In other words, Judge Story refused to allow plaintiff to add post-termination accommodation allegations because doing so would be "futile." *Id.*

At bottom, the Objections concede she only requested accommodation after her termination. Doc. 40 at 8 ("Even though Ms. Wheeler had received a notice of termination on October 19, 2023…"). Accordingly, *Puckett* and *Barneman* remain controlling on this issue, and any attempt to establish new law based solely on a desire to regain her position through post-termination settlement negotiations—thereby creating a duty to accommodate—should be rejected as a matter of law.

*Second*, the Objections argue a grievance procedure in a collective bargaining agreement grants "enforceable rights against termination" such that post-termination reasonable accommodations are actionable during their pendency. Doc. 40 at 9. Again, the Eleventh Circuit's decision in *Barneman* is both factually analogous and legally controlling insofar as that plaintiff similarly held a "contractual right" to

challenge his termination, which, as here, did not change the analysis on post-termination accommodation requests. *Barneman*, 840 F. App'x at 478. Regardless, the Supreme Court has addressed the interplay between statutory and collectively bargained rights in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 50, 94 S. Ct. 1011, 1020, 39 L. Ed. 2d 147 (1974). Specifically, the Court held that asserting a "contractual right under a collective-bargaining agreement" and "independent statutory rights accorded by Congress" are "distinctly separate [in] nature," nor are they "vitiated merely because both were violated as a result of the same factual occurrence." *Alexander,* 415 U.S. at 50-51, 94 S. Ct. at 1020-21. In other words, Plaintiff has a right to file a grievance challenging her termination just like she has a right to file a lawsuit on the termination, but exercising such rights are "distinctly separate [in] nature[.]" *Id.*

To hold otherwise would allow for <u>any</u> terminated employee to sue for failure to accommodate during post-termination settlement discussions, grievances, or even litigation challenging that termination. Suppose a plaintiff files a lawsuit challenging their termination and prays for relief in the form of reinstatement. Plaintiff's argument, taken to its inevitable conclusion, would allow former employees in active litigation to make reasonable accommodation requests to a party opponent *<u>during</u> <u>litigation</u>* by virtue of the mere fact that they "desire" reinstatement. The R&R correctly noted this is simply not what the ADA was intended to accomplish, and

accordingly recommended dismissal as a matter of law. *See* Doc. 38 at 29-30.

Plaintiff's Objections 1-4 additionally fail for the reasons articulated below.

### i.    *(Objection 1) Plaintiff's Purported Protected Activity*

Plaintiff argues in her first objection to dismissal of her retaliation claim that "she did far more [] than refuse to sign a release" attached to the offer of reinstatement she rejected; rather, she additionally "sen[t] a letter through counsel in November 2023 requesting these accommodations, and by filing [her] EEOC Charges[.]" Doc. 40 at 2. As a threshold matter, all of this conduct indisputably occurred *after* she received the October 19, 2023 Notice of Termination. *Supra* II(A); *Howard v. MHT USA LLC*, 2023 WL 5668064 (N.D. Ga. June 23, 2023), *report and recommendation adopted*, No. 1:21-CV-4570-CAP, 2023 WL 5668035, at *23 (N.D. Ga. July 12, 2023) ("[] plaintiff's protected activity must take place <u>before</u> the alleged retaliatory actions."); *Cheatham v. DeKalb Cnty.*, 682 F.App'x 881, 887 (11th Cir. 2017) (finding failure to establish causal link because "alleged [] employment actions…all occurred before [the] statutorily protected activities were undertaken."); R&R [Doc. 38] at 46, n.25.

Plaintiff further argues the R&R only analyzed her refusal to sign as Plaintiff's only protected activity, but this is belied by the R&R itself: "Plaintiff also alleges she engaged in protected activity under the ADA by requesting disability accommodations, sending a letter through counsel…and filing her EEOC

Charges...[However,] plaintiff's post-termination requests were not objectively reasonable and therefore do not qualify as [] statutorily protected activity for purposes of a retaliation claim." R&R [Doc. 38] at 46, n.25. The R&R correctly found Plaintiff's "mere refusal to sign a release…does not clearly signal that [plaintiff] intends to participate in any litigation, let alone litigation which challenges some form of discrimination or other protected activity[.]" Doc. 38 at 48. Plaintiff responds that her refusal to execute reinstatement paperwork indicates she intended to file an EEOC Charge. Doc. 40 at 4. ("…Defendants plainly knew—*or at the barest minimum should have known*—Ms. Wheeler refused to sign the waiver because she intended to continue her prior, undisputed protected activity."). Yet, at no point does Plaintiff allege any actual or constructive awareness prior to her termination. Doc. 38 at 51, n.26.

In support of her position, Plaintiff relies on *Goldsmith v. Bagby Elevator,* an Eleventh Circuit decision overturning summary judgment where a *current* employee filed a charge of discrimination and was subsequently presented with an employment agreement containing a mandatory arbitration clause. *Goldsmith*, 513 F.3d at 1278; Doc. 40 at 4. *Goldsmith* is factually distinguishable because that plaintiff's status as a *current* employee is fundamentally different than the case at bar. Further, it was undisputed that the employer "was aware of Goldsmith's EEOC charge," the arbitration agreement he was asked to sign specifically "applied to that charge," and

he was terminated only after he "offered to sign an amended agreement that would exempt his pending charge from arbitration[.]" *Id.* at 1278-79.

In this case, Plaintiff argues a contradiction: she was offered *reinstatement* and terminated for *refusing* the same offer. *Compare* Objections [Doc. 40] at 11 (after "receiv[ing] a notice of termination on October 19, 2023…she was still…seeking reinstatement") *and* Objections [Doc. 40] at 4 ("terminating an employee because she refuses to cease ongoing protected activity (*i.e.,* to sign a release)…") *with* Doc. 20 ⁋ 40. ("Ms. Wheeler and her family informed Defendants that she did not accept the terms."). Simply put, Plaintiff's refusal to sign the release was a mere byproduct of rejecting the offer of reinstatement, the sum total of which is that she remained terminated. *See Dolin v. ThyssenKrupp Elevator Corp.*, 2019 WL 452740, at *17 (D.N.M. Feb. 5, 2019) (finding accepted offer of reinstatement "*improved* [plaintiff's] status from unemployed to employed."). Under Plaintiff's interpretation of protected activity (*i.e.*, refusing to sign a release as a condition of reinstatement), potentially any terminated employee offered reinstatement would have a claim if they declined to sign. This is beyond the intent of the protection the ADA is intended to provide, and Plaintiff cites no cases in support of this interpretation for terminated employees.

Lastly, the R&R correctly held offering an employee a benefit in exchange for a release of claims is not unlawful under the ADA. *See* Doc. 38 at 49. ("[B]ecause

offering benefits in exchange for a waiver or release of claims arising out of one's employment…is not a practice made unlawful by the…ADA and such waivers are [] enforceable under the ADA, Wheeler did not engage in a protected activity when [s]he declined [to] sign [the] release."); *Dolin*, 2019 WL 452740, at *17 (finding offer of reinstatement "*improved* [plaintiff's] status[.]")

### ii.    *(Objection 2) Offer of Reinstatement was not an Adverse Action*

Plaintiff's second objection contends that being asked to sign a release with an offer of reinstatement is adverse because "[t]ermination is the paradigmatic adverse action." Doc. 40 at 5-7. The R&R correctly noted the request to sign a release was *part of the offer of reinstatement* and not an adverse action, especially where Plaintiff had already been terminated, because the offer was a conditional benefit, not a detriment. Doc. 38 at 56-57. The R&R also discussed the factual similarities in *Dolin v. ThyssenKrupp Elevator* and *Penny v. Winthrop-University Hosp.,* both involving offers of reinstatement and the importance of considering context.

In *Penny v. Winthrop-University Hosp.,* the plaintiff (a union-represented employee with grievance rights) "was terminated [] and the grievance proceeding provided her with a remedy to challenge the decision terminating her employment." 883 F. Supp. 839, 845 (E.D.N.Y. 1995). As here, the employer offered to settle the grievance and "conditioned the plaintiff's reinstatement on her signing a waiver and

release[.]" *Id.* In *Penny*, as in this case, plaintiff argued the employer's reinstatement offer requiring her to "sign a waiver and release as a precondition to returning to work was ... retaliatory[.]" *Id.* The court in *Penny*, as does the R&R, granted a 12(b)(6) "as a matter of law" because "if anything, the February 3, 1992 letter constitutes the opposite of an adverse action, because it conditionally offers the plaintiff reinstatement of her already terminated position." *Id.*; R&R [Doc. 38] at 50.

In *Dolin v. ThyssenKrupp Elevator Corp.*, the trial court held that a pay reduction was not an adverse employment action when it was part and parcel of an offer of reinstatement "the parties negotiated and agreed[.]" Civ. No. 16-529 GBW/GJF, 2019 WL 452740, at *17 (D.N.M. Feb. 5, 2019). The *Dolin* court further noted, "**reinstatement at a reduced pay *improved* her status from unemployed to employed**." *Id.* (emphasis added).[3] As the R&R noted, "[t]his is not a case where a plaintiff, currently employed…filed a grievance and subsequently suffered" an adverse action; rather, "Kroger suspended and subsequently terminated Wheeler and she then filed [a] grievance" resulting in an offer "to execute a general release" as "a condition of reinstatement[.]" Doc. 38 at 55-56.

Plaintiff attempts to distinguish *Dolin* by asserting that "plaintiff herself was a party to the negotiations" in that case, whereas "Defendants deliberately excluded

---

[3] Similarly, Plaintiff's claims relying on *components* of the offer of reinstatement she rejected must fail as a matter of law for the same reason. *See* Doc. 20 at ¶ 42, 69 (reinstatement *offer* at a different store as a discriminatory/retaliatory transfer).

Ms. Wheeler from their negotiations." Doc. 40 at 7. (emphasis in original). Yet, the Amended Complaint makes clear that there was communication with Plaintiff and her family about the only product of those grievance meetings (*i.e.*, an offer of reinstatement). Doc. 20 at ¶ 40 ("Ms. Wheeler *and her family* informed Defendants that she did not accept the terms."); ¶ 53 ("*Ms. Wheeler's mother informed Ms. Whipple* that they were not going to sign[.]") (emphasis added). As such, Plaintiff remains unable to show that an offer of reinstatement with a release was an adverse action under the ADA, and the R&R correctly dismissed this claim.

### iii.    *(Objection 3) Plaintiff failed to plead any pre-termination Accommodation Requests.*

Plaintiff's third objection argues a duty to accommodate remained after the October 19, 2023 Notice of Termination during the pendency of her grievance negotiations. Doc. 40 at 8-15. This argument has been previously addressed *supra* Section II(A).

### iv.    *(Objection 4) The R&R correctly held that accommodations must relate to essential job functions under the ADA.*

Plaintiff's fourth objection asserts that an "essential job function is not strictly necessary to trigger the duty to provide a reasonable accommodation." Doc. 40 at 15. She challenges the R&R's treatment of the Eleventh Circuit's reasoning in *Beasley* as dicta, arguing it misinterprets *Beasley* and misquotes *Batten* by relying on the "Batten Magistrate's report and recommendation that the District Judge did

not adopt." However, Judge Ray's opinion in *Batten* is clear:

> "The Magistrate Judge's recommendation is in tension with the Eleventh Circuit's Beasley opinion, which casts doubt on the *D'Onofrio* line of cases that hold that an employer is under no obligation to make an accommodation if an employee does not require an accommodation to perform his essential job functions. **Nevertheless, the *Beasley* opinion does not provide substantial guidance on this issue because it says '[n]othing, really' to settle the debate**."

*Batten v. K-VA-T Food Stores, Inc.*, No. 4:22-CV-00179-WMR, 2023 WL 9106966, at *4 (N.D. Ga. Dec. 8, 2023), *appeal dismissed*, No. 23-14199-AA, 2024 WL 3019904 (11th Cir. May 15, 2024)*; see also*  Doc. 38 at 32, n.18; *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1259–60 (11th Cir. 2001) (unless an accommodation enables performance of essential job duties, the an employer has no obligation to provide it).

Indeed, as recently as August 8, 2025, the Eleventh Circuit was still quoting the *Lucas* line of cases holding an "accommodation is reasonable if it enables the employee to perform the essential functions of the job." *Mullin v. Sec'y, U.S. Dep't of Veterans Affs.*, No. 22-12354, 2025 WL 2267816, at *4 (11th Cir. Aug. 8, 2025) (quoting *Lucas*, 257 F.3d at 1255 (11th Cir. 2001)); *see also Smith v. Vallen Distribution*, No. 1:23-CV-03320-VMC, 2025 WL 2166536, at *3 (N.D. Ga. July 11, 2025) (Calvert, J.) (finding failure to state a claim while quoting *Lucas* for the proposition "[a]n accommodation can qualify as 'reasonable' … only if it enables the employee to perform the essential functions of the job.")

Applied here, the R&R correctly held participation in grievance meetings was not an essential function of Plaintiff's role as a Courtesy Clerk—"stocking shelves, cleaning bathroom, and bagging groceries." Doc. 38 at 30–32 & n.18. Neither requested accommodation related to those essential functions. Doc. 38 at 30–31 (pleading did not "state a claim for a failure to accommodate because neither request would enable [her] to perform the essential functions of her job[.]"). Thus, the R&R correctly found the failure-to-accommodate claim fails as a matter of law.

**B.    (Objection 7) The R&R Correctly Concluded that Plaintiff Abandoned her Disparate Treatment Claims[4].**

Plaintiff's seventh objection challenges the R&R's finding that Plaintiff abandoned her disparate treatment claims and argues Kroger did not move to dismiss them. Doc. 40 at. 21-23. In fact, Kroger addressed Plaintiff's disparate treatment allegations head-on in its briefing. Doc. 26-1 at 28. ("Although a pleading need not contain specific facts establishing a prima facie case [, a complaint] that provides no … detail manifesting any form of [disability-based] animus, discriminatory words, prior incidents or other indications that [the plaintiff's protected class] [ ] played a

---

[4] Kroger notes that Objections 5 and 6 involve claims against the Union only. Doc. 40 at 20 (Objection 5). ("Plaintiff therefore respectfully objects to the recommendation that the Court dismiss Plaintiff's claims against UFCW as failing to allege "some harm."); *Id.* at 21 (Objection 6). ("Plaintiff therefore respectfully objects to the recommendation that the Court dismiss Plaintiff's claim for disability discrimination against UFCW for lack of a parallel claim for breach of the duty of fair representation.").

role…is insufficient to satisfy the minimum pleading standards of Rule 8(a)(2). *Belanger v. BeMatrix, USA*, No. 119CV00809SCJRGV, 2019 WL 13268184, at *3 (N.D. Ga. Apr. 2, 2019) (Vineyard, J.)" (internal quotations omitted); Doc. 26-1 at 28 ("Plaintiff's allegation her 'manager knew she had severe cognitive impairments that would have impacted her ability to understand the significance of eating the chocolate, yet disciplined her anyway' is of no value for any ADA claim."); Doc. 26-1 at 29 ("Even assuming this to be true for purposes of a motion to dismiss, an employer is permitted to discipline for misconduct, even if a disability contributed to the conduct. *see J.A.M v. Nova Se. Univ., Inc.,* 646 F.App'x 921, 926 (11 Cir. 2016)"); Doc. 26-1 at 29 ("At bottom, Plaintiff simply does not allege any facts tending to show that [disability-based] animus motivated the alleged actions.").

The R&R acknowledged that the Amended Complaint references claims of disparate treatment but found that Plaintiff failed to substantively defend or develop these claims in briefing.[5] Accordingly, the R&R correctly found Plaintiff's disparate treatment claims were deemed abandoned. Doc. 38 at 21, n.15.

Even assuming *arguendo* Plaintiff did not abandon her disparate treatment claim, the claim would still fail because there simply are not enough well-pled facts

---

[5] *See* Doc. 38 at 21, n.15 ("While the first amended complaint appears to assert disability discrimination claims under both theories [disparate treatment and failure to accommodate]…plaintiff only addresses a failure to accommodate claim against both defendants in her opposition briefs…and the Court will therefore confine its analysis of plaintiff's ADA discrimination claim against defendants to the same.").

to support it; namely, it fails to allege a causal connection (adverse action or protected activity) prior to termination and is merely a repackaging of her failure to accommodate claim.[6] *See Brown v. Delta Air Lines, Inc.*, No. 1:20-CV-4566-JPB-JSA, 2021 WL 2479091, at *18 (N.D. Ga. Mar. 9, 2021), *report and recommendation adopted,* No. 1:20-CV-4566-JPB-JSA, 2021 WL 12299007 (N.D. Ga. July 21, 2021) (Anand, J.) (finding repackaged failure to accommodate could did not plead claim of retaliation and conclusory allegations "do not support that claim."); *Jimenez v. U.S. Att'y Gen.*, No. 23-11729, 2025 WL 2025523, at *14 (11th Cir. July 21, 2025) (rejecting attempt to "re-clothe[ ]" his failure-to-accommodate claim as a retaliation claim.); *Gilliard v. Georgia Dep't of Corr.*, 500 F. App'x 860, 869 (11th Cir. 2012) (refusing to address retaliation claim "based on an employer's refusal to accommodate where the described acts relate directly to her reasonable accommodation discrimination claim, not her retaliation claim.") (internal quotes omitted). Lastly, as explained *infra* Section D, Plaintiff failed to properly exhaust her administrative remedies for a claim of retaliation. For all these reasons, the R&R's recommendation of dismissal was and is warranted.

## C.    **(Objection 8) The R&R correctly held Exhibits were both "central" and**

---

[6] *See* Doc. 20 at 5 ("Upon information and belief, [Plaintiff's] manager had not, and would not, discipline a non-disabled employee who was given a psychoactive drug without his or her knowledge."); *See* Doc. 20 at 12. ("Defendants discriminated against [Plaintiff] with respect to the terms, conditions, and privileges of her employment, in violation of the ADA, by excluding her from their negotiations in resolving her grievance, among other things.").

**"material" to Plaintiff's Claims.**

Plaintiff's eighth objection argues improper reliance on extrinsic evidence attached to Defendants' Motion to Dismiss. Specifically, "[h]er claims do not depend, for example, on Defendants' stated reasons for any of their actions…" Doc. 40 at 23. However, Plaintiff's claims *do* depend on what those actions were and their timing, especially where, as here, Plaintiff attempts to transform her termination and rejected offer of reinstatement into continued employment.

The Objections fail to address an analogous case cited by Kroger in its briefing – *Brown v. Delta Air Lines, Inc.* In *Brown,* Plaintiff alleged discrimination under the ADA and failure to accommodate a medical "restriction on lifting over 50 pounds" when, in fact, the doctor's note attached to the employer's 12(b)(6) shows she could lift 50 pounds "frequently[.]" No. 1:20-CV-4566-JPB-JSA, 2021 WL 2479091, at *15 (N.D. Ga. Mar. 9, 2021), *report and recommendation adopted,* No. 1:20-CV-4566-JPB-JSA, 2021 WL 12299007 (N.D. Ga. July 21, 2021) (Anand, J.). Judge Anand found, "the exhibits demonstrate that **Plaintiff's allegations regarding the restrictions in her 'doctor's note' are not accurate**" and considered the exhibits when granting the 12(b)(6) motion. *Id*.

Applying *Brown* here, the October 19, 2023 Notice of Termination is not offered to explain "Defendants' stated reasons for any of their actions" as Plaintiff alleges. Doc. 40 at 23. Rather, it is offered for the same reason the actual medical

restrictions were offered (and considered) in *Brown*: the pled allegations directly contradict facts that are both central to the claims and dispositive in a motion to dismiss. *Compare* Doc. 26-2, October 19, 2023 Notice of Termination ("This letter is to advise you that your employment with Kroger [] has been terminated[.]") *with* Doc. 20 at ¶ 24 (disciplined for "doing drugs on the clock and suspend[ed] her employment indefinitely.") (emphasis added) *and* ¶ 57 ("Kroger terminated [Plaintiff's] employment on December 30, 2023"); *see also* Objections [Doc. 40] at 11 ("Ms. Wheeler had received a notice of termination on October 19, 2023…she was still…seeking reinstatement"); Doc. 20 at ¶ 40 ("Ms. Wheeler and her family informed Defendants that she did not accept the terms.")

The R&R correctly concluded that the exhibits were properly considered because they were referenced in the Complaint and central to Plaintiff's claims. Additionally, Plaintiff did not challenge their authenticity. Doc. 38 at 2, n.2. Accordingly, the R&R should be adopted in full.

**D.    <u>The Portions of the R&R Plaintiff did not Object to Should be Adopted.</u>**

It is well settled that any portions of the R&R to which Plaintiff fails to object are reviewed under a "clear error" standard. *Macort*, 208 F. App'x at 784 ("If no objection or only partial objection is made [to the magistrate judge's report], the district court judge reviews those unobjected portions for clear error.").

*First*, Plaintiff does not challenge the R&R's finding accommodation requests (i) to have a second representative (*i.e.*, family member) at grievance negotiations and (ii) store preference were unreasonable as a matter of law. *See* R&R [Doc. 38 at 24]. Specifically, the Court found that communication at a grievance meeting challenging a termination, "including having an interpreter…to understand charges and defend oneself, is not an essential function of an employee's job." *See* R&R [Doc. 38 at 31] (internal marks omitted) (citing *Novella v. Wal-Mart Stores, Inc.*, 226 F. App'x 901, 903 (11th Cir. 2007)).

In its Renewed Motion to Dismiss, Kroger cited the three factors provided in the ADA's interpretative guidance when determining if a job function is essential: (1) whether the position exists to perform a particular function; (2) the number of other employees available to perform that job function; and (3) the degree of expertise or skill required to perform the function. 29 C.F.R. § 1630.2(n); Doc 26-1 at 22. At no point in Plaintiff's Amended Complaint does she allege facts that having a second representative at grievance negotiation meetings would enable her to perform any essential job function under the above factors. *Compare*, Amended Complaint ¶ 66; *see generally* Doc. 40. The "ultimate burden of persuasion with respect to showing that such accommodation is reasonable[,]" rests with Plaintiff, yet she failed to discuss this in her Objections. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000); *Hunt v. Marshalls of MA, Inc.*, No. 118CV00013TWTCMS,

23

2018 WL 11483366, at *6 (N.D. Ga. Nov. 19, 2018) (granting 12(b)(6)motion because plaintiff failed to plead sufficient facts to show how the reasonable accommodation would permit him to perform the essential job functions).

As for reinstatement at her preferred store, the R&R found it unreasonable because "plaintiff alleges it was impossible for [her] to drive at all" and therefore, her failure to allege facts describing how her preferred store allows her to perform essential job functions while the alternative does not "dooms her claim." *See* R&R [Doc. 38 at 34]. In its Renewed Motion to Dismiss, Kroger discussed *Lewis v. Zilog, Inc.*, where this Court considered a failure to accommodate claim based upon an employee's request for transfer to California because "[f]orcing transfers of employees under the guise of reasonably accommodating employees under the ADA inherently would undermine an employer's ability to control its own labor force." 908 F.Supp. 931, 946 (N.D. Ga. 1997) (granting summary judgment because "[t]he ADA does not require a 'qualified individual with a disability' to be favored over an individual who is not disabled."). The R&R also analyzes the plethora of cases holding commute preferences are unreasonable accommodation requests. *Id*. Plaintiff did not address these findings, and they should be adopted.

*Second*, Plaintiff's Objections do not challenge the authenticity of the documents attached to Kroger's motion to dismiss. *See also* Doc. 38 at 3.

24

("[Plaintiff] has not actually challenged the authenticity of any exhibit attached to the motions to dismiss.").

*Third*, the R&R found Plaintiff failed to establish a causal connection with any protected activity, including Kroger's awareness of any protected activity, such as filing an EEOC Charge. Doc. 38 at 50, 54 (finding there can be no retaliation for an act without knowledge of it and "plaintiff failed to allege that any of the individuals who made the allegedly retaliatory decisions knew anything about her filing an EEOC claim," thus, "her retaliation claim was due to be dismissed on this basis alone"). Plaintiff provides no factual or legal authority supporting her argument that, because Kroger should have known that Plaintiff filed an EEOC Charge, this is evidence of a plausible causal connection for retaliation. Finally, Plaintiff's claims fail for additional reasons that were not addressed in the R&R, including that Plaintiff failed to exhaust her administrative remedies as to her retaliation claim. *See* R&R [Doc. 38] at 57, n.28; *see also* Doc. 26-1 at 27, 30-31 ("[] Plaintiff filed a Charge of Discrimination against Kroger…that entirely failed to allege any claim of retaliation at all…It is well-settled that a Plaintiff must administratively exhaust claims of retaliation in order to bring suit in federal court.").

### III.    CONCLUSION

The R&R is a thoughtful, careful, and well-reasoned review of the record that appropriately applies the law to this case and should be adopted in full.

Respectfully submitted,

**COZEN O'CONNOR, P.C.**

*/s/ Aaron Holt*
Danielle Le Jeune
Georgia Bar No. 134222
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: 404-572-2052
Facsimile:  877-728-1396
dlejeune@cozen.com

Aaron Holt (*pro hac vice* granted)
Texas Bar No. 24058545
Silvia Chicas Wager (*pro hac vice* granted)
Texas Bar No. 24138475
811 Main St. Suite 2000
Houston, TX 77002
Telephone: (832) 214-3961
Facsimile:  (832) 214-3905
AHolt@cozen.com
SChicasWager@cozen.com

**ATTORNEYS FOR DEFENDANT
THE KROGER CO.**

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULES**

The above-signed counsel hereby certifies that this document was prepared in Times New Roman 14-point font and a 1-inch margin in accordance with LR 5.1(C)(D), N.D. Ga.

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, a true and correct copy of the foregoing *Defendant The Kroger Co.'s Response In Opposition To Plaintiff's Objections* has been served via ECF, email, and/or facsimile to all counsel-of-record as follows:

Radford Scott LLP
Jake Knanishu
James Radford
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
T: (404) 400-3600
jradford@radfordscott.com
jknanishu@radfordscott.com
**ATTORNEYS FOR PLAINTIFF**

Michael B. Schoenfeld
Georgia Bar No. 863727
STANFORD FAGAN LLC
2540 Lakewood Avenue SW
Atlanta, GA 30315
(404) 622-0521, ext. 2244
michaels@sfglawyers.com
**ATTORNEYS FOR DEFENDANT UNITED**
**FOOD AND COMMERCIAL WORKERS**
**LOCAL 1996**

*/s/ Aaron Holt*
Aaron Holt

79622396\7